UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TOMMY J. WINSTON<br>6329 Stonewain Court<br>Ft. Washington, MD 20744<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>CRISTIAN SAMPER,<br>Acting Secretary<br>Smithsonian Institution<br>1000 Jefferson Drive, S.W.<br>Washington, D.C. 20560<br><br>　　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 1:07-cv-1411<br>)<br>)  **DEMAND FOR JURY TRIAL**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### FIRST AMENDED COMPLAINT

Tommy J. Winston ("Plaintiff"), for his Complaint against the Smithsonian Institution (the "Agency" or "Defendant"), states as follows:

### I. The Parties

1. Plaintiff Tommy J. Winston is an African American male resident of Fort Washington, Maryland. At all times relevant to this action, Plaintiff was employed by the Agency as Facilities Management Specialist, National Air and Space Museum in Washington, DC.

2. Defendant Cristian Samper is the Acting Secretary of the Smithsonian Institution (the "Agency," "Smithsonian" or "SI"), and is named in this lawsuit in his official capacity as the highest official of the Agency. The Office of General Counsel for the Smithsonian is located at 1000 Jefferson Dr., SW, Room 32, Washington, DC.

1

## II. Jurisdiction and Venue

3. This court has jurisdiction of this matter pursuant to 42 U.S.C. § 2000e-16(c) and § 2000e-5, and 28 U.S.C. § 1343(a).

4. Venue is proper in this judicial district pursuant to 42 U.S.C. § 2000e-5(f)(3).

## III. Exhaustion of Administrative Remedies

### A. Claims Included in Original Complaint

5. Plaintiff contacted the EEO Counselor on April 27, 2006.

6. Plaintiff timely filed his formal complaint of discrimination based on race and color on June 26, 2006.

7. The Smithsonian issued its final agency decision (FAD) dismissing appellant's claims on August 1, 2006.

8. Plaintiff filed a timely appeal with the Office of Federal Operations of the U.S. Equal Employment Opportunity Commission on September 22, 2006.

9. The Commission affirmed the FAD on or about May 3, 2007.

10. The Certificate of Service certifies that the FAD was sent to Plaintiff on May 3, 2007.

11. The envelope was post marked May 4, 2007 and received by Plaintiff on May 7, 2007.

12. Plaintiff is filing suit within 90 days of receipt of the FAD.

13. All required administrative remedies have been exhausted.

### B. Claims Included in This Amended Complaint

14. On or about February 28, 2007, Plaintiff was issued a Notice of Suspension (the purported justification of which is discussed in detail below).

15. Plaintiff contacted the EEO Counselor, Angela Roybal, on or about March 28, 2007.

16. On May 11, 2007, Plaintiff filed a formal complaint of discrimination. The Complaint was accepted for investigation on May 17, 2007.

17. On September 21, 2007, Plaintiff requested the issuance of an immediate Final Agency Decision.

18. On September 28, 2007, the Agency issued its FAD.

19. Plaintiff is filing suit within 90 days of receipt of the FAD.

20. All required administrative procedures have been exhausted.

### IV. Background Facts

21. Tommy Winston has been a valuable and well-regarded employee of the Smithsonian Institution for the last twelve years. During his tenure at SI, Mr. Winston has consistently been rated as "meets" or "exceeds expectation." He has <u>never</u> been subject to discipline during his twelve years at the SI, nor has he faced any type of disciplinary action by any employer (including the military) in his <u>entire</u> career. Mr. Winston has worked extremely hard over the last eleven years to improve the Agency's operations and establish a successful career. He has developed a reputation for having an honest, straightforward, "roll up your sleeves" work ethic and a natural ability to energize and motivate those around him to get the job done and done well. His demeanor and interpersonal skills have garnered him praise from his superiors who have continually sought fit to increase Mr. Winston's responsibilities and oversight of SI maintenance related operations.

22. On January 19, 2006, Mr. Winston was informed by his supervisor, David Samec, that a colleague, Kendra Gastright, had accused him of threatening her with violence during a January 13, 2006 meeting.

23. As part of the Agency's investigation of the claim of threatened violence in the workplace, Mr. Samec ordered Mr. Winston to remove all of his belongings from his office in the East Mall Zone (EMZ) in Washington, DC and move to the American Indian Museum across the street. Mr. Winston was also told not to enter the National Air and Space Museum building, even as a tourist, or attend any meetings at which Kendra Gastright may be present.

