**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TOMMY J. WINSTON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **Civ. Act. No. 07-1411 (RWR)** |
| | ) |
| **CRISTIAN SAMPER,** | ) |
| **Acting Secretary, Smithsonian Institution,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

**DEFENDANT'S MOTION FOR DISMISSAL**

Defendant Cristian Samper, the Acting Secretary for the Smithsonian Institution

("Defendant" or "Smithsonian"), respectfully moves pursuant to Fed. R. Civ. P. 12(b)(1) and

12(b)(6) to dismiss Plaintiff's Complaint of employment discrimination, retaliation and hostile

work environment.

Plaintiff brings this action pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §§

2000e, et seq. Plaintiff is an employee of the Smithsonian and his complaint alleges that:

(1) he was discriminated against based on his race (African American) and color (Black) when

the Smithsonian reassigned him from a duty station in Washington, D.C., to a duty station in

Suitland, Maryland (Count IA); (2) he was discriminated against based on his race and color

when the Smithsonian suspended him for seven days for failure to follow orders and his misuse

of a Smithsonian cell-phone (Count I); (3) he was retaliated against when the Smithsonian

suspended him for seven days (Count II); and (4) he was subject to a hostile work environment

when he was reassigned to Suitland, Maryland and suspended for seven days (Count III). See

First Amended Complaint (Compl).

Plaintiff's allegations that he was discriminated against when the Smithsonian reassigned him from Washington, D.C., to Maryland should be dismissed because he failed to timely exhaust his administrative remedies on that claim. Plaintiff's claim of retaliation should be dismissed because he cannot establish the necessary temporal link between the protected activity of June 2006 and the decision to suspend him for seven days in April of 2007. See Compl. ¶ 49. In addition, Plaintiff's claims of discrimination and hostile work environment should likewise be dismissed. In support of this motion, Defendant respectfully refers the Court to the attached memorandum of points and authorities.

Respectfully submitted,

/s/
_____
JEFFREY A. TAYLOR,
D.C. BAR # 498610
United States Attorney

/s/
_____
RUDOLPH CONTRERAS,
D.C. BAR # 434122
Assistant United States Attorney

/s/
_____
HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
(202) 305-1334

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TOMMY J. WINSTON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | )    **Civ. Act. No. 07-1411 (RWR)** |
| | ) |
| **CRISTIAN SAMPER,** | ) |
| **Acting Secretary, Smithsonian Institution,** | ) |
| | ) |
| **Defendant.** | ) |
|                      | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION FOR DISMISSAL**

**I. FACTUAL AND PROCEDURAL HISTORY**

a. <u>Reassignment to Suitland</u>

Plaintiff, Tommy Winston, is an African American male, employed by the Smithsonian in its Suitland Zone in Suitland, Maryland. <u>See</u> First Amended Complaint, (Compl.), ¶ 4. Before being reassigned to Suitland, plaintiff was employed by the Smithsonian as a Facilities Management Specialist in the East Mall Zone in Washington, D.C. <u>See</u> Compl., ¶¶ 1, 23. In the East Mall Zone, plaintiff was physically stationed at the National Air and Space Museum ("NASM"). <u>See</u> <u>id.</u>, ¶ 1.

Plaintiff alleges that on January 19, 2006, he was informed by his first line supervisor, David Samec, that a co-worker, Kendra Gastright, "had accused him of threatening her with violence during a January 13, 2006 meeting." Compl., ¶ 22. Mr. Samec, as part of his investigation into Ms. Gastright's complaint, "ordered [plaintiff] to remove all of his belongings

from his office in the East Mall Zone. . . and move to the American Indian Museum across the

street." Id., at ¶ 23.  Plaintiff was told "not to enter" NASM "or attend any meetings at which

[Ms.] Gastright may be present." Id.

By Memorandum dated January 23, 2006, Mr. Samec reassigned plaintiff to the Suitland

Zone as a Facility Management Specialist, GS-1640, effective January 24, 2006.  See Compl., ¶

24; see also Exhibit ("Ex.") 1.[1]  Appellant acknowledged receipt of the Memorandum on January

23, writing at the bottom:  "I do not concur.  I feel my right[s] have been violated."[2]  See Ex. 1.

Plaintiff, while represented by counsel, initiated contact with an EEO counselor on April

27, 2006, concerning his reassignment.  This was more than 90 days after the effective date of his

reassignment to Suitland.  See Compl., ¶ 5; Ex. 4.  Plaintiff claimed his reassignment to Suitland

was discriminatory.  See Ex. 4.  On June 26, 2006, plaintiff filed a formal discrimination

complaint with the Smithsonian's Office of Equal Employment and Minority Affairs

("OEEMA").  See Compl., ¶ 6; Ex. 5.

OEEMA dismissed plaintiff's claim under 29 C.F.R. § 1614.105(a)(1) because plaintiff

failed to contact an EEO counselor within 45 days from the effective date of his reassignment.

See Compl., ¶ 7; Ex. 6, at 2.  Plaintiff appealed that decision to the Equal Employment

---

[1] Attached to this motion are several documents referred to and incorporated by reference into plaintiff's complaint. See Banks, 496 F.Supp.2d. 146 (D.D.C. 207)(in deciding a motion to dismiss, a court may consider documents attached as exhibits or incorporated by reference into the complaint).

[2] Mr. Samac ultimately determined that plaintiff had "conducted [him]self inappropriately and unprofessionally in [a January 13] meeting with Ms. Gastright, and that [his] conduct was disruptive to the work environment." See Compl., ¶ 26, Ex. 2.  As a result, by memorandum dated February 7, 2006, Mr. Samac proposed that plaintiff be suspended from work and pay for one calendar day for misconduct. Id.  By Memorandum dated March 27, 2006, Nancy Bechtol, plaintiff's second-line supervisor, issued a final decision on Mr. Samec's proposal, see Ex. 3, which plaintiff received on April 3, 2006.  See Compl., ¶ 28.  Although Ms. Bechtol concluded that plaintiff's interactions with Ms. Gastright had "not always been courteous or respectful," see Ex. 3, at 2, she rescinded the proposal to suspend and instead issued a confirmation of counseling.  See Compl., ¶ 28; Ex. 3.  Ms. Bechtol stated that her decision would "NOT be filed in [plaintiff's] Official Personnel Folder." See Ex. 3 (emphasis in original).

Opportunity Commission's Office of Federal Operations ("OFO"), which affirmed the dismissal. See Compl., 9; Ex. 7.

b. Seven-day suspension

Over a year after plaintiff was reassigned to Suitland, plaintiff alleges that at a weekly managers' meeting on February 6, 2007, Maurice Evans, the Suitland Zone Manager, and plaintiff's supervisor, discussed a snow removal plan for snow that was anticipated to fall the next day, February 7, 2007. See Compl. ¶ 32. David Sidbury and James Cutler were also at the meeting. Both were subordinate to plaintiff but were in charge of snow removal. See id. According to the complaint, Mr. Sidbury and Mr. Cutler each recommended a grade WG-10 employee to assist with the snow removal. Id. Mr. Evans decided that only one WG-10 employee, James Taylor, would be allowed to assist. See id. ¶ 33. Contrary to the orders of Mr. Evans, another WG-10 employee, Oscar Waters, was called to help with the snow removal in addition to Mr. Taylor. See id., ¶ 33-34. Mr. Waters was never told that he need not show up for duty on February 7, 2007. See id.

As a result, on February 28, 2007, Mr. Evans proposed that plaintiff be suspended for failure to carry out instructions related to the snow removal detail and for the excessive use of his Smithsonian-issued cellular phone. See Compl. ¶ 36; see also Ex. 8. Ms. Bechtol upheld the suspension by Memorandum dated April 24, 2007. See Compl., ¶ 43; see also Ex. 9. Plaintiff claims, inter alia, that the April 24, 2007, suspension was in retaliation for his filing an EEO complaint in June 2006. See Compl., ¶ 49.

3

## II.  ARGUMENT

### PLAINTIFF'S ALLEGATIONS OF RACE AND COLOR DISCRIMINATION BASED UPON HIS REASSIGNMENT TO MARYLAND SHOULD BE DISMISSED FOR THE FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

"Dismissal results when a plaintiff fails to exhaust administrative remedies." Thrash v. Library of Congress, 2006 WL 463251 (D.C. Cir. 2006) (citing Gillet v. King, 931 F.Supp 9, 12-13 (D.D.C. 1996) (dismissing plaintiff's Title VII claim for failure to exhaust administrative remedies)).  Plaintiff having failed to timely file the reassignment claim at the administrative level may not now resurrect it before the District Court.  See Carter v. Greenspan, 304 F.Supp.2d 13, 22 (D.D.C. 2004); Price v. Greenspan, 374 F.Supp.2d 177, 184 (D.D.C. 2005) ("[f]ederal employees may only bring Title VII lawsuits in federal court if they have exhausted remedies available through the administrative process").

Under rulemaking authority delegated by Title VII, see 42 U.S.C. §2000e-16(b), the EEOC has "established detailed procedures for the administrative resolution of discrimination complaints, including a series of time limits for seeking informal adjustment of complaints, filing formal charges, and appealing agency decisions to the Commission."  Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997); 29 C.F.R. Part 1614 (Federal Sector Equal Employment Opportunity).  The EEOC's regulations provide that "aggrieved employees or applicants for employment who allege they have been discriminated against must first consult an agency EEO counselor before filing a complaint of discrimination and must do so within 45 days of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  29 C.F.R. §1614.105(a)(1).

4

If the matter is not resolved through informal counseling, the aggrieved employee must, within 15 days, file a written complaint with the agency that allegedly discriminated against him. 29 C.F.R. §1614.106(a)-(c).  The agency must investigate the matter within 180 days or reject the complaint and issue a final dismissal.  Id. at §1614.106(d)(2).  At the conclusion of the agency's investigation, the complainant may request a hearing before an EEOC administrative judge or an immediate final decision by the agency.  Id. at §1614.108(f).  If the employee chooses the former, the EEOC administrative judge will conduct a hearing and make factual and legal findings, which will be transmitted to the agency as a recommended decision.  The agency then issues a final decision.  Id. at §1614.109(g) and .110.

A complainant who receives a final adverse decision from his agency may appeal that decision to the EEOC within 30 days, or may file a civil action within 90 days.  29 C.F.R. §1614.408; see also  Wilson v. Pena, 79 F.3d 154 (D.C. Cir. 1996); Holly v. Secretary of Veterans Affairs, 165 F.3d 244, 246 (3d Cir. 1999).  Alternatively, a complainant also may file a civil action at any time after his complaint has been pending before the agency or the EEOC for at least 180 days.  42 U.S.C. §2000e-16(c); 29 C.F.R. §1614.408.

Compliance with these procedures and time lines set forth for administrative review are mandatory.  "Complainants *must* timely exhaust these administrative remedies before bringing their claims to court."  Bowden, 106 F.3d at 437; Battle v. Rubin, 121 F. Supp. 2d 4, 7 (D.D.C. 2000) ("a party must timely file all applicable administrative complaints and appeals in order to bring a claim in federal court"); Williams v. Munoz, 106 F. Supp. 2d 40, 42 (D.D.C. 2000) ("timely administrative charge is a prerequisite to initiation of a Title VII action").  As the U.S. Supreme Court has stated, "'strict adherence to the procedural requirements specified by the

legislature is the best guarantee of evenhanded administration of the law." <u>National Railroad Passenger Corporation v. Morgan</u>, 536 U.S. 101, 108 (2002) (<u>quoting</u> <u>Mohasco Corp. v. Silver</u>, 447 U.S. 807, 826 (1980)).

The reason for this result is clear. The exhaustion requirement "serves the important purposes of giving the charged party notice of the claim and narrow[ing] the issues for prompt adjudication and decision." <u>Park v. Howard University</u>, 71 F.3d 904, 907 (D.C. Cir. 1995) (citation omitted). Moreover, it "gives federal agencies an opportunity to handle matters internally wherever possible" and "ensure(s) that the federal courts are burdened only when reasonably necessary" <u>Brown v. Marsh</u>, 777 F. 2d. 8, 14 (D. C. Cir 1985). Under the statutory framework a plaintiff must exhaust his or her administrative remedies and the agency must be given the initial opportunity to resolve the issue internally. <u>Lamont v. Forman Bros.,Inc.</u>, 410 F. Supp. 912, 917 (D.D.C. 1976). The agency is unable to carry out its responsibilities under Title VII if it is not timely and fully informed of the basis of the complaint. Furthermore, as the court observed in <u>Milton v. Weinberger</u>, 645 F.2d 1070, 1077 (D.C. Cir. 1981), the reasons for limiting claims to present violations is to "protect employers from the burden of defending claims arising from employment decisions that are long past. <u>Delaware State College v. Rick</u>, [449] U.S. [261] (1980)." Accordingly, the failure of plaintiff to avail himself of these procedures results in dismissal of the claims. <u>Brown v. General Services Administration</u>, 425 U.S. 820, 832.