24. On January 23, 2006, Samec issued a memorandum to Mr. Winston that reassigned him, effective January 24, 2006, to the Suitland Maryland Zone as Facility Management Specialist, GS-1640. This memorandum did not state that the reassignment was permanent, and it appeared to Mr. Winston that the reassignment was temporary pending the investigation into the violence in the workplace allegations.

25. Upon his reassignment to the Suitland Zone, Mr. Winston ceased performing any duties related to his position in the EMZ as Facility Maintenance Manager. Instead, he performed various functions of decreased responsibility, prestige and importance. He was assigned a 9 foot x 7 foot office and no longer had any supervisory duties or project coordination functions.

26. On or about February 7, 2006 Samec issued Mr. Winston a "Proposal to Suspend" for one day without pay for acting "inappropriately and unprofessionally" because he never agreed to comply with Ms. Gastright's request that he stop responding to her sarcastically and teasing her.

27. The February 7, 2006 memorandum did not mention allegations that Mr. Winston threatened Ms. Gastright with violence, nor did it discuss when or how Mr. Winston would be restored to his former position. There was no indication in the memorandum of Mr. Winston's EEO rights or how he should or could appeal this action through the EEO process. It only stated that he had the right to present a reply to the proposal to the deciding official, Nancy Bechtol, Director, Arts and Industries Building.

28. Mr. Winston appealed the proposed discipline to Ms. Bechtol, who, on April 3, 2006, reversed the decision to suspend him and instead imposed a "Confirmation of Counseling." Although Ms. Bechtol, in her Decision, acknowledged that Mr. Winston was never charged with violence in the workplace, she did not rescind his reassignment from the EMZ to Suitland.

29. The Smithsonian's treatment of Mr. Winston under these circumstances was inconsistent with the manner it treated his non-Black colleagues. Specifically, Ms. Gastright (Asian, female) was known to use profanities and to act disrespectfully to her co-workers. By way of example, at a staff meeting, Ms. Gastright became extremely irate with a colleague and repeatedly used the "f" word and other profanities while leaning over the table in a threatening manner. Because everyone in the office made an agreement to deposit twenty-five cents in a jar every time one of them used a profanity, during this altercation, Ms. Gastright took out her wallet and started throwing money at the colleague. Upon information and belief, Ms. Gastright was only required to issue a written apology for her behavior. She was not transferred away from her duty station, nor did she suffer any changes in assignments, duties or responsibilities.

30. To date, Mr. Winston remains in the Suitland Zone with no indication that he will be restored to his former position.

31. Since being transferred to the Suitland Zone, also known by SI employees as the "Black Zone" for its predominantly African-American workforce, Plaintiff's first line supervisor is Maurice Evans, Suitland Zone Manager. Mr. Evans reports directly to Nancy Bechtol.

32. At a weekly managers' meeting on February 6, 2007, Evans, discussed the snow removal plan for the next day, February 7, 2007. Mr. Evans put James Cutler and David Sidbury in charge of snow removal and asked them about their plan and who they were going to bring in to help with the snow removal effort. Mr. Sidbury informed Mr. Evans that he wanted Oscar Waters, a WG-10, to be on his snow removal team. Mr. Cutler informed Mr. Evans that he wanted James Taylor, Maintenance Mechanic, also a WG-10, to assist.

33. Mr. Evans instructed Mr. Cutler that Mr. Taylor would be permitted to assist. Mr. Evans further stated that only one WG-10 would be permitted to assist with snow removal; therefore, Oscar Waters was not permitted to participate if Taylor was present. Contrary to Mr. Evans' directive, on February 7, 2007, Mr. Sidbury, without Plaintiff's knowledge or approval, called Mr. Waters in to help with the snow removal detail. Mr. Sidbury's apparent justification for calling Mr. Waters to request that he come in was because the other members of the team he assembled did not show up and he needed Mr. Sidbury to ensure adequate coverage.

34. Mr. Sidbury was present at the February 6, 2007 meeting wherein Evans indicated that Waters was not authorized to come in for snow removal. Mr. Waters would

cell phone. He responded, "Now if you go and pull everyone's records, everyone is going to know that it is you who did it, and then we are going to have to put a policy in place and everyone will know it is because of you." He then repeated, "this is coming from downtown, and you and I have talked about the fact that you know you don't have any friends from downtown."