The exhaustion requirement is not a mere technicality. The Court of Appeals has admonished that a district court should not "allow liberal interpretation of an administrative charge to permit a litigant to bypass the title VII administrative process." <u>Park</u>, 71 F.3d at 907. Moreover, under <u>Morgan</u>, *each* incident of discrimination and *each* retaliatory adverse

6

employment decision "constitutes a separate actionable, unlawful employment practice," for which a timely administrative complaint must be filed.  Id.

Application of the exhaustion requirement to plaintiff's discrimination claim challenging his reassignment is straightforward .  See Count I.  The plain language of 29 C.F.R. § 614.105(a)(1) states that the 45-day period for contacting an EEO counselor begins to run from the "effective date" of the challenged personnel action.  The Memorandum reassigning plaintiff to the Suitland Zone stated:

> **Effective January 24, 2006,** you are being reassigned to **Suitland Zone** as Facility Management Specialist, GS-1640.

Ex. 1 (emphasis in original).

Plaintiff, accordingly, was required to contact an EEO counselor by 45 days from January 24, 2006, or, by March 10, 2006.  But plaintiff, by his own admission, did not contact a counselor until April 27, 2006, see Compl., ¶ 5, over ninety days after the effective date of his reassignment.  Plaintiff's claim challenging his reassignment should be dismissed for failure to timely exhaust administrative remedies.  See, e.g., Raines, 424 F.Supp.2d at 65.

Plaintiff argued at the administrative level that he had no obligation to contact an EEO counselor within 45 days of his reassignment because the reassignment was "temporary" and contingent on the outcome of the disciplinary process.  See Ex. 7.  This argument is flawed for several reasons.  First, the reassignment memorandum did not state that plaintiff's reassignment was temporary or preliminary.  To the contrary, it stated — simply, clearly, and without limitation — that: **"Effective January 24, 2006,** you are being reassigned to **Suitland Zone** as

7

Facility Management Specialist, GS-1640." Ex. 1 (emphasis in original).  Plaintiff remains in

Suitland to this day.  <u>See</u> Compl., ¶ 30.

Secondly, Section 1614.105(a)(1) means what it says:  the effective date of the personnel

action is "the pertinent date triggering the 45-day limitations period."  <u>Foster v. Gonzales</u>, No.

06-1288, 2007 U.S. Dist. LEXIS 46591, at *10-*11 (June 28, 2007).  In <u>Foster</u>, the Court

considered a plaintiff's argument that a personnel action should not be deemed final until the

conclusion of an internal appeal.  In rejecting that argument, Judge Bates held:

> [T]his argument ignores the plain language of the regulation, which requires a
> claimant to initiate contact with an EEO counselor, 'in the case of personnel
> action, within 45 days of the *effective* date of the action.' § 1614.105(a)(1)
> (emphasis added).  The regulation's explicit reference to the effective date of the
> allegedly discriminatory personnel action makes it altogether unnecessary to
> determine whether and when plaintiff had notice of what he calls a 'final'
> termination decision. . . .  When an adverse personnel action has been taken, the
> plain language of the regulation identifies the effective date of that action . . . as
> the only relevant date for calculating the 45-day deadline.

<u>Foster</u>, 2007 U.S. Dist. LEXIS 46591, *11-*12 (emphasis in original).  January 24, 2006,

accordingly, is the "only relevant date" for calculating the 45-day deadline.  Because the 45-day

period therefore expired March 10, 2006, plaintiff failed to timely exhaust administrative

remedies.

Nor should the 45-day period be tolled.  The instant case does not present any

"extraordinary" circumstance for tolling.  <u>See</u> <u>Smith-Haynie v. District of Columbia</u>, 155 F.3d

575, 579-80 (D.C. Cir. 1998).  Because the 45-day time limit is not jurisdictional, it is subject to

estoppel and equitable tolling.  <u>See</u> <u>Aceto v. England</u>, 328 F.Supp.2d 1, 5 (D.D.C. 2004).

However, the plaintiff bears the burden of proving facts sufficient to excuse non-compliance with

the filing requirement.  <u>Williamson v. Shalala</u>, 992 F.Supp. 454, 458 (D.D.C. 1998).  This burden

is heavy: a court's power to equitably toll time requirements may be exercised "only in extraordinary and carefully circumscribed instances." Smith-Haynie, 155 F.3d at 579-80; accord Aceto, 328 F.Supp.2d at 6.

Plaintiff received the reassignment memorandum on January 23, 2006, one day before its effective date; see Compl., ¶ 17; the memorandum clearly stated its effective date; see id.; and plaintiff believed on January 23 that the reassignment was an adverse action. See Ex. 1.[3] Plaintiff simply failed to seek counseling in a timely manner, despite being represented by counsel. See Ex. 4.

Because plaintiff failed to comply with the legal requirement of contacting an EEO counselor within 45 days of his reassignment, the reassignment claim in Count I should be dismissed. [4]

---

[3] After signing the reassignment memorandum on January 23, 2006, plaintiff wrote at the bottom: "I do not concur. I feel my right[s] have been violated." Ex. 1.

[4] To the extent Count I can be read to challenge defendant's decision to issue a confirmation of counseling, cf. supra n.6, that claim should be dismissed because a confirmation of counseling is not an adverse action. See Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999) (to state a prima facie claim of race discrimination, a plaintiff must show that "[]he suffered an adverse employment action"). To be "adverse," the challenged action must have "materially adverse consequences affecting the terms, conditions, or privileges of [the plaintiff's] employment or . . . future employment opportunities." Id. at 457. A confirmation of counseling is not an adverse action under this standard. See Ware v. Billington, 344 F. Supp. 2d 63, 76 (D.D.C. 2004) ("of course, the counseling memorandum of October 30, 2003 standing alone (without the withholding of leave) is not an adverse action") (citing Brown, 199 F.3d at 458 & n.11); Rhodes v. Chertoff, No. 04-1715, 2005 U.S. Dist. LEXIS 36121, *17 (D.D.C. Aug. 4, 2005) ("[s]tanding alone, evaluations and counseling do not materially affect an employee such that they create tangible harm"). The confirmation of counseling issued to plaintiff here did not result in any disciplinary action, reduction in pay, or cause plaintiff any "objectively tangible harm." Brown, 199 F.3d at 457. It was not even placed in plaintiff's Official Personnel Folder. See Ex. 3, at 2.

**PLAINTIFF CAN NOT ESTABLISH A PRIMA FACIE CASE OF RETALIATION**

In order to survive summary judgment in a Title VII case, a plaintiff must produce some evidence to show that the Agency intentionally retaliated against him. Title VII provides, in pertinent part, that it is unlawful for an employer to discriminate against an employee because the employee "has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) he engaged in protected activity, which was known by the alleged retaliator, (2) he was subject to an adverse action by his employer, and (3) there is a causal link between the adverse action and the protected activity. Rochon v. Gonzales, 438 F.3d 1211, 1219-20 (D.C. Cir. 2006). See also Burlington Northern & Santa Fe Ry. Co. v. White, 126 S.Ct. 2406, 2409 (2006); Paquin v. Federal National Mortgage Association, 119 F.3d 23, 31 (D.C. Cir. 1997); Passer v. American Chem. Soc'y, 935 F.2d 322, 331 (D.C. Cir. 1991); Mitchell v. Baldridge, 759 F.2d 80, 86 (D.C. Cir. 1985); McKenna v. Weinberger, 729 F.2d 783, 790 (D.C. Cir. 1984).

A plaintiff must ultimately demonstrate "materially adverse consequences . . . such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm," which would have dissuaded a reasonable employee from making or supporting a charge of discrimination. Rochon, 438 F.3d at 1219 (citing Brown, 199 F.3d at 457). As demonstrated below, applying the governing procedural and substantive law to the undisputed facts of this case yields the conclusion that summary judgment should be entered against Plaintiff's retaliation claims.

10

The sufficiency of a temporal proximity is critical in establishing causation in a retaliation context. The considerable time lapse involved here of ten months is simply insufficient as a matter of law to establish a causal connection between the protected activity and a retaliatory action. As this Court stated in Brodetski v. Duffey, 199 F.R.D. 14, 19-20 (D.D.C. 2001):

> A causal connection may be inferred "by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." Mitchell, 759 F.2d [60, 86 (D.C. Cir. 1985)]. By showing both knowledge and proximity in time, plaintiff may establish the causal connection needed to make a prima facie case of retaliation. Although courts have not established the maximum time lapse between protected Title

VII activity and alleged retaliatory actions for establishing a causal connection, courts generally have accepted time periods of a few days up to a few months and seldom have accepted time lapses outside of a year in length.

Shortly after Brodetski, the Supreme Court had the opportunity to review the connection between a complainant's "protected activity" and actionable conduct by the complainant's employer, and how the two activities must be close temporally to establish a claim of retaliation. The Court stated that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'...[a]ction taken (as here) 20 months later suggests, by itself, no causality at all." Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001)(citations omitted).

Consistent with Breeden, the considerable lapse in time between Plaintiff's EEO activity on June 26, 2006 and of the suspension on April 24, 2007, is simply insufficient as a matter of law to establish a retaliation claim. See Breeden, supra., at 274-275 (2001) (without more, twenty

11

months suggests "no causality at all."); Mayers v. Laborers Health & Safety Fund, 478 F.3d 364, 369 (D.C. Cir 2007)(eight or nine month gap too long); see also, e.g., Richmond v. Oneok, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (three months insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174-1175 (7th Cir. 1992) (four months insufficient); Mitchell v. Baldridge, 759 F. 2d 80, 86 (D.C. Cir. 1985) (adverse action must take place "shortly" after protected activity); Sullivan v. Powell, 300 F. Supp. 2d 85, 92-93 (D.D.C. 2004) (over three months and fifteen months both insufficient); Ball v. Tanoue, 133 F. Supp. 84, 91-92 (D.D.C. 2002) (sixteen months insufficient); Devera v. Adams, 874 F. Supp. 17, 21 (D.D.C. 1995) (eight months not strongly suggestive of causal link); Garrett v. Lujan, 799 F. Supp. 198, 202 (D.D.C. 1992) (one year too long); Parrott v. Cheney, 748 F. Supp. 312, 318-319 (D. Md. 1989) (four months too long); Juarez v. Ameritech Mobile Communications, Inc., 746 F. Supp. 798 (N.D. Ill. 1990) (almost 6 months insufficient), aff'd per curiam, 957 F. 2d 317 (7th Cir. 1990).

Accordingly, plaintiff has failed to establish a prima facie case of retaliation on his suspension claim.

## PLAINTIFF CAN NOT ESTABLISH EITHER A DISCRIMINATION CLAIM OR A RETALIATION CLAIM REGARDING HIS SEVEN DAY SUSPENSION

The procedure for resolving a claim of discrimination and retaliation such as the instant one is well- established. Under the scheme first set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973), the burdens of production first shift from employee to employer. The plaintiff must first, by a preponderance of the evidence, establish a prima facie case of discrimination or retaliation. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). If

12

the employee succeeds, the employer then must introduce evidence of a legitimate, nondiscriminatory reason for its action.  See McDonnell Douglas, 411 U.S. at 802.

As a general matter, therefore, to establish a prima facie case of discrimination based on race, or color under Title VII, a plaintiff must demonstrate by a preponderance of the evidence that (1) he was a member of a protected group, (2) an adverse employment action took place, and (3) the unfavorable action gives rise to an inference of discrimination.  Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002).