40. Without being asked, Plaintiff surrendered his SI cell phone to Mr. Evans. Mr. Evans refused to take the phone and directed Plaintiff to keep it.

41. Upon information and belief, several of Plaintiff's co-workers who are outside of his protected class(es), have used their cell phone more than Plaintiff, yet none of them were suspended, let alone disciplined for their alleged cell phone abuse.

42. On March 27, 2007, Plaintiff, through counsel, responded to Evan's Proposal to Suspend in a letter addressed to Nancy Bechtol, the Deciding Official.

43. On April 24, 2007, Bechtol issued her decision to suspend Plaintiff for seven days without pay.

44. Plaintiff served his suspension without pay from May 6, 2007 to May 12, 2007.

## COUNT I
## DISCRIMINATION BASED ON RACE AND COLOR

45. Plaintiff adopts and incorporates by reference herein each and every preceding paragraph above.

46. The conduct described above including, stripping Plaintiff of his position in the EMZ, forcing him to transfer to a new position with a different series and promotion potential in the EMZ, disciplining and suspending him for seven days without pay was

motivated by Mr. Winston's race and color in violation of Title VII of the Civil Rights Act of 1965, as amended 42 U.S.C. § 2000 *et seq*.

47. As a result of the discriminatory conduct described above, Mr. Winston has suffered considerable economic and emotional injuries.

## COUNT II
## RETALIATION

48. Plaintiff adopts and incorporates by reference herein each and every preceding paragraph above.

49. Plaintiff engaged in protected activity by filing his complaint in June 2006. Plaintiff was issued a Proposal to Suspend in February 2007 and a decision on the Proposal in April of 2007, suspending him from work without pay for seven days. Plaintiff's suspension was unlawfully motivated by Plaintiff's engagement in protected activity in violation of Title VII of the Civil Rights Act of 1965, as amended 42 U.S.C. § 2000 *et seq*.

50.    As a result of the retaliatory conduct described above, Mr. Winston has suffered considerable economic and emotional injuries.

## COUNT III
## HOSTILE ENVIRONMENT

51. Plaintiff adopts and incorporates by reference herein each and every preceding paragraph above.

52. As a result of the above-referenced retaliatory and/or discriminatory conduct, the Defendant has subjected the Plaintiff to a hostile environment based on discrimination

9

and/or retaliation, in violation of Title VII of the Civil Rights Act of 1965, as amended 42 U.S.C. § 2000 *et seq*.

53. As a result of the hostile environment described above, Mr. Winston has suffered considerable economic and emotional injuries.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Enter a declaratory judgment that Defendant's forced transfer, reassignment to the Suitland Zone, subjection to a hostile environment and suspension constituted unlawful discrimination against Plaintiff on account of his race in violation of Title VII of the Civil Rights Act of 1964, as amended;

b. Issue a mandatory injunction directing the Defendant to restore Plaintiff to his position in the East Mall Zone or an equivalent position, at the appropriate step, series, and grade level;

c. Issue a mandatory injunction directing the Defendant to restore any all benefits and salary Plaintiff lost as a result of his seven-day suspension;

c. Issue a prohibitory injunction to enjoin Defendant from further acts of discrimination and retaliation against Plaintiff;

d. Order the Defendant to make the Plaintiff whole by granting full back pay, front pay, and reimbursement for other monetary and non-monetary benefits, and prejudgment interest, all in amounts to be proved at trial;

e. Order that the defendant pay plaintiff compensatory damages in an amount to be determined at trial;

f. Retain jurisdiction over this action to ensure full compliance with the Court's orders and require the Defendant to file such reports as the Court deems necessary to evaluate such compliance;

g. Order the Defendant to pay Plaintiff's costs and expenses and reasonable attorneys' fees in connection with this action; and

h. Grant such other and further relief to the Plaintiff as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Respectfully Submitted,

_____
Sundeep Hora (D.C. Bar No. 472944)
ALDERMAN, DEVORSETZ & HORA PLLC
1025 Connecticut Ave., NW
Suite 615
Washington, D.C. 20036
Tel. 202.969.8220
Fax 202.969.8224
E-mail: shora@a-dlaw.com

COUNSEL FOR PLAINTIFF

11