Once the employer articulates a legitimate non-discriminatory reason, the burden shifts back to the employee to present evidence of pretext that rebuts the legitimate reason.  See Freedman v. MCI Telecomm. Corp., 255 F.3d 840, 844 (D.C. 2001).  It is not sufficient for the employee to disagree with the employer's stated legitimate non-discriminatory reason; rather, the employee must produce evidence that it was not the real reason for the employer's actions. Carpenter v. Fed. Nat'l Mortgage Ass'n, 165 F.3d 69, 72 (D.C. Cir. 1999) (if plaintiff merely shows that the legitimate non-discriminatory reason offered by the employer is a pretext for a decision intending to cover up an unsavory reason - - but one that is not illegal under the anti-discrimination law - - the plaintiff is not entitled to try issues of fact, and summary judgment for the employer is appropriate.); Hastie v. Henderson, 121 F. Supp.2d, 72, 77 (D.D.C. 2000) aff'd, No. 00-5423, 2001 WL 793715 (D.C. Cir. 2001) ("To defeat a motion for summary judgment, a plaintiff cannot create a factual issue of pretext with mere allegations or personal speculation, but rather must point to 'genuine issues of material fact in the record.'").  "In examining pretext, the question is whether the employer honestly believed its proffered reason. . . .The fact that the employer was mistaken or based its decision on bad policy, or even just plain stupidity, goes

13

nowhere as evidence that the proffered explanation is pretextual." Essex v. U.S. Postal Serv., 111 F.3d 1304, 1320 (7th Cir. 1997); see also Fischbach, 86 F.3d at 1183 (noting that to rebut the employer's non-discriminatory explanation "[i]t is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible[, but plaintiff] must show that the explanation given is a phony reason."). The plaintiff must produce more than a scintilla of evidence to avoid summary judgment. See Freedman, 255 F.3d at 845.

Even assuming arguendo, that Plaintiff could establish a prima facie case of retaliation regarding his suspension in April 2007, Defendant has articulated legitimate, non-retaliatory reasons for its removal action. See Burdine, 450 U.S. at 254-55. In the instant case, the Plaintiff was suspended for seven days because he failed to carry out the instructions of his superior related to the snow removal detail and for the excessive use of his Smithsonian-issued cellular phone. See Compl. ¶ 36; Ex. 8.

For both retaliation and discrimination claims, in articulating a legitimate, non-retaliatory reason, the employer's burden is one of production, not of proof, since the ultimate burden of persuading the court that the employer intentionally retaliated remains at all times with the employee. See Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998); Hicks, 509 U.S. at 507. The employer's burden is satisfied if it simply explains what it has done or produces evidence of a legitimate, non-retaliatory reason. Hicks, 509 U.S. at 509. The legitimate non-retaliatory reason need not be one with which the employee agrees. An employer may act for any reason, whether good or bad, so long as unlawful retaliation is not a motivating factor for the employer's action. See Burdine, 450 U.S. at 259; Simmons v. Billington, 53 Emp. Prac. Dec. ¶ 39, 994, 1989 WL 222729, at *3 (D.D.C. 1989). "[T]he issue is not 'the correctness

14

or desirability of [the] reasons offered . . . [but] whether the employer honestly believes in the reasons it offers.'" Fischbach v. District of Columbia Dep't of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (citation omitted). The law does not make an employer liable just because the employer may have made a poor decision. See Davis v. State Univ. of New York, 802 F.2d 638, 641 (2d Cir. 1986). See Winston v. Smithsonian Sci. Info. Exch., Inc., 437 F.Supp. 456, 473 (D.D.C. 1977) ([A]n employer may make an employment decision for a good reason, a bad reason, or no reason at all so long as racial or other discriminatory distinctions do not influence the decision."), aff'd, 595 F.2d 888 (D.C. Cir. 1979). A court does not sit as a "'super-personnel department that reexamines an entity's business decisions.'" Fischbach, 86 F.3d at 1183 (citing and quoting Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986)). "Courts are without authority to 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'" Waterhouse v. District of Columbia, 298 F.3d 989, 995 (D.C. Cir. 2002)(quoting Fischbach, 86 F.3d at 1183 (quoting Milton v. Weinberger, 696 F.2d 94, 100 (D.C. Cir. 1982)).

### PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

A workplace environment only becomes "hostile" for the purposes of Title VII when offensive conduct "permeate[s] [the workplace] with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Barbour v. Browner, 181 F.3d 1342, 1347-48 (D.C. Cir. 1999) (quoting Oncale v. Sundowner Offshore Servs, Inc., 523 U.S. 75, 78 (1998)); see also Breeden, 532 U.S. at 271; Holbrook v. Reno, 196 F.3d 255, 262 (D.C. Cir 1999). "The standards for judging hostility are sufficiently demanding to ensure that Title VII does not

become a 'general civility code.'" <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787 (1998); <u>see</u> <u>also id</u>. (actionable conduct must be "extreme").  To determine whether a work environment is sufficiently hostile to be actionable under Title VII, a court is to consider: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or merely offensive; and, (4) whether the conduct reasonably interferes with the employee's performance.  <u>Id</u>. at 787-88.  "Properly applied, this will filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender related jokes and occasional teasing.'" <u>Id</u>. at 787; <u>see also id</u>. ("'mere utterance of . . . epithets which engenders offensive feelings in an employee would not sufficiently alter terms and conditions of employment to violate Title VII'") (quoting <u>Rogers v. EEOC</u>, 454 F.2d 234, 238 (5th Cir. 1971)).  Applying these principles to the case at hand, it is plain that the Plaintiff's claims of hostile work environment are without merit and should be dismissed.

Plaintiff's hostile work environment claims are based solely on the same discrete acts on which his discrimination (Count I) and retaliation (Count II) claims are based, i.e., his reassignment to Suitland and his seven-day suspension.  The single substantive sentence in plaintiff's hostile work environment claim (Count III) in Plaintiff's amended complaint states: "[a]s a result of the above-referenced retaliatory and/or discriminatory conduct, the Defendant has subjected the Plaintiff to a hostile work environment based on discrimination and/or retaliation, in violation of Title VII[.]"  Compl. ¶ 52.  The statement concerning the "above-referenced retaliatory and/or discriminatory conduct" is a reference to the very factual allegations which comprise plaintiff's discrimination and retaliation claims (his reassignment and suspension).

16

A claim alleging a hostile work environment is distinct from a claim alleging a discrete act of discrimination or retaliation.  As the Supreme Court has explained:

> Hostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct.  . . .  The 'unlawful employment practice' therefore cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.

National Passenger R.R. Corp. v. Morgan, 536 U.S. 101, 115 (2002) (internal citations omitted); see also id. at 114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'").

For this reason, courts have rejected attempts to transform claims alleging discrete acts of discrimination and retaliation into broader claims alleging hostile work environments.  See Rattigan v. Gonzales, 503 F.Supp.2d 56, 66-67 (D.D.C. 2007) ("Plaintiff should not be permitted to 'bootstrap' his alleged discrete acts of discrimination and retaliation into a broader hostile work environment claim"); Silver v. Leavitt, 2006 U.S. Dist. LEXIS 12949, at *41 (D.D.C. Mar. 13, 2006) ("The hostile work environment theory of discrimination is not applicable to discrete, identifiable, isolated actions") (citing National Passenger R.R. Corp. v. Morgan); Childs-Pierce v. Utility Workers Union of America, 383 F.Supp.2d 60, 79 (D.D.C. 2005) ("mere reference to alleged disparate acts of discrimination against plaintiff cannot be transformed, without more, into a hostile work environment claim");  Edwards v. United States Environmental Protection Agency, 456 F.Supp.2d 72, 96 (D.D.C. 2006) (citing and following decision where "the Court refused to permit the plaintiff to 'bootstrap' the same series of incidents alleged as retaliation 'into a broader hostile work environment claim'") (quoting Keeley v. Small, 391 F.Supp.2d 30,

17

51 (D.D.C. 2005)); <u>Lester v. Natsios</u>, 290 F.Supp.2d 11, 33 (D.D.C. 2003) ("Discrete acts constituting discrimination or retaliation claims, therefore, are different in kind from a hostile work environment claim that must be based on severe and pervasive discriminatory intimidation or insult.").

Plaintiff's claims, by contrast, involve discrete acts — a reassignment and a suspension — which, if deemed discriminatory and/or retaliatory, would constitute "separate actionable 'unlawful employment practice[s].'" <u>National Passenger R.R. Corp.</u>, 536 U.S. at 114.  Indeed, as one court noted in rejecting an attempt to transform a retaliation claim into a hostile environment claim:  "if the same set of facts could support both [hostile work environment and retaliation] claims, state and federal provisions that provide a separate cause of action for retaliatory acts would be rendered superfluous." <u>Gardner v. Tripp County</u>, 66 F.Supp.2d 1094, 1100-01 (D.S.D. 1998) (cited and quoted in <u>Lester</u>, 290 F.Supp.2d at 32); <u>see also</u> <u>Rattigan</u>, 503 F.Supp.2d at 67.

Plaintiff's hostile work environment claim is based on the same discrete acts he claims are discriminatory and/or retaliatory.  Count III, accordingly, should be dismissed.

## III.  CONCLUSION

Wherefore, the Acting Secretary of the Smithsonian Institute, respectfully requests that this Court  dismiss Plaintiff's Complaint because Plaintiff has failed to exhaust his administrative remedies with respect to the reassignment claim and has failed to state a claim of discrimination and/or retaliation.

Respectfully Submitted,

/s/

_____

JEFFREY A. TAYLOR,

18

D.C. BAR # 498610
United States Attorney


/s/

_____
RUDOLPH CONTRERAS,
D.C. BAR # 434122
Assistant United States Attorney


/s/

_____

HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
(202) 305-1334




OF COUNSEL:
CRAIG M. BLACKWELL
Assistant General Counsel
Smithsonian Institution
P.O. Box 23286
Washington, D.C. 20026-3286

19



# Smithsonian Institution

**Office of Facilities Management – East Mall Zone**

# MEMO

Date    January 23, 2006

To      Tommy Winston

cc      Director, Office of Facilities Management and Reliability
        Zone Manager, Suitland Zone
        Unit File

From    David Samec  _David Samec_  1/23/06
        Zone Manager – East Mall Zone

Subject    Reassignment

**Effective January 24, 2006,** you are being reassigned to **Suitland Zone** as Facility Management Specialist, GS-1640. You will **report to Maurice Evans** at 7:30 am at the MSC Building, Room 1604. Mr. Evans' phone number is (301) 238-1129, should you need to contact him.

Your initial assignment in the Suitland Zone will be under your current Position Description of Facility Management Specialist, and initially consist of:

> Helping to schedule contractor's work
> Providing cost estimates and scopes of work for various jobs
> Assisting the zone in revising the 5 year maintenance plan
> Purchasing contractor services
> Helping the zone track work tickets in Facility Center

I remind you in your transfer to Suitland Zone to not enter the National Air & Space Museum. Moving to Suitland should relieve your need to park at NASM.

If you need assistance in moving your personal or professional belongings, please work with Jeff Ridgeway at NMAI.

Signature below does not denote Employee agreement with this action; it only represents receipt of the reassignment notice.

_____          1/23/06
Acknowledgement of Receipt                 Date

_I do not Concur. I feel my right have been Violated_

SMITHSONIAN INSTITUTION
Natural Air and Space Museum
7th and Independence Ave, SW
Washington, D.C., 20560
Phone 202.633.2581

(Witnessed by) _____ 1/23/06

# Smithsonian Institution                    MEMO
Office of Facilities Management – East Mall Zone

Date    February 7, 2006

To      Tommy Winston
        Facilities Management Specialist

cc      Unit File

From    David Samec _____ 2/7/06
        Zone Manager, East Mall Zone

Subject  Proposal to Suspend

This is to notify you that I propose to suspend you from work and pay from your position
of Facilities Management Specialist, GS-1640-13, for one calendar day, for your
misconduct.

On January 15, 2005, Kendra Gastright, East Mall Zone Building Manager, notified me
of a meeting that she had with you on January 13, 2006. In that meeting, Ms. Gastright
attempted to discuss some work-related issues and to explain what was bothering her
regarding your work interactions with each other. She told you that she feels that you
belittle her both privately and occasionally publicly when she discusses work with you
and you react so sarcastically. She said that you suggested that you have an "E-9 sense of
humor" and were teasing her, and that she took things too personally. She agreed, and
asked you not to tease her because she feels insulted when you do so. Ms. Gastright said
that you then changed the subject and stated that she and Jeff Ridgeway could not "make
things work," and that you had to communicate to the maintenance personnel without
Kendra and Jeff present because of how screwed up they were. Ms. Gastright said that
you further accused her of not helping people, and told her that she was not a team player
because the night before, she pulled a report for you then stated that she hoped that you
could do the report in the future. In addition, Ms. Gastright stated that you told her that
she does not support an African American museum. Ms. Gastright stated that throughout
the entire meeting, you never agreed to stop responding to her so sarcastically or to stop
"teasing" her publicly.

When I asked you about your meeting with Ms. Gastright, you stated that nothing
happened. I do not believe that "nothing happened," as I have no reason to believe that
Ms. Gastright would make up such a detailed story if it were not true. Instead, I believe
that you conducted yourself inappropriately and unprofessionally in your meeting with
Ms. Gastright, and that your conduct was disruptive to the work environment. Further,
your refusal to stop teasing and belittling Ms. Gastright both privately and occasionally

SMITHSONIAN INSTITUTION                                                      1
Natural Air and Space Museum
7th and Independence Ave, SW
Washington, D.C., 20560
Phone 202.633.2581

publicly is disrespectful and will not be tolerated. The Smithsonian Institution and I must
be able to rely on you, as we rely on all employees, to conduct yourself professionally in
all work-related situations without causing disruption.

In proposing this action, I have considered your ten years of service with the Smithsonian
and your generally satisfactory performance. I have also considered your lack of previous
discipline. However, I find your misconduct to be so serious that it warrants a one-day
suspension.

I warn you that it is your personal responsibility to prevent any recurrence of misconduct,
and advise you that more serious disciplinary action will very likely result from such a
recurrence, up to and including removal.

If you believe that a personal problem has contributed to or caused your misconduct,
please free to participate in the Smithsonian Institution's Employee Assistance Program
(EAP). You may do this by contacting Steve Neslen, Debbie Burney or Karen Howard.
They are counselors located in the Ripley Center, room 3046A, telephone number 202-
633-1051. They will maintain the confidentiality of any conversation you choose to have
with them. If you ask to speak to a counselor on work time, I will grant you
administrative time for this purpose.

The EAP provides initial counseling and referral to facilities geared to assist employees in
resolving personal problems or health-related problems. The Smithsonian supports an
employee's participation in the EAP by granting appropriate leave and, depending on
circumstances, considering that participation as a mitigating factor in a disciplinary
decision.

You may reply to this proposal orally, in writing, or both, and you may submit affidavits
or other documentary evidence in support of your reply. If you make arrangements with
me in advance, you may have a reasonable amount of official time to prepare your
response. If you choose to reply, you must present your reply to the deciding official,
Nancy Bechtol, Director, Arts and Industries Building, Room 2269, Phone Number 202-
357-1927, within 10 calendar days after you receive this notice. Consideration will be
given to extending the 10-day reply period if you submit a written request to the deciding
official describing the need for and length of the extension you desire.

You may review the material on which I have relied in making this proposal, which is
available in Room 2269.

If you wish to be represented or accompanied by a representative, you must identify that
person, in writing, to the deciding official as soon as possible. Any change in your choice
of representative also requires written notification. A copy of this proposal is attached for

SMITHSONIAN INSTITUTION                                                                    2
Natural Air and Space Museum
7th and Independence Ave, SW
Washington, D.C., 20560
Phone 202.633.2581

you to give to your representative, if you choose to have one.

This notice is a proposal only. Any reply and supporting material you present will be fully considered before a decision is made. You will receive a written decision as soon as practicable after your reply or after the period for replying expires. Until you receive the final decision, you will continue in an active duty status and should report to work as scheduled.

If you would like advice about your rights or about the procedures to follow, please contact our Human Resources Specialist, Gwendolyn Kennedy, 750 Ninth Street, N.W., Suite 6100, telephone 202-275-0935.

Signature below does not denote employee agreement with this action; it only represents receipt of the proposal notice.

_____        _____7Feb06_____
Acknowledgement of Receipt                              Date

*I do not concur with this proposal.*
*I still believe my civil rights are*
*being violated.*

*Tony West*
*7 Feb 06*

SMITHSONIAN INSTITUTION                                                         3
Natural Air and Space Museum
7th and Independence Ave, SW
Washington, D.C., 20560
Phone 202.633.2581

 **Smithsonian Institution**                                            Memo

Office of Facilities, Engineering and Operations
Office of Facilities Management

Date   March 27, 2006

To    Tommy Winston
      Facilities Management Specialist

cc    Unit Folder

From  Nancy Bechtol          *Nancy Bechtol*
      Director, OFMR

Subject   Decision on Proposal to Suspend

This is my decision on the February 7, 2006 proposal to suspend you for one day for your misconduct.

You were given 10 days to respond to the proposal orally, in writing, or both. I received your written response dated February 15, 2006. On March 23, 2006, I met with you and Melanie Engelen, Program Management Analyst (PMOD).

In your written response, you wrote that David Samec's information in the proposal to suspend you was inaccurate. Specifically, you wrote that the date of the meeting between you and Kendra Gastright was on January 13, 2006, not January 15, 2006. Further, you wrote that the information on which the proposal was based was also inaccurate. You wrote that at the meeting on January 13, 2006, you and Ms. Gastright discussed how you could both work better with each having different managerial styles. Further, you denied belittling Ms. Gastright or making any threats. You wrote that it was a very productive meeting, and you agreed to make some changes on how you conduct business and you shook hands.

In addition, you wrote that you were told that you were being investigated for violence in the workplace, but the proposal to suspend does not mention violence in the workplace. You also wrote that you were reassigned to another zone because of an allegation that was made against you related to violence in the workplace.

In our meeting on March 23, 2006, you essentially restated the information that you provided in your written reply. You also explained that you and Ms. Gastright use strong tones, but are not threatening, and that several times you simply did not see eye-to-eye. In addition, you explained the personal challenges that you have had since November 2005.

Arts and Industries Building
900 Jefferson Drive SW Room 2269
Washington DC 20560-0424
202.357.1927 Telephone
202.786-2026 Fax

In making my decision, I have carefully considered all of the evidence in the case file, including your written and oral replies. I find that the proposal to suspend you stated the correct day of the meeting between you and Ms. Gastright, January 13, 2006. I have also considered whether you were charged with violence in the workplace. In reviewing the proposal and information in the case file, I do not find that you were charged with any violence in the workplace or making any threats. In fact, the proposal did not mention any allegations of threatening behavior. I have also considered the fact that, by your own admission, you explained that you and Ms. Gastright both have "tones" in your voice, and that although you use a "tone," you are not malicious. Based on the facts that I have available to me, I have decided to rescind the proposal to suspend you. Instead, I will issue a confirmation of counseling.

I appreciate that you stated that you did not mean to belittle Ms. Gastright; however, I believe that your interactions with Ms. Gastright have not always been courteous or respectful, regardless of whether you were actually just using your "tone" and did not mean any disrespect. I must remind you that your interactions with all employees, including Ms. Gastright, must be professional and courteous at all times. I expect all of my managers and employees to be professional and to exhibit courtesy at all levels. Courtesy, defined as daily behavior that is polite and considerate of others, is required of OFMR employees in all of their dealings with the general public, coworkers, supervisors, and all other SI employees.

I warn you that it is your personal responsibility to prevent any recurrence of misconduct and advise you that more serious disciplinary action will very likely result from such a recurrence, up to and including removal.

My decision to counsel you is final. You may respond to this memo in writing. Your response will be filed with this memo in our organizational file. This document and any response will NOT be filed in your Official Personnel Folder.

Arts and Industries Building
900 Jefferson Drive SW Room 2269
Washington DC 20560-0424
202.357.1927 Telephone
202.786-2026 Fax

05/01/2006  14:24  2029656224    ALDERMAN DEVORSETZ    PAGE  01/22

# ALDERMAN & DEVORSETZ PLLC

May 1, 2006

## FACSIMILE TRANSMITTAL SHEET

| | | | |
|---|---|---|---|
| **TO:** | Shadella Davis | **FAX:** | 202-275-2055 |
| **FROM:** | Sundeep Hora, Esq. | **TEL:** | 202-275-0155 |
| **PAGES:** | 22 (including cover sheet) | **RE:** | Tommy Winston |

Please see the attached "Request for Counseling" form. Thank you.

NOTICE:

This facsimile transmission is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this facsimile is not the intended recipient or the employee or agent responsible for delivering this transmission to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone (call collect at (202) 969-8220) and immediately destroy this facsimile cover page and all its attachments.

1025 CONNECTICUT AVENUE, NW • SUITE 1000 • WASHINGTON, DC 20036
(202) 969-8220 • FAX (202) 969-8224 • WWW.A-DLAW.COM

## SMITHSONIAN INSTITUTION
## OFFICE OF EQUAL EMPLOYMENT AND MINORITY AFFAIRS (OEEMA)

Employees or applicants for employment seeking the counseling services of OEEMA are requested to complete and return this form to 750 Ninth Street, NW, (MRC 0921), Washington, D.C. 20560, (ATTN: Complaints Program) or fax to 202-275-2055.  Please complete and return this form within five (5) calendars days.

1. **Please provide the following information.**

Name: _Tommy Winston_

Job Title: _Project Coordinator_ Series _1640_  Grade _13_

Place of Employment: _Smithsonian_

Work Phone No: _202-633-1543_ Ext____  Home Phone No: _301-839-0616_

Mailing Address: _601 Independence Ave, SW_

_Washington DC 20560_

2. **Primary Agency Witness** (Individual(s) who discriminated)

Name: _David Samec & Nancy Bechtol_

Address: ____

Telephone Number: _Samec (633-2652), Bechtol (357-1927)_

Immediate Supervisor: ~~David Samec~~ currently my supervisor is Maurice Evans

Telephone Number: _301-238-1129_

3. **Please provide the base(s) on which you believe discriminatory actions were taken.**
(e.g. "Race: Asian American" or "Sex: Female")

a) [X] Race (Specify i.e. Asian, African American) _African-American_

b) [X] Color (Specify i.e. black) _black_

c) [ ] National Origin (Specify i.e Columbian) ____

d) [ ] Sex (Specify i.e. Female, Male) ____

e) [ ] Age (Date of Birth i.e. 8/10/52 ) ____

Case 1:07-cv-01411-RWR   Document 10-5   Filed 11/06/2007   Page 3 of 7
05/01/2006  14:24   20296_ _24          ALDERMAN DEVORS.                    PAGE  03/22

04/27/2006  14:57   2022752055          SMITHSONIAN OEEMA          PAGE  03/89

f) [ ] **Disability** (Specify i.e. mental or physical)_____

g) [ ] **Religion** (Specify i.e. Catholic ) _____

h) [ ] **Reprisal** (Complete # 7 below)

i) [ ] **Sexual Harassment**


4. **If you have an attorney or someone representing you concerning the matters raised in this complaint, please provided the following:**

Name: _Sundeep Hora, Alderman ? Devorctz, PLLC_

Address: _1025 Connecticut Ave., NW , Ste 1000_

City: _Washington_          State: _DC_     Zip: _20036_

Telephone Number: _2u2-969-8 220_ / _Fax (202 -969-8224)_


5. **On what date(s) did the alleged discrimination take place?** _Please see attached_


6. **Please explain as clearly as possible:** (use additional sheets, if necessary, and attach copies of all supporting materials pertaining to your claim.)

(a) **what happened( how you were discriminated against and the date of each incident)**

_Please see attached._

05/01/2006  14:24    20296_  24                    ALDERMAN DEVORS,                    PAGE  04/22

04/27/2006  14:57    2022752855                SMITHSONIAN OEEMA                    PAGE  04/09

**(b) why you believe it happened**    *Pleax see attached.*

**(c) explain who and how other persons were treated differently from you.**

*Kendra Gastright — Please see attached.*

**7. If you are alleging reprisal for having filed or participated in an EEO complaint, please explain in detail:**

**(a) who did it**

**(b) what was done**

**(c) when was it done**

05/01/2006  14:24    202965___4                    ALDERMAN DEVORSE.                    PAGE  05/22

04/27/2006  14:57    2022752055                     SMITHSONIAN OEEMA                   PAGE  05/09

8. What remedy are you seeking for the alleged discrimination?

My Former job, good name, damages, and attorneys fees and an apology.

9. Do you want to remain anonymous?    [X] No    [ ] Yes

If you want to remain anonymous, please clarify what you would like OEEMA to do.

10. I have received a copy of the Alternative Dispute Resolution (ADR) Brochure and have been offered ADR. My decision is as follows:

[ ] Yes, I would like to participate in OEEMA's ADR Program. I understand that OEEMA will contact management to request a representative and to offer management an opportunity to participate in ADR. I understand that participation in ADR is voluntary.

[X] No, I do not want to participate in OEEMA's ADR Program. I understand that my complaint will proceed through the traditional EEO counseling process.

Tommy Winston  1 May 06
Signature and Date

## TOMMY WINSTON'S RESPONSE TO QUESTIONS 5 AND 6, (A), (B) AND (C)

I have been discriminated against and subjected to disparate treatment by my first- and second-line supervisors, David Samec and his supervisor, Nancy Bechtol. My co-worker, Kendra Gastright (a GS-13 as am I) made an allegation – which she retracted shortly thereafter – that I threatened her. Based on her allegation, I was transferred from the East Mall Zone of the National Air and Space Museum to the Suitland Zone in Maryland.

· Here are some of the events that are relevant to my claims:

On approximately January 1, 2006, my supervisor, Dave Samec, asked that I take on the day-to-day operations for maintenance in the East Zone. This new assignment had the effect of taking some responsibilities, including budget and personnel, away from Kendra Gastright and Jeff Ridgeway. On January 13, 2006, Kendra Gastright approached me and requested that I stop by her office to discuss my new responsibilities. I complied with her request and went to her office at around 10:00 A.M. Ms. Gastright proceeded to tell me how she believed that she and I had different management styles and that she found it difficult to work with me. We talked for about an hour during which we discussed how she and I could resolve our differences. At the end of our discussion, we made a commitment to work together more effectively and to "get the job done" in the East Zone. At no time did I raise my voice, or use an inappropriate or threatening words and in no way did I ever threaten her. We shook hands and then I left her office.

Approximately six days later, on approximately January 19, 2006, Mr. Samec took me aside and told me that Ms. Gastright had told him that I had threatened her during my meeting with her on January 13, 2006. He also stated that she said that she was going file a violence in the workplace charge against me. I was understandably shocked because there were never any threats of any kind, in fact, the complete opposite took place at our meeting because we got along fine and agreed to work together.

Later that day, Mr. Samec came to my office and told me that I had to move my stuff by close of business across the street to the American Indian Museum. I was told not to enter the NASM building (even as a tourist) and not to "attend meetings where Kendra Gastright may be present. Ask me if you think that she may be at a meeting that you need to be at. Please send Ed Tyson or Robert Lane to meetings on your behalf, such as the EMZ Staff meetings." Mr. Samec also indicated that he would conduct an investigation and issue any changes to his "requests" depending on the findings of his investigation.

On January 25, 2006, at an East Mall Zone Town Meeting, Mr. Samec told all who were present that I was transferred to Suitland based on an accusation that I threatened violence in the workplace. Moreover, he stated that I wasn't a team player and that he didn't need people like me at the East Mall Zone. Several people stood up for me at this meeting and asked that I be brought back. While Samec stated what I was accused of, he

1

failed to state who accused me of this. More importantly, he made these statements while in the midst of supposedly conducting an investigation into the matter.

On approximately February 3, 2006, I attended a safety class in which both Ms. Gastright and Mr. Samec were present. I thought it was suspicious that I would be permitted to attend this meeting with Ms. Gastright given that I was accused of threatening her and had been told that I would not be permitted to be in the same building as her.

I then e-mailed Mr. Samec as to the status of the investigation and met with him on or about February 7, 2006. At this meeting, Mr. Samec gave me a memorandum with the subject, "Proposal to Suspend." This memo did not contain any accusations that I threatened anyone, let alone with violence. Instead, I was accused of misconduct because I allegedly belittled Ms. Gastright and accused her of not helping others or being a team player during our January 13, 2006 meeting. Based on this "misconduct," Mr. Samec proposed that I be suspended for one day without pay. Moreover, I would not be able to recover my position at the East Mall Zone or recover my good name.

On or around April 3, I received a memorandum dated March 27, 2006, from Nancy Bechtol regarding the "Decision on the Proposal to Suspend." In this memorandum, Ms. Bechtol states that she believes that my tone with Ms. Gastright has not always been courteous or respectful but that instead of suspending me, she would issue a confirmation of counseling.

I feel that I have been subjected to discrimination and disparate treatment. In the past, Ms. Gastright has used profanities and has been extremely disrespectful to her co-workers, yet to my knowledge she has not received any form of discipline for her conduct. On one occasion, at a staff meeting, Ms. Gastright became extremely irate with a colleague and repeatedly used the "f" word and other profanities while leaning over the table in a threatening manner. Because we made an agreement in the office to deposit twenty-five cents in a jar every time we used a profanity, Ms. Gastright took out her wallet and started throwing money at the colleague. From what I understand, she was only required to issue a written apology for her behavior.

I, on the other hand, was accused of using the wrong tone or "belittling" Ms. Gastright and as a result, I have had to suffer a proposal to suspend me, a transfer to Maryland, loss of my job that I loved, and more importantly, the loss of my good name. I believe that Mr. Samec's and Ms. Bechtol's actions were racially motivated and that they have subjected me to disparate treatment because of my race.

2

# COMPLAINT OF DISCRIMINATION

## BECAUSE OF RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN,

### RETALIATION, AGE OR DISABILITY

(Please type or print clearly)

1. Full name of person complaining:

Tommy James Winston

(FOR OEEMA USE ONLY: DO NOT WRITE IN THIS SPACE)

2. Case Number: 06-15-062606
   Date Filed: 06/26/06

Street address: 6329 Stonewain Court

3. Area code and home phone: 301-839-0616

City, state, zip code: Fort Washington, MD 20744

Area code and work phone: 301-238-1473

4. What is the title and grade of your job?
Facility Mgmt Specialist
GS-1640-13

5. Date on which most recent discrimination took place:

Month: April   Day: 3   Year: 2006
(Continuing violation is alleged)

6. Office/Organization where you work?
OFEO / OFMR
National Museum of American Indian-CRC
Street Address:
4220 Silver Hill Road

City, state, zip code:
Suitland, MD 20746

7. Indicate why you believe you were discriminated against:

☒ Race   African-American
☒ Color   Black
☐ Religion   ___
☐ Sex   ___

☐ National Origin   ___
☐ Age   ___
☐ Disability   ___
☐ Retaliation   ___

8. Explain how you believe you were discriminated or retaliated against (treated differently from other employees or applicants) because of your race, color, religion, sex, national origin, age or disability. Please use additional sheet(s) of paper if you need more space.

Please see the attached.

9.a. What corrective action(s) are you seeking? Be specific, please.
A formal apology, compensatory and punitive damages, attorneys' fees, and possibly my prior job back.

9.b. If available, are you interested in participating in some form of Alternative Dispute Resolution? ☐ Yes  ☒ No

10. Have you discussed this complaint with an EEO Counselor?
☒ Yes  Shadella Davis
           Name of Counselor
☐ No

11. Do you have a representative? ☒ Yes  ☐ No
Name: Sundeep Hora, Alderman & Devorsetz
Address: 1025 Connecticut Ave., NW
           Suite 1025
Phone: 202-969-8220
Fax - 202-969-8224

12. Signature and Date:
Tommy Winston , 6/26/06
OEEMA 04/05

1

## TOMMY J. WINSTON
## COMPLAINT OF DISCRIMINATION (CONTINUED)

**Answer to Question 8**

I have been discriminated against and subjected to disparate treatment by my first- and
second-line supervisors, David Samec and his supervisor, Nancy Bechtol. My co-
worker, Kendra Gastright (a GS-13 as am I) made an allegation – which she retracted
shortly thereafter – that I threatened her. Based on her allegation, I was transferred from
the East Mall Zone of the National Air and Space Museum to the Suitland Zone in
Maryland.

Here are some of the events that are relevant to my claims:

On approximately January 1, 2006, my supervisor, Dave Samec, asked that I take on the
day-to-day operations for maintenance in the East Zone. This new assignment had the
effect of taking some responsibilities, including budget and personnel, away from Kendra
Gastright and Jeff Ridgeway. On January 13, 2006, Kendra Gastright approached me and
requested that I stop by her office to discuss my new responsibilities. I complied with her
request and went to her office at around 10:00 A.M. Ms. Gastright proceeded to tell me
how she believed that she and I had different management styles and that she found it
difficult to work with me. We talked for about an hour during which we discussed how
she and I could resolve our differences. At the end of our discussion, we made a
commitment to work together more effectively and to "get the job done" in the East
Zone. At no time did I raise my voice, or use an inappropriate or threatening words and
in no way did I ever threaten her. We shook hands and then I left her office.

Approximately six days later, on approximately January 19, 2006, Mr. Samec took me
aside and told me that Ms. Gastright had told him that I had threatened her during my
meeting with her on January 13, 2006. He also stated that she said that she was going file
a violence in the workplace charge against me. I was understandably shocked because
there were never any threats of any kind, in fact, the complete opposite took place at our
meeting because we got along fine and agreed to work together.

Later that day, Mr. Samec came to my office and told me that I had to move my stuff by
close of business across the street to the American Indian Museum. I was told not to
enter the NASM building (even as a tourist) and not to "attend meetings where Kendra
Gastright may be present. Ask me if you think that she may be at a meeting that you
need to be at. Please send Ed Tyson or Robert Lane to meetings on your behalf, such as
the EMZ Staff meetings." Mr. Samec also indicated that he would conduct an
investigation and issue any changes to his "requests" depending on the findings of his
investigation.

On January 25, 2006, at an East Mall Zone Town Meeting, Mr. Samec told all who were
present that I was transferred to Suitland based on an accusation that I threatened
violence in the workplace. Moreover, he stated that I wasn't a team player and that he

didn't need people like me at the East Mall Zone. Several people stood up for me at this meeting and asked that I be brought back. While Samec stated what I was accused of, he failed to state who accused me of this. More importantly, he made these statements while in the midst of supposedly conducting an investigation into the matter.

On approximately February 3, 2006, I attended a safety class in which both Ms. Gastright and Mr. Samec were present. I thought it was suspicious that I would be permitted to attend this meeting with Ms. Gastright given that I was accused of threatening her and had been told that I would not be permitted to be in the same building as her.

I then e-mailed Mr. Samec as to the status of the investigation and met with him on or about February 7, 2006. At this meeting, Mr. Samec gave me a memorandum with the subject, "Proposal to Suspend." This memo did not contain any accusations that I threatened anyone, let alone with violence. Instead, I was accused of misconduct because I allegedly belittled Ms. Gastright and accused her of not helping others or being a team player during our January 13, 2006 meeting. Based on this "misconduct," Mr. Samec proposed that I be suspended for one day without pay. Moreover, I would not be able to recover my position at the East Mall Zone or recover my good name.

On or around April 3, I received a memorandum dated March 27, 2006, from Nancy Bechtol regarding the "Decision on the Proposal to Suspend." In this memorandum, Ms. Bechtol states that she believes that my tone with Ms. Gastright has not always been courteous or respectful but that instead of suspending me, she would issue a confirmation of counseling.

I feel that I have been subjected to discrimination and disparate treatment. In the past, Ms. Gastright has used profanities and has been extremely disrespectful to her co-workers, yet to my knowledge she has not received any form of discipline for her conduct. On one occasion, at a staff meeting, Ms. Gastright became extremely irate with a colleague and repeatedly used the "f" word and other profanities while leaning over the table in a threatening manner. Because we made an agreement in the office to deposit twenty-five cents in a jar every time we used a profanity, Ms. Gastright took out her wallet and started throwing money at the colleague. From what I understand, she was only required to issue a written apology for her behavior.

I, on the other hand, was accused of using the wrong tone or "belittling" Ms. Gastright and as a result, I have had to suffer a proposal to suspend me, a transfer to Maryland, loss of my job that I loved, and more importantly, the loss of my good name. I believe that Mr. Samec's and Ms. Bechtol's actions were racially motivated and that they have subjected me to disparate treatment because of my race and color.

3



# ALDERMAN & DEVORSETZ PLLC

June 26, 2006

## FACSIMILE TRANSMITTAL SHEET

**TO:** Era L. Marshall
Office of Equal Employment and
Minority Affairs (OEEMA)
Smithsonian Institution
Victor Bldg., Suite 8100 MRC
921
Washington, DC 20013-7012

**FAX:** 202.275.2055

**FROM:** Sundeep Hora, Esq.

**TEL:** 202.275.0146

**PAGES:** 4 (including cover sheet)

**RE:** Tommy Winston Complaint

Please see the attached complaint by SI employee Tommy Winston. Per our discussion, I was to have the complaint hand delivered today, but due to the closing of your office, I am faxing it to you instead. I will send a hardcopy via U.S. Regular Mail. Please call me at 202-969-8220 to confirm receipt and that the complaint was stamped as received with today's date. Thank you.

**NOTICE:**
This facsimile transmission is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under appliable law. If the reader of this facsimile is not the intended recipient or the employee or agent responsible for delivering this transmission to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone (call collect at (202) 969-8220) and immediately destroy this facsimile cover page and all its attachments.

1025 CONNECTICUT AVENUE, NW • SUITE 1000 • WASHINGTON, DC 20036
(202) 969-8220 • FAX (202) 969-8224 • WWW.A-DLAW.COM

# Smithsonian Institution

Office of Equal Employment and Minority Affairs

Tommy J. Winston,
Complainant,

v.

Lawrence M. Small, Secretary,
Smithsonian Institution,
Agency

SI Case No. 06-15-062606

## FINAL AGENCY DECISION

### Statement of Claim

Whether Mr. Tommy Winston (the Complainant) was discriminated against on
the bases of his race (African American) and color (black) when:

(1)     On January 24, 2006, he was reassigned to the Suitland Zone, and
(2)     On February 7, 2006, he received a *Proposal to Suspend* which resulted in
        a confirmation of counseling.

### Procedural History

The formal complaint of discrimination was filed on June 26, 2006. The Counselor's
Report indicates that the Complainant's initial date of contact with the Counselor took place on
April 27, 2006. The latest date attributable to an alleged discriminatory act was February 7,
2006, the same date indicated in the EEO Counselor's Report. (Complaint file)

### Statement of the Facts

The Complainant (African American, black), a Facilities Management Specialist, GS-
1640-13, with the Smithsonian's Office of Facilities Engineering  and Operations (OFEO)
advised the EEO Counselor that he was subjected to discrimination and disparate treatment as it
relates to disciplinary actions.  He stated that on January 19, 2006, his supervisor informed him
that a co-worker accused him of threatening her during a meeting on January 13, 2006, and that
the co-worker said that she was going to "file a violence in the workplace charge against [him]."
The Complainant stated that shortly thereafter he was required to remove his belongings from his
work location at the National Air and Space Museum (NASM), and told that he could not enter
the NASM building nor attend any meetings where the co-worker might be present. The
Complainant stated that effective January 24, 2006, he was transferred from the East Mall Zone
to the Suitland Zone based on the co-worker's allegation. He advised that his supervisor told the

750 Ninth Street, N.W., Suite 8100
Washington, D.C. 20560-0921
202.275.0145 Telephone
202.275.2055 Fax

staff during an East Mall Zone Town Meeting on January 25, 2006, that the Complainant had been transferred to Suitland because he threatened someone with violence. In addition, the Complainant stated that on or about February 7, 2006, his supervisor proposed to suspend him from work for one day for misconduct, and that, on or about April 3, 2006, the Complainant received the *Decision on the Proposal to Suspend* issued by his second-level supervisor which informed him that he would be issued a confirmation of counseling instead of a one-day suspension. The Complainant stated that he has been punished much more severely than his co-workers.

A review of documents provided by the Complainant during the counseling process reflects that on the January 23, 2006, memorandum from his supervisor which reassigned him to the Suitland Zone, the Complainant wrote, "I do not concur. I feel my rights have been violated." His signature appears on the memorandum along with the date of January 23, 2006. A review of the *Proposal to Suspend* issued February 7, 2006, to the Complainant, indicates that he wrote, "I do not concur with this proposal. I still believe my civil rights are being violated." His signature appears under this statement, along with the date of February 7, 2006. (Complaint file)

Legal Analysis

The regulation found at 29 CFR §1614.107(a)(2) requires an agency to dismiss a complaint, which fails to comply with the applicable time limits contained in 29 CFR §1614.105(a)(1). That regulatory provision requires an individual to initiate contact with an EEO Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action. Under the United States Equal Employment Opportunity Commission's (EEOC's) "reasonable suspicion" standard, the limitations period is not triggered until a complainant should reasonably suspect discrimination, but before all the facts that would support a charge of discrimination have become apparent.[1]

The facts set out above establish that the Complainant knew or had a "reasonable suspicion" that he was being subjected to discriminatory action as early as January 23, 2006, when he acknowledged receipt of the notice of his reassignment (claim 1). He reaffirmed his "reasonable suspicion" on February 7, 2006, when he acknowledged receipt of the *Proposal to Suspend* (claim 2). The 45-day limitation period for initial contact with an EEO Counselor therefore ran from January 24, 2006, to March 10, 2006, in claim 1 and from February 8, 2006, to March 23, 2006, for claim 2.[2] As discussed, the Complainant's initial contact with the EEO Counselor took place on April 27, 2006, or more than one month after the limitations period had expired on the most recent discriminatory event. The Complainant, who was represented throughout the pre-complaint process by an attorney, provided no reason to the EEO Counselor for his delay in initiating the EEO complaints process.

Moreover, 29 CFR §1614.107(a)(5) provides, in part, that an agency shall dismiss a complaint that alleges that a proposal to take a personnel action, or other preliminary step to taking a personnel action, is discriminatory. In his complaint, the Complainant contends that he received a *Proposal to Suspend* (claim 2). As discussed above, the *Decision on the Proposal to Suspend*

[1] See Howard v. Department of the Navy, EEOC 05970852 (February 11, 1999).
[2] Ball v. United States Postal Service, EEOC Request No. 05880247 (July 6, 1988).

specified that the Complainant would receive a "confirmation of counseling," which is at most a preliminary personnel action that does not have a permanent effect. The *Decision on Proposal to Suspend* clearly states that the confirmation will not be made part of the Complainant's Official Personnel Folder.[3] (Complaint file) Because this preliminary personnel action was not sufficient to render the Complainant "aggrieved," claim 2 of his complaint must be dismissed on this ground as well.

Accordingly, it is determined that the complaint must be dismissed due to untimely Counselor contact. Claim 2 must also be dismissed because it is, at most, a proposal to take a personnel action.

### Statement of Conclusions

Because the Complainant did not contact the EEO Counselor within the required 45-day limitations period, the Smithsonian determines that both claims of the complaint are dismissed due to untimely EEO Counselor contact.[4] The Smithsonian further finds that claim 2 of the complaint alleges a proposal to take a personnel action and therefore dismisses the claim on this ground as well.

The dismissal of the complaint is a Final Agency Decision appealable in writing to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, within 30 calendar days of the date you receive this Final Agency Decision.

### Statement of Relief

Because the complaint is dismissed for untimely EEO Counselor contact, no relief is awarded.

### Statement of Notice and Rights

With regard to the Complainant's right to appeal to EEOC, 29 CFR §1614.403 states in pertinent part:

    (a)    The Complainant, agency, agent, grievant or individual class claimant (hereinafter appellant) must file an appeal with the Director, Office of Federal Operations, Equal Employment Opportunity Commission, at P. O. Box 19848, Washington, DC 20036, or by personal delivery or facsimile [(202) 663-7022]. The appellant should use the attached EEOC Form 573, *Notice of Appeal/Petition*, and should indicate what is being appealed.

    (b)    The appellant shall furnish a copy of the appeal to the opposing party [Era L. Marshall, Director, Office of Equal Employment and Minority Affairs, Smithsonian Institution, P.O. Box 37012, Victor Building, Suite 8100, MRC 921,Washington, D.C. 20013-7012] at the same time it is filed with the Commission. In or attached to the appeal to the Commission, the appellant

---

[3] Parks v. Department of Homeland Security, EEOC Appeal No. 01A42758 (July 14, 2004)

[4] Sanders v. U.S. Postal Service, EEOC Appeal No. 01A34170 (October 6, 2003).

4

must certify the date and method by which service was made on the opposing party.

(c)     If an appellant does not file an appeal within the time limits of this subpart, the appeal shall be dismissed by the Commission as untimely.

(d)     Any statement or brief on behalf of a complainant in support of the appeal must be submitted to the Office of Federal Operations within 30 days of filing the notice of appeal. Any statement or brief on behalf of the agency in support of its appeal must be submitted to the Office of Federal Operations within 20 days of filing the notice of appeal. The Office of Federal Operations will accept statements or briefs in support of an appeal by facsimile transmittal, provided they are no more than 10 pages long.

With respect to the filing of an appeal, 29 CFR §1614.402 provides, in pertinent part:

a.     Appeals must be filed within 30 days of receipt of the dismissal, final action or decision.

b.     If the complainant is represented by an attorney of record, then the 30-day time period provided in paragraph (a) of this section within which to appeal shall be calculated from the receipt of the required document by the attorney. In all other instances, the time within which to appeal shall be calculated from the receipt of the required document by the complainant.

With respect to claims of discrimination and retaliation based on race, color, religion, national origin, sex, handicap and age, the Complainant has the right to file a civil action in an appropriate U.S. District Court. If the Complainant chooses to file a civil action, the Complainant may do so:

–     Within 90 calendar days of receipt of this final decision if no appeal has been filed;

–     After 180 calendar days from the filing date of the Complainant's complaint if an appeal has not been filed and a final decision has not been issued;

–     Within 90 calendar days of receipt of the Commission's final decision on appeal; or

–     After 180 calendar days from the date of filing an appeal with the Commission if there has been no final decision by the Commission.

Please be advised that courts in some jurisdictions have interpreted the Civil Rights Act of 1991 in a manner suggesting that a civil action must be filed WITHIN THIRTY (30) CALENDAR DAYS from the date that the Complainant receives this decision. To ensure that the Complainant's civil action is considered timely, the Complainant is advised to file it WITHIN THIRTY (30) CALENDAR DAYS from the date the Complainant receives this decision or to consult an attorney

5

concerning the applicable time period in the jurisdiction in which the Complainant's action would be filed.

The Complainant is further notified that if the Complainant files a civil action, THE COMPLAINANT MUST NAME THE PERSON WHO IS THE OFFICIAL AGENCY HEAD AS THE DEFENDANT. Agency means the national organization, and not the local office or installation in which the Complainant might work. DO NOT NAME JUST THE AGENCY. The Complainant must also state the official title of the Agency head. Failure to provide the NAME OR OFFICIAL TITLE of the Agency head may result in the loss of any judicial redress to which the Complainant may be entitled. The head of the Smithsonian Institution is **Lawrence M. Small, Secretary.**

Filing a civil action will terminate EEOC's processing of the Complainant's appeal.

If the Complainant decides to file a civil action under Title VII or under the Rehabilitation Act, and if the Complainant does not have or cannot afford the services of an attorney, the Complainant may request that the court appoint an attorney to represent the Complainant and that the court permit the Complainant to file the action without payment of fees, costs, or other security. **The granting or denial of the request is within the sole discretion of the court.** Filing a request for an attorney does not extend the Complainant's time in which to file a civil action. Both the request and the civil action MUST BE FILED WITHIN EITHER THIRTY (30) OR NINETY (90) CALENDAR DAYS of the date the Complainant receives the Commission's decision.

_07-31-2006_
Issue Date

Era L. Marshall, Director
Office of Equal Employment
and Minority Affairs

Enclosure: EEOC Form 573

## CERTIFICATE OF SERVICE

For timeliness purposes, it shall be presumed that the parties received this Final Agency Decision within **five calendar days** after the date it was sent postage prepaid via *certified mail, return receipt requested.* I certify that on _____*Aug 1, 2006*_____, I sent this Final Agency Decision, via certified mail, return receipt requested/postage prepaid to

Mr. Tommy J. Winston
c/o Sundeep Hora, Esq.
Alderman & Devorsetz
1025 Connecticut Avenue, NW, S-1000
Washington, DC 20036

Mr. Tommy J. Winston
6329 Stonewain Court
Ft. Washington, MD 20744


Karen E. Margensey
Office of Equal Employment and Minority Affairs

**NOTICE OF APPEAL/PETITION**
**TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**

1. Appellant's name (Last, First, Middle): [Please Print or Type]

2. Home/mailing address:                                          Social Security No.: ___-__-____

3. Name and address of attorney or other representative, if any:

| 4. Appellant's daytime telephone number (incl. area code): | 5. Representative's telephone number (if applicable): |
|---|---|

6. Has the appellant filed a formal complaint with his/her agency?

_____ No      _____ Yes, indicate the Agency's complaint number: _____

7. Name of the agency being charged with discrimination:

8. Location of the duty station or local facility in which the complaint arose:

9. Has a FINAL DECISION been issued by the agency, an Arbitrator, FLRA, or MSPB on this complaint?

____Yes (Indicate the date the appellant RECEIVED it _____, and ATTACH A COPY.)

____No

____This appeal alleges a breach of a settlement agreement.

10. Has a complaint been filed on this same matter with this Commission, another agency, or through any other administrative or collective bargaining procedure?

____No ____ Yes (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate).

11. Has a civil action (lawsuit) been filed in connection with this complaint?

____No ____ Yes (ATTACH A COPY OF THE CIVIL ACTION FILED)

| 12. Signature of appellant or appellant's representative | 13. Date: |
|---|---|

**NOTICE:** Before mailing this appeal, be sure to attach a copy of the final decision from which you are appealing, if one has been issued. Any comments or brief in support of the appeal **MUST** be filed with the Commission AND with the agency within 30 days of the date this appeal filed. Making a knowingly false statement on this form is punishable by law. See 18 USC § 1001. **PRIVACY ACT STATEMENT ON REVERSE SIDE.**

**FOR EEOC USE ONLY:**                              **OFO DOCKET NUMBER:**

# PRIVACY ACT STATEMENT

(This form is covered by the Privacy Act of 1974. Public Law 93-597. Authority for requesting the personal data and the use thereof are given below.)

1.  **FORM NUMBER/TITLE/DATE:** EEOC Form 573, Notice of Appeal/Petition, April 1992.

2.  **AUTHORITY:** 42 U.S.C. §2000e-16.

3.  **PRINCIPAL PURPOSE:** The purpose of this questionnaire is to solicit information to enable the Commission to properly and efficiently adjudicate appeals filed by Federal employees, former Federal employees, and applicants for Federal employment.

4.  **ROUTINE USES:** Information provided on this form will be used by Commission employees to determine: (a) the appropriate agency from which to request relevant files; (b) whether the appeal is timely; (c) whether the Commission has jurisdiction over the issue(s) raised in the appeal, and (d) generally, to assist the Commission in properly processing and deciding appeals. Decisions of the Commission are final administrative decisions, and, as such, are available to the public under the provisions of the Freedom of Information Act. Some information may also be used in depersonalized form as a data base for statistical purposes.

5.  **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION:** Since your appeal is a voluntary action, you are not required to provide any personal information in connection with it. However, failure to supply the Commission with the requested information could hinder timely processing of your case, or even result in the rejection or dismissal of your appeal.

---

Send your appeal to:

The Equal Employment Opportunity Commission
Office of Federal Operations
P.O. Box 19848
Washington, D.C.  20036



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P. O. Box 19848
Washington, D.C. 20036

Tommy J. Winston,
Complainant,

v.

Lawrence M. Small,
Secretary,
Smithsonian Institution,
Agency.

2007 MAY - 8   AM II: 38
RECEIVED BY THE
SMITHSONIAN INSTITUTION
OFC OF EQUAL OPPORT...

Appeal No. 0120064840

Agency No. 0615062606

<u>DECISION</u>

Complainant filed a timely appeal with this Commission from the agency's decision dated August 1, 2006, dismissing his complaint of unlawful employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e *et seq.*

At the time of the events at issue, complainant was employed by the agency as a Facilities Management Specialist at the National Air and Space Museum in Washington, D.C. The record indicates that a co-worker claimed that complainant threatened her on January 13, 2006. As a result of the complaint, complainant was reassigned from the Washington museum to an agency facility in Maryland (the "Suitland Zone"). During e-mail correspondence with his supervisor (Supervisor), the Supervisor indicated that he was investigating the threat claim. On February 6, 2006, the Supervisor e-mailed complainant and informed him that the investigation was complete and he wanted to meet to discuss the findings. On February 7, 2006, the Supervisor issued complainant a proposal to suspend for one calendar day for misconduct. The Supervisor found that complainant had conducted himself in an inappropriate and unprofessional manner which was disruptive to the work environment. Complainant responded to the proposed suspension in writing on February 15, 2006. By memorandum dated March 27, 2006, which complainant received on April 3, 2006, the Director determined that complainant was not malicious in his tone with the co-worker and decided to rescind the proposed suspension. The memorandum noted that it would not be filed in complainant's official personnel folder.

On April 27, 2006, complainant contacted the EEO Counselor. When the matter was not resolved informally, complainant filed his formal complaint on June 26, 2006. In his complaint, complainant alleged that he was subjected to discrimination on the bases of race (African-American) and color (Black) when:

1.  On January 24, 2006, he was reassigned to the Suitland Zone, and
2.  On February 7, 2006, he received a *Proposal to Suspend* which resulted in a confirmation of counseling.

The agency dismissed claim (1) for untimely EEO Counselor contact and claim (2) for alleging a claim regarding a proposed action. The agency also noted that claim (2) was also untimely raised with the EEO Counselor. This appeal followed. Complainant asserted that although he was reassigned effective January 24, 2006, it was not final until the agency issued its determination on the proposed suspension dated March 27, 2006 which he received on April 3, 2006. At that time, the proposed suspension was rejected. Therefore, complainant argues that his contact with the EEO Counselor on April 27, 2006, was timely. Further, complainant asserted that the events constituted a continuing violation claim. Finally, complainant argued that he was delayed by the actions of the Supervisor and the Director.

The regulation set forth at 29 C.F.R. § 1614.107(a)(5) provides, in part, that the agency shall dismiss a complaint that alleges that a proposal to take a personnel action, or other preliminary step to taking a personnel action, is discriminatory. Upon review, clearly the proposed suspension dated February 7, 2006 was a proposed action. Therefore, we find that the agency's dismissal of claim (2) was appropriate.

EEOC Regulation 29 C.F.R. §1614.107(a)(2) states that the agency shall dismiss a complaint or a portion of a complaint that fails to comply with the applicable time limits contained in §1614.105, §1614.106 and §1614.204(c), unless the agency extends the time limits in accordance with §1614.604(c).

EEOC Regulation 29 C.F.R. §1614.105(a)(1) provides that an aggrieved person must initiate contact with an EEO Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action. EEOC Regulation 29 C.F.R. §1614.105(a)(2) allows the agency or the Commission to extend the time limit if the appellant can establish that appellant was not aware of the time limit, that appellant did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, that despite due diligence appellant was prevented by circumstances beyond his control from contacting the EEO Counselor within the time limit, or for other reasons considered sufficient by the agency or Commission.

Upon review of the record, we find that complainant has not provided sufficient explanation for the tolling of the time period. We note that the reassignment memorandum indicated that it was "effective January 24, 2006." While complainant may have initially had reason to believe

3                              0120064840

the reassignment might have been temporary during the investigation, the record is clear that complainant knew the investigation was completed and the supervisor had determined that he should be disciplined on February 7, 2006. There was no mention at this time of returning complainant to Washington. At this point, there was no longer any reason·for complainant to believe the reassignment was temporary. Finally, we are not persuaded by complainant's claim that he was delayed by the actions of the Supervisor and the Director. Therefore, we find insufficient reason to extend the time period.

We note that complainant asserted that claim (1) was part of a continuing violation. The Supreme Court has held that a complainant alleging a hostile work environment will not be time barred if all acts constituting the claim are part of the same unlawful practice and at least one act falls within the filing period. *See National Railroad Passenger Corp. v. Morgan*, 122 S.Ct. 2061 (June 10, 2002). The Court further held, however, that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* Finally, the Court held that such untimely discrete acts may be used as background evidence in support of a timely claim. *Id.* In the case at hand, claim (1) is a discrete act. Since there is no .other timely claim, claim (1) cannot be used as background evidence. As such, we are not persuaded by complainant's argument that claim (1) was a continuing violation claim. As such, we affirm the agency's dismissal of claim (1) for untimely EEO Counselor contact pursuant to 29 C.F.R. § 1614.107(a)(2).

Therefore, we AFFIRM the agency's final decision dismissing the complaint.

## STATEMENT OF RIGHTS - ON APPEAL

### RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:

1.    The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2.    The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision or within twenty (20) calendar days of receipt of another party's timely request for reconsideration. *See* 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity

4                                        0120064840

Commission, P.O. Box 19848, Washington, D.C. 20036.  In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period.  *See* 29 C.F.R. § 1614.604.  The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request.  Any supporting documentation must be submitted with your request for reconsideration.  The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances.  *See* 29 C.F.R. § 1614.604(c).

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0900)

You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision.  If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title.  Failure to do so may result in the dismissal of your case in court.  "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, filing a civil action will terminate the administrative processing of your complaint.

## RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security.  *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c).  The grant or denial of the request is within the sole discretion of the Court.  Filing a request for an attorney does not extend your time in which to file a civil action.  Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

*Carlton M. Hadden*

Carlton M. Hadden, Director
Office of Federal Operations

        MAY   3 2007

Date

5                                              0120064840

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.** I certify that this decision was mailed to the following recipients on the date below:

Tommy J. Winston
6329 Stonewain Ct
Ft.Washington, MD  20744

Sundeep Hora
1025 Connecticut Ave NW
#1000
Washington, DC  20036


Era L. Marshall, EEO Director
Smithsonian Institution
P.O. Box 37012, Victor Bldg. - 8100
Washington, DC  20013-7012

MAY   3 2007
_____
Date


_____
Equal Opportunity Assistant

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
OFFICE OF FEDERAL OPERATIONS
P.O. BOX 19848
WASHINGTON, D.C. 20036

OFFICIAL BUSINESS
Penalty for private use $300

RECE... ...Y THE
SMITHSONIAN
FC OF EQUAL O...

2007 MAY -8 AM 11: 38



02 1A                    $ 00.390
0004601824              MAY 04 2007
MAILED FROM ZIP CODE 10064

Reference #: 0120064840
Era L. Marshall, EEO Director
Smithsonian Institution
P.O. Box 37012, Victor Bldg. - 8100
Washington, DC  20013-7012

20013-7012  B500

# Smithsonian Institution

Memo

Office of Facilities, Engineering and Operations
Office of Facilities Management and Reliability

Date    February 28, 2007

To      Tommy Winston
        Building Manager

cc      Unit Folder

From    Maurice Evans
        Suitland Zone Manager

Subject    Proposal to Suspend

This is to notify you that I propose to suspend you from work and pay from your position of Building Manager, GS-1101-13, for seven (7) calendar days. The reason for the proposal is for your misconduct.

During the weekly manager's meeting on February 6, 2007, we discussed which employees were coming in for the snow removal detail that we anticipated for the next day. When I asked who you had scheduled to report for snow removal detail, you mentioned Oscar Waters, a WG-10. I informed you that Mr. Waters was not authorized to report for snow removal detail. You stated "I got that" more than once and told me that you would handle it. It had been announced in the September Town Hall meeting that laborers would be utilized for snow removal details, and there was to be one WG-10 designated to provide guidance to the snow removal team.

On the morning of February 7, 2007, based on your responses on the previous day, I learned from Mr. Waters and David Sidbury that Mr. Waters did report for snow detail. When I asked you if you were aware that Mr. Waters had reported for snow detail, your response was that you did not tell him to come in. I then asked if you had told him not to come in, as we discussed in the staff meeting on February 6. You admitted that you had not. You then tried to shift the blame to your subordinates by stating that you were not in charge of snow detail and that it was not your responsibility. I reminded you that in the February 6 staff meeting that you told me repeatedly that you would take care of the matter. You responded that you would "take the hit" and I could do the papers.

Mr. Winston, as a senior manager, you are held to a higher standard and it is your responsibility to ensure that you carry out instructions that are given to you. I view your conduct as a serious problem that demonstrates a lack of attentiveness to your responsibilities and undermines my authority and the entire cohesiveness of the zone. Your failure to follow my instructions to inform Mr. Waters not to report for snow removal on February 7, 2007, after stating that you would, shows a disregard of my authority. You

MSC, MRC 534
4210 Silver Hill RD
Suitland, MD 20746-2863
301-238-1129 Telephone
301-238-3215 Fax

attended the September 2006 Town Hall meeting in which it was announced that laborers were to be utilized for snow detail. The Cultural Resource Center (CRC) in the Suitland Zone has a snow plan in effect, which has been discussed in several meetings. As the Building Manager, you are responsible for ensuring that your staff clears all sidewalks, steps, and entrance ways in a snow emergency. I expect my supervisors, especially my senior managers, to take responsibility for their actions, instead of trying to shift the blame.

Regarding a separate offense, I was notified on February 7, 2007 that your BlackBerry/Nextel was being billed to another unit. A review of several Nextel invoices that covered the period from July 6, 2006 - January 5, 2007, reflects excessive minutes of use from a BlackBerry assigned to you. On several occasions there were calls placed to and/or from your assigned number in amounts ranging from 50 to 137 minutes.

I met with you on February 22, 2007 and asked you if the usage was for official Smithsonian Institution (SI) business. You admitted it was possible that some of the calls were not for official SI business. You also stated that you believed that you were allowed 600 minutes of use, and that you would reimburse SI for any calls that were not related to official SI business. I told you that you needed to monitor your minutes of use more closely. After 300 minutes, the user starts drawing from shared minutes, and excess use results in SI being charged a higher rate do to exhausting the shared minute's pool.

Mr. Winston, your excessive use of minutes violates the Smithsonian's Cellular Telephone and BlackBerry Policy. The Policy specifically states under 7. Procedures-Rules of Usage, B. that, "The Smithsonian allows personal use of Smithsonian-issued cellular telephones and BlackBerries for phone or data access on an occasional and incidental basis-unless prohibited in writing by an employee's first level manager. Personal usage should be brief and not violate the *Smithsonian Institution's Standards of Conduct* as specified in Smithsonian Directive 103." The invoices I received on February 7, 2007 indicate that your personal usage was neither occasional nor incidental, and it certainly was not brief.

Further, the May 17, 2006, Cellular Telephone and BlackBerry User Agreement, Part 2 - Service Agreement, specifically states that you "may be required to reimburse the Smithsonian for any cellular telephone or BlackBerry service charges not authorized per this agreement, and/or deemed to be personal use that exceeds permitted usage" as stated in the Smithsonian's Cellular Telephone and BlackBerry Policy.

I view your misuse of your BlackBerry to be a serious offense and strongly caution you that your continued excessive use of your BlackBerry could result in you being held financially responsible for the charges incurred, for which you would be obligated to reimburse SI.

In proposing this action, I have considered your over eleven (11) years of service with the Smithsonian and your satisfactory performance record. I have also considered your lack of previous discipline. On March 27, 2006, you received a letter of counseling for your misconduct. I believe that the seriousness of your failure to follow instructions regarding

MSC, MRC 534
4210 Silver Hill RD
Suitland, MD 20746-2863
301-238-1129 Telephone
301-238-3215 Fax

snow removal detail assignments and your violation of the Smithsonian's Cellular Telephone and BlackBerry Policy, especially as a supervisor, undermines our units' ability to accomplish our mission. I believe that a suspension for seven (7) calendar days is warranted.

I warn you that it is your responsibility to prevent any recurrence of misconduct, and advise you that more serious disciplinary action will very likely result from such recurrence, up to and including removal.

If you believe that a personal problem has contributed to or caused your misconduct, please take advantage of the Smithsonian Institution's Employee Assistance Program (EAP). You may do this by contacting Karen Howard, Debbie Burney or Steve Neslen. They serve as counselors and are located in the Ripley Center, Room 3046A, telephone 202-633-1051. They will maintain the confidentiality of any conversation you choose to have with them. If you ask to speak to a counselor on work time, I will grant you administrative time for this purpose.

The EAP provides initial counseling and referral to facilities geared to assist employees in resolving personal problems or health-related problems. The Smithsonian supports employee participation in the EAP by granting appropriate leave, and depending on circumstances, considering that participation as a mitigating factor in a disciplinary decision.

You may reply to this proposal orally, in writing, or both and you may submit affidavits or other documentary evidence in support of your reply. If you make arrangements with me in advance, you may have a reasonable amount of official time to prepare your response. If you choose to reply, you must present your reply to the deciding official, Nancy Bechtol, Director, 600 Maryland Avenue, Capital Gallery Building, Room 3030, Washington, DC, 202-633-5687, within 10 calendar days after you receive this notice. Consideration will be given to extending the 10-day reply period if you submit a written request to the deciding official describing the need for and length of the extension you desire. You may review the material on which I have relied in making this proposal, which is available in the security office.

If you wish to be represented or accompanied by a representative, you must identify that person, in writing, to Ms. Bechtol as soon as possible. Any change in your choice of representative also requires written notification. A copy of this proposal is attached for you to give to your representative, if you choose to have one.

This notice is a proposal only. Any reply and supporting material you present will be fully considered before a decision is made. You will receive a written decision as soon as practicable after your reply or after the period for replying expires. Until you receive the final decision, you will continue in an active status and should report to work as scheduled.

MSC, MRC 534
4210 Silver Hill RD
Suitland, MD 20746-2863
301-238-1129 Telephone
301-238-3215 Fax

If you would like advice about your rights or about the procedures to follow, please contact Marilyn Slomba, Labor/Employee Relations Specialist, Office of Human Resources, 600 Maryland Avenue, SW, Suite 5060, Washington DC, telephone (202) 633-6406.

Signature below does not denote employee agreement with this action; it only represents receipt of this notice.

_____          _____

Acknowledgment of Receipt                          Date

*Employee Refuses to sign*    2/28/07

*Witnessed By*
*Cheryl Edward*
*2/28/07*

MSC, MRC 534
4210 Silver Hill RD
Suitland, MD 20746-2863
301-238-1129 Telephone
301-238-3215 Fax



Smithsonian Institution

Memo

Office of Facilities Engineering and Operations
Office of Facilities Management and Reliability

*MLE*
*7-day Susp*
*5/6/07 OFM 07-0341*
*RTD*
*5/13/07 OFM 07-0342*
*4/25/07*

Date    April 24, 2007

To    Tommy Winston
      Building Manager, NMAI Cultural Resource Center

cc    Unit folder

From    Nancy J. Bechtol    *Nancy Bechtol*
        Director, OFMR

Subject    Decision on Proposal to Suspend

This is my decision on the February 28, 2007 proposal to suspend you from your position of Building Manager, GS-1101-13, for seven (7) calendar days. The proposal was based on your failure to follow instructions regarding snow detail instructions and your violation of the Smithsonian's Cellular Telephone and Blackberry Policy.

The proposal notified you of your right to respond to the proposal verbally, in writing or both, within ten (10) calendar days of receipt. On March 1, 2007, the law firm of Alderman, Devorsetz and Hora notified me they were representing you and they requested an extension to respond to your proposal. I granted the request. On March 27, 2007 I received a response to the proposal from your representative, Mr. Hora.

In his written response, Mr. Hora wrote that you believed that David Sidbury was the supervisor who called and requested Mr. Waters to report for duty for snow removal on February 7, 2007. He claimed that Maurice Evans, the Zone Manager, spoke directly to James Cutler and David Sidbury about it in a meeting on February 6, when he placed them in charge of supervising the snow removal detail on February 7. Mr. Hora cited Mr. Evans' February 6 e-mail message to Mr. Sidbury as verification of this assertion.

I have reviewed the e-mail exchange between Mr. Evans and Mr. Sidbury, and note Mr. Sidbury's objections to Mr. Evans' placing Mr. Cutler in charge of the snow removal detail. Mr. Evans replied by clarifying that he put Mr. Cutler on the detail to prep for the possible snow fall and recommending that Mr. Sidbury, as the Assistant Building Manager, come in to "monitor" his staff while they worked on the snow detail, in an effort to find ways to remove it more efficiently. Neither e-mail message mentioned your involvement or lack of it. I note that you denied in your response to the proposal that

Capital Gallery
600 Maryland Ave, SW
Suite 3300 MRC 505
Washington, DC 20024
202-633-5687 Office
202-633-5691 Fax

you acknowledged Mr. Evans' order during the February 6 meeting, although you did not deny that you were present at the meeting.

The issue in this proposal is that you, as Building Manager, did not follow a direct order given on February 6 by your supervisor, Maurice Evans, to make certain Mr. Waters did not report to snow duty the morning of the 7th. As Building Manager, you have subordinate supervisors who work for you, and they provide direction to their staff. Your task was to make sure the Assistant Building Manager, your subordinate, did not call Mr. Waters in to work on snow removal on February 7. By not doing this, you disregarded a specific work direction by your supervisor, and the Institution paid more for snow removal, by paying overtime for an additional WG-10, than was necessary as a result of this error. I do not approve of your shifting the blame for your lack of following direct orders to your subordinate supervisor.

The reply also claimed that Mr. Evans' rationale for allowing only one WG-10 to work on February 7 was suspect because two WG-10s worked on snow details on February 14 and 26. Every snow storm is different, and each storm is staffed differently depending on the severity of the storm being predicted. You can not compare the staffing requirements for snow removal on February 14 or 26 to that required for February 7. It is extremely important that all supervisors follow the close direction of the Zone Manager because of this variance in weather, to properly prepare our sites for incoming bad weather.

In the written response regarding the offense of cell phone abuse, you mention the Smithsonian's Cellular Telephone and Blackberry Policy which has been in effect for all blackberry/cell phone users since May 2006. This policy clearly states that your Federal blackberry/cell phone is for work related use, with only incidental personal use being permitted. Your Nextel invoices clearly indicate excessive personal use, with some calls ranging from 50 to 137 minutes. You admitted to your supervisor that it was possible that some of the calls were not for official SI business.

The policy mentions some of the actions the Smithsonian can take if a staff person does not follow this policy, but it is not meant to be an exhaustive, complete list. Other Smithsonian policy, specifically SD 212, Chapter 752, lists unauthorized use of Smithsonian property in its Table of Offenses and Penalties. That guide suggests a range of penalties from reprimand to removal for the first offense. As a manager at the Smithsonian you are held to a higher standard of conduct than subordinate employees. Your abuse of this Federal blackberry is not something I take lightly. As often occurs with new policies, a revision is being written to address to address needs not identified in the

Capital Gallery
600 Maryland Ave, SW
Suite 3300 MRC 505
Washington, DC 20024
202-633-5687 Office
202-633-5691 Fax

first issuance. In this case a user's agreement is being added. Clearly a manager of your grade shouldn't need to sign such an agreement to know they must follow all Smithsonian policies and procedures. Smithsonian policy regulating our cellular phone and Blackberry use has been in effect since May 2006, and it provided sufficient direction to make you aware that your use prior to receiving the proposal violated that policy.

All OFMR units received copies of their cell/blackberry phone bills for their entire zone/units users in February 2006. These bills covered the use of all users from July 2006 through December 2006. My direct reports are dealing with any instances of staff's abuse of this policy and are following Smithsonian guidance in doing so.

I have carefully reviewed all of the details of this case. I find Mr. Evans' version of the incidences to be credible. I agree with his assessment of your blackberry phone abuse and your failure to follow his instructions. I find that the proposed suspension was taken for just cause based on your misconduct.

In making my decision, I have considered all of the evidence in the case file, and your written responses. In considering an appropriate penalty, I have considered your generally good performance record and your eleven (11) years of service with the Smithsonian. I have also considered your lack of previous discipline. On March 26, 2007 you received a letter of counseling for your misconduct. I believe that the seriousness of your failure to follow instructions regarding snow removal and your violation of the Smithsonian Cellular Telephone and Blackberry Policy especially as a high level manager and supervisor within OFMR, certainly undermine our ability to accomplish our mission and your ability to be respected as a supervisor/manager in OFMR by employees within this office. I believe that a suspension of the seven (7) calendar days is warranted. You will be suspended for 7 calendar days effective May 6, 2007 through May 12, 2007. You should report at your regular time on May 14, 2007.

I must reiterate to you the importance of adhering to conduct standards. You are further advised that misconduct will not be tolerated in the future, and may lead to a more severe penalty, up to and including removal.

If you believe this suspension is not warranted, you may initiate a grievance following the procedures out lined in SSD 212 (SSH 1100) Chapter 771. Your grievance must be initiated within 20 calendar days of the effective date of this action.

If you believe this action is being taken wholly or in part because of discrimination based

Capital Gallery
600 Maryland Ave, SW
Suite 3300 MRC 505
Washington, DC 20024
202-633-5687 Office
202-633-5691 Fax

on race, color, religion, sex (including sexual harassment), national origin, disability, or age, you may include the allegation in your grievance under the negotiated procedure you choose to file on this action. Alternatively, you may file a discrimination complaint with the Smithsonian Institution Office of Equal Employment and Minority Affairs (OEEMA), 600 Maryland Avenue SW, Room 2091, Washington, D.C. 20560, within 45 calendar days of the effective date of this action. Information about filing a discrimination complaint can be found in the Smithsonian Directive, SD 214, Equal Opportunity Handbook, Chapters 6-10, or by calling OEEMA at 202-633-6430. If you file a discrimination complaint, the complaint must be instead of (not in addition to) a written grievance.

If you would like advice about your rights or about the procedures to follow, please contact Marilyn Slomba, Labor/Employee Relations Specialist, Capital Gallery, 600 Maryland Avenue, SW, Suite 5060, Washington, DC 20560-0912 at 202-633-6406.

Signature below does not denote employee agreement with this action; it only represents receipt of the decision notice.

Acknowledgement of Receipt

Date

Capital Gallery
600 Maryland Ave, SW
Suite 3300 MRC 505
Washington, DC 20024
202-633-5687 Office
202-633-5691 Fax