UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TOMMY J. WINSTON,                    )
                                     )
        Plaintiff,                   )
                                     )
        v.                           )
                                     )          Civil Action No. 07-1411 (RWR)
CRISTIAN SAMPER,                     )
Acting Secretary, Smithsonian Institution,    )
                                     )
        Defendant.                   )
_____)

## REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND IN THE ALTERNATIVE FOR SUMMARY JUDGMENT[1]

Plaintiff's Opposition ("Opp.") offers little to refute defendant's showing that Plaintiff's

amended complaint should be dismissed because: (i) he failed to timely exhaust his claims of

race and color discrimination due to his reassignment to Suitland, Maryland (Count IA); (ii)

Defendant has articulated a legitimate, non-retaliatory reason for the seven-day suspension

(Count I); (iii) he failed to establish a *prima facie* case of retaliation (Count II) because the 10

month lapse of time is fatal when relied upon to establish a temporal causal connection between

the protected activity and the suspension, and even if this Court were to ignore the lack of a

causal connection, defendant has articulated a legitimate, non-retaliatory reason for the

suspension; and (iv) plaintiff's hostile work environment claim (Count III) should be dismissed

---

[1] Defendant moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) with respect to plaintiff's reassignment claim (Count IA); however, with respect to Plaintiff's discrimination, retaliation and hostile work environment claims, defendant moves pursuant to Fed. R. Civ. P. 12(b)(6). Defendant in is accord and this Court may convert Defendant's Motion to Dismiss into one for Dismissal and in the alternative for Summary Judgment. See Plaintiff's Opp., p. 3; and Fed. R. Civ. P. 12(b)(6). Hence, defendant's Statement of Factual and Procedural History in its initial brief shall now be substituted as its Statement of Material Facts Not In Dispute, pursuant to LcvR 7(h).

because he has failed to show that the work environment was permeated with intimidation, ridicule, and insult that altered the work conditions and created an abusive environment.  See Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 78 (1998).

## ARGUMENT

### I.    COUNT I SHOULD BE DISMISSED FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

The bulk of plaintiff's factual allegations are immaterial and serve only to cloud the issues raised by defendant's motion.  Consequently, Defendant will address plaintiff's factual rendition only to the extent that they are material to the issues.

"[S]trict adherence to . . . procedural requirements [for the administrative resolution of discrimination complaints] is the 'best guarantee of evenhanded administration of law.'" Smith v. Koplan, 362 F.Supp.2d 266, 268 (D.D.C. 2005) (internal citation omitted); see also National Passenger R.R. Corp. v. Morgan, 536 U.S. 108 (2002).  As demonstrated in defendant's opening brief (Br. at 4-9), plaintiff failed to adhere to the Equal Employment Opportunity Commission ("EEOC" or "Commission") procedural requirement that he contact an Equal Employment Opportunity ("EEO") Counselor within 45 days of January 24, 2006 — the effective date of his reassignment from the National Air and Space Museum ("NASM") to Suitland.  See 29 C.F.R. § 1614.105(a)(1).  Indeed, this forty-five-day time limit is "[f]undamental to exhaustion." Raines v. United States Dep't of Justice, 424 F.Supp.2d 60, 66 (D.D.C. 2006).  Plaintiff failed to present his claim of discrimination as to his reassignment within the 45 day limit and offers essentially nothing to refute this showing.  Accordingly, this claim is untimely and should be dismissed. Id. at 65 ("[d]ismissal results when a plaintiff fails to exhaust administrative remedies").

A.    <u>The Effective Date of Plaintiff's Reassignment Is January 24, 2006</u>

29 C.F.R. Section 1614.105(a)(1) provides the controlling standard for determining the timeliness of plaintiff's claim.  It states that a complainant "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory *or, in the case of personnel action, within 45 days of the effective date of the action*."  29 C.F.R. § 1614.105(a)(1) (emphasis added).

The plaintiff agrees that, under this regulation, plaintiff was required to contact an EEO Counselor within 45 days of the "effective date" of his reassignment to Suitland (the "personnel action" at issue).  <u>See</u> Opp. at 20; 29 C.F.R. § 1614.105(a)(1).  The plaintiff also agrees that the memorandum reassigning plaintiff to Suitland stated that plaintiff's reassignment was "effective" as of January 24, 2006.  <u>See id.</u>; <u>see also</u> Br., Ex. 1.  The plaintiff further agrees that he was to report to Suitland on January 24, 2006, and has been in Suitland ever since.  <u>See</u> Opp. at 13.

Nevertheless, plaintiff contends that April 3, 2006, not January 24, 2006, should be the "effective date" of his reassignment for purposes of calculating the 45-day period.  April 3rd, as explained in defendant's opening brief (Br. at 2 n.2), is the date on which plaintiff alleges he received a final written decision from his second-line supervisor, Nancy Bechtol, rescinding a proposal to suspend plaintiff for one day for "conduct[ing] [him]self inappropriately and unprofessionally in [a] meeting with" a co-worker, Kendra Gastright.  <u>See id.</u>  Plaintiff argues throughout his opposition that the reassignment was a part of that disciplinary process and not a final action until Ms. Bechtol's decision on April 3, 2007.  <u>See generally</u> Opp. at 20-25. Plaintiff's argument misses the point.  He was assigned in January to Suitland.  Webster's dictionary definition of the word  assign is "to appoint as to a post or duty."  As of January 24,

2006, plaintiff was "assigned" to suitland.  The written proposal to suspend plaintiff, which Ms.

Bechtol reviewed (Br., Ex. 3), did not involve — *or even mention* — plaintiff's reassignment to

Suitland, which occurred two weeks before the proposal to suspend was even issued.  See Br.,

Ex. 2.  The reassignment was a management decision to separate plaintiff from the complainant,

Ms. Gastright, see, e.g., Compl. ¶¶ 23-24.

In addition, plaintiff raises two additional arguments for not treating January 24 as the

effective date of his reassignment.  First, plaintiff contends (Opp. at 20-21) that his January 24

reassignment was not a "personnel action" for purposes of Section 1614.105(a)(1) because it was

a "proposal to take a personnel action" or a "preliminary step to taking a personnel action." Opp.

at 21.  It is true that an action such as "a proposed suspension that is never carried out," Jeffers v.

Thompson, 264 F.Supp.2d 314, 330 (D.M.D. 2003) (cited in Opp. at 21), is not a "personnel

action" because it does not alter the terms, conditions, or benefits of employment.  Such an action

is a preliminary step that does not, without further action, affect the employee.  But Plaintiff's

reassignment was not a proposal; it was an *actual* "assignment" to Suitland effective January 24.

Plaintiff clearly acknowledges that he has been physically stationed in Suitland since January

2006.  See Opp., Ex. J, Affidavit of Tommy J. Winston ("Winston Aff."), ¶ 2; see also Amd.

Compl. ¶ 30.

Second, even assuming, arguendo, that plaintiff's reassignment could be viewed as

"temporary" pending a final agency decision on the proposed one-day suspension (see, e.g., Opp.

at 21), January 24 would still be the effective date for purposes of the 45-day time period for

contacting an EEO counselor.  As demonstrated in defendant's opening brief (Br. at 8), internal

appeals and other agency procedures for reviewing personnel actions do not toll the 45-day

period.  As Judge Bates has noted:

> "[T]his argument ignores the plain language of the regulation, which requires a claimant to initiate contact with an EEO counselor, 'in the case of personnel action, within 45 days of the *effective* date of the action.' § 1614.105(a)(1) (emphasis added).  The regulation's explicit reference to the effective date of the allegedly discriminatory personnel action makes it altogether unnecessary to determine whether and when plaintiff had notice of what he calls a 'final' termination decision. . . .  When an adverse personnel action has been taken, the plain language of the regulation identifies the effective date of that action . . . as the only relevant date for calculating the 45-day deadline."

Foster v. Gonzales, No. 06-1288, 2007 U.S. Dist. LEXIS 46591, at *11-*12 (June 28, 2007) (emphasis in original).  Plaintiff makes no effort to address Foster in his brief.

Finally, plaintiff's argument that the limitations period should begin to run from the date of Ms. Bechtol's final decision on the proposal to suspend is internally inconsistent.  While plaintiff contends his reassignment was "final" when he received Ms. Bechtol's decision on April 3 (see Opp. at 20), he claims he kept paying for a parking spot at NASM because it was not "finally clear to him" until June 2006 "that he would not be restored to his prior position at [NASM]."  Opp. at 13.  A limitations period cannot be a moving target.  That is why the "plain language" of the regulation (Foster, 2007 U.S. Dist. LEXIS 46591, at *11) requires a claimant challenging a personnel action to initiate contact with an EEO counselor within "45 days of the effective date of the action."  29 C.F.R. § 1614.105(a)(1).  The effective date of plaintiff's reassignment was January 24; there can be no other date.  Plaintiff, accordingly, failed to timely exhaust his administrative remedies on the reassignment claim.

        B.      Plaintiff's Argument That He Lacked  Notice of the 45-day Period
                is Meritless

EEOC regulations provide that "[t]he agency or the Commission shall extend the 45-

time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them."  29 C.F.R. § 1614.105(a)(2). Plaintiff has submitted a declaration stating that from January 2005 until May 2006 he "was never made aware of or notified of the 45-day time limit" and that "[t]here were never any posters, handbooks or other materials that were conspicuously displayed or disseminated to [him] that contained this information."  Opp, Ex. J ("Winston Aff.").  Plaintiff's argument for an extension of the time limit under Section 1614.105(a)(2) should be rejected.

1.    Plaintiff Has Waived Any Argument That He Lacked Notice

Plaintiff has waived (or failed to exhaust) any argument under Section 1614.105(a)(2) that he lacked notice of the 45-day period.[2]  Tellingly, at the EEOC - Office of Federal Operations ("OFO") level, the specific argument that he lacked notice of the 45-day period NEVER came up.[3]  Section 1614.105(a)(2) directs the Commission to extend the 45-day period upon a proper showing that a complainant lacked notice.  Nevertheless, plaintiff failed to raise any argument of insufficient notice before the Commission's appellate body, the OFO, during the briefing on his administrative appeal.  See Plaintiff's opening brief to OFO (attached as Ex. 10); Plaintiff's reply brief to OFO (attached as Ex. 11); see also Br., Ex. 7 (OFO's appellate decision). Nor did plaintiff raise any issue of insufficient notice in his EEO complaint to the agency.  See Br., Ex. 5.  The record is clear that Plaintiff was represented by counsel during the complaint and

_____

[2]  After the agency issued its Final Agency Decision and it was adverse to the plaintiff, he appealed the FAD to the EEOC, Office of Federal Operations (OFO).

[3]  While Plaintiff, before the OFO, raised the issue of equitable tolling because he did not know that the decision was final, he did not raise the issue that he lacked notice of the 45-day requirement and that the Agency failed in its obligation to inform him of the time frame for bringing an EEO complaint.

administrative appeal processes. <u>See</u> Opp. at 12. Accordingly, plaintiff failed to preserve the issue of notice before the Commission. An argument cannot be merely intimated or hinted at to be raised; it must be "pressed" to be preserved. <u>See</u> <u>KPMG, LLP v. SEC</u>, 289 F.3d 109 (D.C. Cir. 2002). Because plaintiff made no mention of the notice issue before the Commission, all indications are that it was not truly an argument that the plaintiff had ever pressed and therefore, it is not preserved.

Administrative law requires that parties give agencies a "fair and full opportunity to adjudicate their claims." <u>Woodford v. Ngo</u>, 126 S. Ct. 2378, 2385 (2006). As the Supreme Court has explained, proper exhaustion of administrative remedies:

> "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits). . . .[A]s a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against an objection made at the time appropriate under its practice."

<u>Id.</u> (internal citations and quotations omitted) (alterations in original); <u>see also</u> <u>United States v. L.A. Trucker Truck Lines, Inc.</u>, 344 U.S. 33, 36-37 (1952).

While courts do not apply rules of "issue exhaustion" in non-adversarial administrative proceedings, such as in Social Security administrative hearings, <u>see</u> <u>Sims v. Apfel</u>, 530 U.S. 103 (2000), appellate proceedings before the OFO are different. They are adversarial and not inquisitorial, in nature.[4] <u>See</u>, <u>e.g.</u>, 29 C.F.R. § 1614.403(d) (OFO appeal procedures, including

---

[4] In <u>Sims</u>, the Court points out that "the differences between courts and agencies are <u>nowhere</u> more pronounced than in Social Security proceedings, which are inquisitorial rather than adversarial. The administrative Law Judge's duty is to investigate the facts and develop the arguments both for and against granting benefits, and the [Social Security Appeals] Council's review is similarly broad. The regulations expressly provide that the Social Security Administration conducts the administrative review process in an informal, nonadversary manner. As the Council, not the claimant, has primary responsibility for identifying and developing the

procedures for opposing briefs).  Indeed, OFO itself routinely prevents claimants from raising

new claims or allegations for the first time on appeal.  See, e.g., Tolliver v. Potter, Appeal No.

01A60356, 2006 EEOPUB LEXIS 1768, at *4 (E.E.O.C. Apr. 25, 2006) ("[T]he regulations do

not permit a complainant to raise a new claim on appeal.").  Moreover, "the basis for a judicially

imposed issue-exhaustion requirement is an analogy to the rule that appellate courts will not

consider arguments not raised before trial courts."  Sims, 530 U.S. at 108-109.

Whether viewed as an issue of waiver or a failure to exhaust, plaintiff did not give the

EEOC an opportunity — let alone a "fair and full opportunity" — to consider the merits of the

issue whether he lacked sufficient notice of the 45-day requirement.  Having failed to raise this

issue administratively, plaintiff should not be permitted to raise it for the first time in federal

court.  See Cooley v. Goss, 430 F.Supp.2d 544, 550 (E.D. Va. 2005) ("In this case, plaintiff has

not presented any evidence either that she attempted to explain in her EEO complaint why she

waited more than six months after the alleged discriminatory action before contacting the EEO

counselor or that she requested a waiver of the 45-day deadline.  Accordingly, this Court finds

that based on the record before it, the EEO properly dismissed plaintiff's complaint as untimely

and did not err in not granting her a waiver of the 45-day deadline.").

2.     Plaintiff Had Constructive Notice of the 45-day Deadline

Even if plaintiff had raised the notice issue administratively, it plainly would lack merit.

Lack of actual notice of the 45-day time limit is not itself sufficient to warrant equitable tolling.

The D.C. Circuit has adopted the Seventh Circuit's two-step constructive notice inquiry, which

---

issues, the general issue-exhaustion rule makes little sense in this context."  Id., at 103.
(Emphasis added)

considers: "(1) whether 'notification of the time requirements was provided,' and (2) whether the notification was 'reasonably geared to inform the complainant of the time limits.'" Harris v. Gonzales, 488 F.3d 442, 445 (D.C. Cir. 2007) (quoting Johnson v. Runyon, 47 F.3d 911, 918 (7th Cir. 1995)). As the Court of Appeals explained, "it cannot be that an employee claiming to have been unaware of the 45-day time limit would be automatically entitled to an extension even though the agency, through posters, employee handbooks, orientation sessions, etc., made conscientious efforts to advise its employees of the time limit." Id.

Even taking plaintiff's assertions of lack of actual notice to be true, see Winston Aff., ¶ 4, the Smithsonian made conscientious efforts reasonably geared to inform plaintiff constructively of the 45-day time limit. For example, at NASM, where plaintiff's office was located prior to his reassignment to Suitland (see id., ¶ 1; Amd. Compl. ¶ 1), defendant posted an EEO poster on a bulletin board in a common area through which employees in plaintiff's unit had to pass in order to enter the office space and their individual offices. See Declaration of Charlene Tyson, ¶ 3 (attached as Exhibit 12). The EEO poster informed employees of their right to file EEO complaints and their obligation to contact an EEO counselor within the 45-day time period. See id. ¶ 5 (also attaching reduced-size copy of the poster). The poster also provided contact information for the Smithsonian's Office of Equal Employment and Minority Affairs ("OEEMA"). See id. ¶ 6.

Defendant also posted an EEO notice on the Smithsonian's intranet site on OEEMA's webpage. See Declaration of Mignon Erixon-Stanford, ¶¶ 3-5 ("Erixon-Stanford Dec.") (attached as Exhibit 13). The Smithsonian's Internet Coordinator reviewed archived copies of content from OEEMA's intranet webpage from January 2005 through March 2006. See id., ¶ 4.

The OEEMA webpage for each month contained language informing employees of their obligation to contact an EEO counselor within the 45-day time period. <u>See id.</u>, ¶ 5 (quoting exact language). OEEMA's webpage also provides contact information for OEEMA. <u>See id.</u> ¶ 6. Plaintiff had access to OEEMA's intranet webpage. NASM created a network account for plaintiff in October 2003; he has had an account on the Smithsonian network since that date. <u>See</u> Declaration of George C. Van Dyke, ¶ 2 (attached as Exhibit 14). Smithsonian users with a network account have access to the Smithsonian's intranet site. <u>See id.</u>, ¶ 3.

Plaintiff's general statement that these sorts of materials were not "conspicuously displayed" (Winston Aff., ¶ 3) is insufficient to establish lack of notice. The EEO poster and intranet notice demonstrate that defendant made conscientious efforts reasonably geared towards informing its employees, including plaintiff, of the 45-day period. Defendant's efforts are legally sufficient to establish plaintiff's constructive notice of the 45-day period. <u>See</u>, <u>e.g.</u>, <u>Foster</u>, 2007 U.S. Dist. LEXIS 46591, *22-27 (posters available in common areas provided employee with constructive notice).

    C.     <u>Plaintiff Has Not Demonstrated That Extraordinary Circumstances<br>        Require Tolling The 45-Day Period</u>

Because the 45-day period is not jurisdictional, it is subject to estoppel and equitable tolling. <u>Morgan</u>, 536 U.S. at 113. Such doctrines are to be applied "sparingly," <u>id.</u>, and "only in extraordinary and carefully circumscribed instances." <u>Smith-Haynie v. District of Columbia</u>, 155 F.3d 575, 579-80 (D.C. Cir. 1998). Equitable tolling "permits a plaintiff to avoid the bar of the limitations period if despite all due diligence []he is unable to obtain vital information bearing on the existence of her claim." <u>Id.</u> at 579. Equitable estoppel "'comes into play if the defendant

-10-

takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations.'" Smith-Haynie, 155 F.3d at 580 (internal citation omitted). The plaintiff bears the burden of proving facts sufficient to excuse non-compliance with the filing requirement. See Br., at 8 (citing cases).

Plaintiff has not met this burden. In fact, plaintiff's opposition does not even discuss the legal standard for equitable tolling or estoppel, or attempt to apply the law to the facts of his case. See Opp. at 27-28. Plaintiff's argument appears to be that, if defendant had more "timely" completed the disciplinary process (Opp. at 28), he would have received Ms. Bechtol's final decision in time to meet with an EEO counselor within 45 days of his reassignment on January 24. But that would have been a mere fortuity; the timing of the disciplinary process had no bearing on plaintiff's reassignment (which had occurred earlier and was not a part of the proposed discipline) or on the requirement that plaintiff contact an EEO counselor within 45 days of the reassignment's effective date.[5]

Plaintiff has presented no evidence that defendant took "active steps" to prevent him from contacting an EEO counselor on time, or that plaintiff was "unable to obtain vital information"

---

[5]Plaintiff argues repeatedly (e.g., Opp. at 27) that he was "under the impression that he was being charged with violence in the workplace." However, there is nothing in the numerous documents and e-mails plaintiff has produced which corroborates his assertion that "Mr. Winston was at all times led to believe that if these allegations [of violence in the workplace] were proven false, he would be restored to his former position in [NASM]." Opp. at 22. Plaintiff was not "charged" with violence in the workplace, see Ex. 2, and his reassignment was not part of the process to suspend the plaintiff. Id. Importantly, on February 7, 2006, plaintiff was handed a memorandum entitled "Proposal to Suspend". By plaintiff's own account, the memorandum proposed to suspend him not due to violence in the workplace but rather because he had acted " 'inappropriately and unprofessionally' because he never agreed to comply with Ms. Gastright's request that he stop responding to her sarcastically and teasing her." Opp., at p. 8, ¶ 11.

bearing on the existence of his claim. Nor could he. Plaintiff received the reassignment

memorandum on January 23, 2006, one day before it became effective. See Compl., ¶ 17.

Moreover, plaintiff asserted *on January 23* that the reassignment violated his rights. After

signing the reassignment memorandum on that date, he wrote at the bottom: "I do not concur. I

feel my right[s] have been violated." Br., Ex. 1. Plaintiff simply failed to seek counseling in a

timely manner, which is no basis for tolling the 45-day period.

Finally, plaintiff's brief (Opp. at 28) contains a conclusory paragraph seeking discovery

and an evidentiary hearing "to determine the existence of [the Court's] subject matter

jurisdiction." This request should be rejected. As noted above, the exhaustion issue is not

jurisdictional. Moreover, all of the facts regarding "the timeliness of [plaintiff's] contact with the

EEO counselor" are either before the Court or otherwise in plaintiff's possession. Plaintiff does

not explain the types of facts he seeks to discover or how any such facts might impact the issues

before the Court. Cf. Fed. R. Civ. P. 56(f).

## II.    PLAINTIFF HAS NOT STATED A RETALIATION CLAIM

Defendant's opening brief establishes that plaintiff's retaliation claim (Count II) should

be dismissed for two reasons: (i) because plaintiff had not alleged sufficient temporal proximity

between his protected activity and the alleged retaliation to state a *prima facie* case of retaliation;

see Br. at 10-12; and (ii) alternatively, defendant articulated a legitimate, non-retaliatory reason

for the suspension.[6] See id. at 12-15. Each argument provides an independent basis for granting

---

[6]Plaintiff erroneously characterizes defendant's motion to dismiss as a motion for
summary judgment. See Opp. at 29. Defendant's motion tests the legal sufficiency of plaintiff's
complaint. See Rattigan, 503 F.Supp.2d at 71 (to survive motion to dismiss in a Title VII case,
complaint must "allege facts that, if true, would establish the elements of" his retaliation claim).

defendant's motion.

With respect to defendant's second argument, plaintiff failed to oppose it. The Local Rules state that if a party fails to file an opposition, "the Court may treat the motion as conceded." See LcvR 7(b). Similarly, "if a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." Buggs v. Powell, 293 F.Supp.2d 135, 141 (D.D.C. 2002) (granting motion to dismiss non-selection discrimination claim as unopposed). This Court has applied this rule in the context of a Title VII case. See Nails v. England, 311 F.Supp.2d 116, 122 (D.D.C. 2004) (Roberts, J.) (granting motion to dismiss retaliation claim as unopposed). There is no reason not to apply the rule here. Defendant's motion to dismiss Count II should be granted.

With respect to defendant's first argument (temporal proximity), plaintiff's opposition lacks merit. The Supreme Court has stated that:

> "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close,' Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (CA10 2001). See, e.g., Richmond v. Oneok, Inc., 120 F.3d 205, 209 (CA10 1997) (*3-month period insufficient*); Hughes v. Derwinski, 967 F.2d 1168, 1174-1175 (CA7 1992) (*4-month period insufficient*)."

Clark County School District v. Breeden, 532 U.S. 268, 273 (2001) (emphasis added). Here, the period between plaintiff's "protected activity" (filing an EEO complaint in June 26, 2006) (see Br., Ex. 5) and the "adverse employment action" (the suspension issued on April 24, 2007) (see

Br., Ex. 9) is 10 months.[7]

Plaintiff notes that the decision maker on the suspension knew of plaintiff's earlier protected activity (she was also the person who rescinded the proposed one-day suspension relating to plaintiff's interaction with Ms. Gastright). Opp. at 29-30. True enough, but plaintiff must allege facts demonstrating "both knowledge *and* proximity in time." See Brodetski v. Duffey, 199 F.R.D. 14, 19-20 (D.D.C. 2001) (emphasis added). Plaintiff's only allegation relating to "proximity in time" is the ten month gap between plaintiff's protected activity and the adverse employment action (a gap during which plaintiff was selected for a Building Manager position; see Br., Ex. 9). This is insufficient, standing alone, to establish the requisite temporal proximity under Breeden and subsequent cases. Indeed, the D.C. Circuit, relying on Breeden, recently found an "eight-or nine-month" gap "far too long" to establish temporal proximity. Mayers v. Laborers' Health & Safety Fund of North America, 478 F.3d 364, 369 (D.C. Cir. 2007) (per curiam). The Court of Appeals expressly noted that Breeden had "cit[ed] with approval circuit cases rejecting temporal proximity of three and four months as evidence of causation." Id.

Plaintiff has failed to "allege facts that, if true, would establish the elements of" his retaliation claim. Rattigan, 503 F.Supp.2d at 71. Defendant's motion to dismiss or for summary judgment should be granted on the retaliation claim.

### III.    PLAINTIFF FAILED TO ESTABLISH A DISCRIMINATION CLAIM REGARDING HIS SEVEN-DAY SUSPENSION

---

[7]Plaintiff contends the period should be bounded by the date when the seven-day suspension was proposed. See Opp. at 30. Plaintiff is incorrect. There is no "adverse employment action" until the suspension is issued. See supra Part I.A.

Defendant established that plaintiff's claim alleging discrimination regarding his seven-day suspension (Count I) should be dismissed because defendant articulated a legitimate, non-discriminatory reason for the suspension. See Br. at 12-15. Again, plaintiff failed to oppose this portion of defendant's motion. Accordingly, Defendant's motion to dismiss plaintiff's discrimination claim regarding his seven-day suspension should be granted. See Nails, 311 F.Supp.2d at 122; Buggs, 293 F.Supp.2d at 141.

The proposed seven-day suspension was based in part upon the plaintiff's abuse of the cell phone that had been assigned to him by the Smithsonian. The record is clear that there was a cell phone policy in place since May 2006; the policy makes clear that a work phone is for official business with only incidental personal use permitted. Br., Ex. 9, p. 2.

## IV.    PLAINTIFF HAS NOT STATED A HOSTILE WORK ENVIRONMENT CLAIM

Defendant's opening brief (Br. at 15-18) established that plaintiff failed to state a hostile work environment claim. Defendant cited numerous cases where courts have rejected attempts (like plaintiff's here) to transform claims alleging discrete acts of discrimination and retaliation into broader claims alleging hostile work environments. See Br. at 15-16. As Judge Urbina recently explained: "[a]s a general matter, this jurisdiction frowns on plaintiffs who attempt to bootstrap their alleged discrete acts of retaliation into a broader hostile work environment claim." Baloch v. Norton, 2007 U.S. Dist. LEXIS 70718, *49 (D.D.C. Sept. 25, 2007).

Plaintiff appears to have misunderstood defendant's argument. Defendant has not argued, as plaintiff contends (Opp. at 31), that the Supreme Court's decision in National Passenger R.R. Corp. v. Morgan "holds that discrete [sic] cannot form the basis for a hostile environment claim."

-15-

Morgan did not address that precise issue.  Morgan did explain, however, that "[h]ostile

environment claims are different in kind from discrete acts."  Id. at 115; see also Br. at 17.  As

the Supreme Court explained in a recent case discussing Morgan:  "[a] discrete act of

discrimination is an act that in itself constitutes a separate actionable unlawful employment

practice and that is temporally distinct."  Ledbetter v. Goodyear Tire & Rubber Co., 127 S. Ct.

2162, 2175 (2007) (internal quotations and citations omitted).  "A hostile work environment, on

the other hand, typically comprises a succession of harassing acts, each of which may not be

actionable on its own"; in addition, a "hostile work environment claim cannot be said to occur on

any particular day."  Id. (internal citations and quotations omitted).

Courts have relied in part on this distinction in holding that, as a general matter, "[t]he

hostile work environment theory is not applicable to discrete, identifiable, isolated actions."

Silver v. Leavitt, 2006 U.S. Dist. LEXIS 12949, at *41 (D.D.C. Mar. 13, 2006) (citing Morgan).

This rule makes sense.  A workplace is "hostile" for purposes of Title VII when it is "permeated

with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to

alter the conditions of the victim's employment and create an abusive working environment.'"

Morgan, 536 U.S. at 116 (internal citations in original).  Discrete, identifiable acts such as

termination, transfer, failure to promote, suspension, etc., are simply unlikely, individually or

collectively, to be sufficiently severe or pervasive or abusive to meet this "demanding" standard.

Br. at 15-16.  Morever, "if the same set of facts could support both [hostile work environment

and retaliation] claims, state and federal provisions that provide a separate cause of action for

retaliatory acts would be rendered superfluous."  Gardner v. Tripp County, 66 F.Supp.2d 1094,

1100-01 (D.S.D. 1998).

Plaintiff argues that the general rule against "bootstrapping" claims is designed to apply to situations where a plaintiff attempts to avoid exhausting administrative remedies by couching unexhausted claims involving discrete acts of discrimination as a hostile environment claim. It is hard to see how this argument helps plaintiff; he failed to exhaust his claim relating to his reassignment to Suitland. See supra Part I. In any event, while bootstrapping is "particularly inappropriate where a plaintiff is trying to make an end-run around the exhaustion requirement, see Rattigan, 503 F.Supp.2d at 68, it is not limited to that context. As Judge Huvelle has explained:

> "[I]f an employee is discriminatorily denied ten promotions over a period of time, that pattern of conduct may give rise to ten separate claims under Title VII, but it would not create a hostile work environment based on pervasive intimidation, insult and ridicule."

Id. Many of the cases defendant cited involved discrete acts that had been exhausted. See, e.g., Lester v. Natsios, 290 F.Supp.2d 11, 32-33 (D.D.C. 2003); Edwards v. United States Environmental Protection Agency, 456 F.Supp.2d 72, 96 (D.D.C. 2006).[8]

Plaintiff also argues (Opp. at 35) that Childs-Pierce v. Utility Workers Union of America, 383 F.Supp.2d 60, 79 (D.D.C. 2005), cited in defendant's brief at 17, supports his position that a plaintiff can bootstrap claims alleging discrete acts of discrimination into a hostile work environment claim. But in Child-Pierce, Judge Bates stated that "mere reference to alleged disparate acts of discrimination against plaintiff cannot be transformed, without more, into a hostile work environment claim." Id. at 79. Indeed, Judge Bates characterized the plaintiff's effort to rely on such acts of discrimination as a "fundamental problem." Id. Judge Bates has

---

[8] Plaintiff's contention (Opp. at 34) that Silver v. Leavitt involved only unexhausted claims is wrong. See 2006 U.S. Dist. LEXIS 12949, at *20-28, *39-40.

-17-

issued a number of other opinions (see Br. at 17-18) "refus[ing] to permit the plaintiff to

'bootstrap' the same series of incidents alleged as retaliation 'into a broader hostile work

environment claim.'"  Edwards, 456 F.Supp.2d at 96; see also Keeley v. Small, 391 F.Supp.2d.

30, 51 (D.D.C. 2005); Lester, 290 F.Supp.2d at 33.

It is true, as plaintiff notes (Opp. at 33), that a discrete act of discrimination may form a

part of a larger hostile work environment claim involving allegations of repeated harassing

conduct over time.  See Singletary v. District of Columbia, 351 F.3d 519, 527-28 (D.C. Cir.

2003) (noting that, as part of a hostile work environment claim encompassing a "host of

allegations" such as the refusal to provide clerical assistance, computer, and computer training

for over a year and the refusal to provide an official job description for six years, plaintiff

included a failure to promote allegation which also was the subject of a separate retaliation

claim).  But in such a case, the plaintiff is not merely "bootstrapping" the "same series of

incidents alleged as retaliation 'into a broader hostile work environment claim.'"  Edwards, 456

F.Supp.2d at 96.

Here, plaintiff *is* seeking to transform his individual claims alleging discrete, isolated acts

of retaliation and discrimination into a general hostile work environment claim.  The single

substantive sentence in the hostile work environment claim (Count III) in plaintiff's amended

complaint states:  "[a]s a result of the above-referenced retaliatory and/or discriminatory conduct,

the Defendant has subjected the Plaintiff to a hostile work environment based on discrimination

and/or retaliation, in violation of Title VII[.]"  Compl. ¶ 52.  The "above-referenced retaliatory

and/or discriminatory conduct" is a reference to the same incidents which plaintiff alleges

constitute discrete acts of discrimination (Count I) and retaliation (Count II) — i.e., his

reassignment to Suitland in January 2006 and his seven-day suspension in May 2007.
Furthermore, in his Opposition, plaintiff asserts that his hostile work environment claim includes allegations that he was "publicly accused of impropriety by his supervisors at an all hands meeting" and "reprimanded."  See Opp. at 34.  There are no such allegations in plaintiff's First Amended Complaint.  Nor would such allegations, of an isolated event if added to the complaint, state a hostile work environment claim.

The general rule against bootstrapping claims plainly applies here.  Plaintiff's reassignment and suspension, whether considered alone or together, plainly do not support a claim that his workplace was "permeated with 'discriminatory intimidation, ridicule, and insult,' . . . 'sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive working environment.'"  Morgan, 536 U.S. at 116 (internal citations in original); see also Rattigan, 503 F.Supp.2d at 78-82 (concluding that a similar complaint failed to state a *prima facie* hostile work environment claim).  Count III should be dismissed.

## CONCLUSION

For all of the foregoing reasons, defendant's motion to dismiss should be granted.


Respectfully submitted,


/s/

_____
JEFFREY A. TAYLOR
United States Attorney

/s/
_____
RUDOLPH CONTRERAS
Assistant United States Attorney


/s/
_____
HEATHER GRAHAM-OLIVER
Assistant United States Attorney
555 Fourth Street, N.W.
Civil Division
Washington, D.C.  20530
(202) 305-1334


OF COUNSEL:
CRAIG M. BLACKWELL
Assistant General Counsel
Smithsonian Institution
P.O. Box 23286
Washington, D.C. 20026-3286

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### OFFICE OF FEDERAL OPERATIONS

| | | |
|---|---|---|
| TOMMY J. WINSTON | ) | |
| Complainant, | ) | DOCKET No. 01A64840 |
| | ) | |
| v. | ) | Agency No. 0615062606 |
| | ) | |
| LAWRENCE M. SMALL | ) | |
| Secretary, | ) | |
| Smithsonian Institution, | ) | Date: September 22, 2006 |
| | ) | |
| Agency. | ) | |

### COMPLAINANT'S BRIEF IN SUPPORT OF THE APPEAL

The Complainant, Tommy Winston, by and through his undersigned

representative, hereby submits his Brief in Support of his Appeal of the Smithsonian

Institution's ("SI" or the "Agency") Final Agency Decision (FAD) dismissing the

Complaint in the above captioned matter.[1]  The Agency's two justifications for

dismissing the Complaint, the Complainant's alleged failure to contact the EEO

Counselor within the 45-day limitations period and that the resulting discipline

constituted a preliminary personnel action, are inconsistent and dubious at best.

After being accused of threatening a co-worker with violence in the workplace,

Mr. Winston was stripped of his duties and temporarily reassigned from his position as

Facility Management Specialist in the East Mall Zone in Washington, DC to a position

with different duties in Suitland, Maryland.  Mr. Winston was issued a Proposal to

Suspend (the "Proposal") by his first -line supervisor, David Samec, and then a Decision

on the Proposal to Suspend (the "Decision"), by his second-line supervisor, Nancy

Bechtol.  Neither the Proposal nor the Decision contained any allegations that Mr.

---

[1] The Notice of Appeal was filed with the Office of Operations on August 23, 2006.

Winston threatened violence in the workplace. Moreover, even though the Decision rescinded the proposed suspension and resulted in the issuance of a confirmation of counseling, Mr. Winston was never restored to the position he held prior to the allegation that he threatened violence. To date, Mr. Winston remains in Suitland with a completely different position and under a series that, unlike his prior position, has no career ladder promotion potential. Contrary to the FAD, Mr. Winston timely contacted an EEO counselor within 45 days after he was issued the Decision. Had he contacted the EEO counselor prior to this date, his Complaint would have been premature and dismissed for alleging a discriminatory act that amounted to a preliminary personnel action—a personnel action that did not become final until after he received Ms. Bechtol's Decision.

The contradictory justifications for dismissal, lack of legal bases and incomplete examination of the facts warrant reversal of the FAD.

## I. INTRODUCTION

Tommy Winston has been a valuable and well-regarded employee of the Smithsonian Institution for the last eleven years. During his tenure at SI, Mr. Winston has consistently been rated as "meets" or "exceeds expectation." He has never been subject to discipline during his eleven years at the SI, nor has he faced any type of disciplinary action by any employer (including the military) in his entire career. Mr. Winston has worked extremely hard over the last eleven years to improve the Agency's operations and establish a successful career. He has developed a reputation for having an honest, straightforward, "roll up your sleeves" work ethic and a natural ability to energize and motivate those around him to get the job done and done well. His demeanor and

interpersonal skills have garnered him praise from his superiors who have continually

sought fit to increase Mr. Winston's responsibilities and oversight of SI maintenance

related operations.

Notwithstanding his significant record of achievement, Mr. Winston has been

forced to fight for his reputation and livelihood based on spurious allegations by a co-

worker, Kendra Gastright, that he threatened her with violence. Even though these

allegations were either recanted or found to never been made in the first place, they have

been used as a basis to strip him of his duties as Facility Maintenance Manager in the

East Mall Zone in Washington, DC and to transfer him to the Suitland Zone in Suitland,

Maryland. And although Mr. Winston has only been accused with "belittling" Ms.

Gastright, he remains exiled in Suitland with no restoration or even an offer of restoration

to his former position at the East Mall Zone.

Mr. Winston filed a formal complaint with the SI's Office of Equal Employment

and Minority Affairs (OEEMA) alleging that he had been subjected to discrimination and

disparate treatment by his first- and second-line supervisors (Dave Samec and Nancy

Bechtol, respectively) because they reassigned him from his position at the East Mall

Zone of the National Air and Space Museum to the Suitland Zone in Suitland, Maryland

and disciplined him based on an allegation that he threatened Ms. Gastright with

violence. Although the Decision on the Proposal to Discipline acknowledges that Mr.

Winston was never charged with threatening violence in the workplace, Mr. Winston's

reassignment became permanent after Ms. Bechtol issued her decision on the proposed

discipline. Only after he received the Decision did Mr. Winston know that his

reassignment was not based on a charge of violence in the workplace. To this day, Mr.

3

Winston has not been restored to his former position, nor offered to be restored to his former position.

The Agency, *sua sponte*, arbitrarily categorized Complainant's allegations into two separate claims: Whether the Complainant was discriminated against on the bases of his race (African American) and color (black) when, (1) On January 24, 2006, he was reassigned to the Suitland Zone, and (2) on February 7, 2006, he received a Proposal to Suspend which resulted in a confirmation of counseling. For no apparent reason, the Agency chose to exclude the Decision on the Proposal to Suspend issued on April 3, 2006, as a claim in the Complaint, an action that made permanent Mr. Winston's reassignment to Suitland.

In its FAD, the Agency dismissed both claims in the Complaint pursuant to 29 CFR § 1614.107(a)(2) for failure to initiate contact with an EEO Counselor within 45 days of the date of the matter alleged to be discriminatory, or, in the case of a personnel action, within 45 days of the effective date of the action. The Agency also dismissed the second claim pursuant to 29 CFR § 1614.107(a)(5) because the alleged discriminatory act constituted a proposal or preliminary step to taking a personnel action.

## II. FACTUAL BACKGROUND

To put the Agency's unwarranted dismissal in its proper context, Complainant offers the following timeline of relevant events leading up to his contact with the EEO counselor and the filing of his formal complaint.

On January 3, 2006, Complainant's supervisor, David Samec, asked Mr. Winston to take over the day-to-day operations for maintenance at the East Mall Zone as the new

4

Facility Maintenance Manager. Exh. F, 2/15/06 Winston Reply to Proposal to Suspend at 3; Exh. I, Email from Samec to Winston and Gastright ("Tommy is now running the day to day maintenance..."). This new position required that the Crafts and Utilities shops be brought under Mr. Winston's supervision and that certain responsibilities, including budget and personnel, be taken away from Kendra Gastright and Jeff Ridgeway, both of whom were Museum Building Managers. Specifically, Ms. Gastright's supervisory role over HVAC personnel and managing the maintenance budget for the National Air & Space Museum (NASM) were now assigned to Mr. Winston as the Facility Maintenance Manager. Exh. I.

On January 11, 2006, Mr. Winston, as part of his transition into his new role, held a "town hall" type meeting with the utility service repair operators and craft personnel in the National Museum of the American Indian. During this meeting, Mr. Winston told the group (approximately 23 personnel) about his goals for the EMZ, that he wanted it look and feel like it was one unified zone, and that he was going to build off of the strong foundation developed by Jeff Ridgeway and Kendra Gastright. Exh. F, 2/15/06 Winston Reply to Proposal to Suspend at 3. The purpose of the meeting was to energize his new team so that they could approach the significant tasks ahead of them with purpose and the right attitude. *Id.* at 4.

Two days later, on January 13, 2006, Ms. Gastright approached Mr. Winston and asked that he stop by her office to discuss his new role with her. Mr. Winston complied and went to her office approximately twenty minutes later, at around 10:00 A.M. Ms. Gastright asked Mr. Winston to close the door and sit down so they could talk. *Id.* at 1-2. Ms. Gastright began discussing how the two of them have different management styles

and that she sometimes felt it was difficult to work with him. *Id.* The two of them spoke for approximately an hour during which they were open about their respective management styles and each other's strengths and weaknesses. They also discussed how they could resolve their differences. The discussion concluded with a commitment by both Ms. Gastright and Mr. Winston to work together more effectively and to "get the job done" in the EMZ. *Id.* At no time did Mr. Winston raise his voice, use inappropriate or threatening language or threaten Ms. Gastright. Both parties shook hands and Mr. Winston left her office. Later that day, after Ms. Gastright had picked up her son from daycare and brought him back to the office, she, her son, and the Assistant Building Manager, Gary Houston, were in Mr. Winston's office. The topic of conversation with the group, including Ms. Gastright and her son, was Martin Luther King as the following Monday was Martin Luther King Day.

Six days later, on January 19, 2006, Mr. Samec approached Mr. Winston and informed him that Ms. Gastright had informed him that Mr. Winston had threatened her during their January 13, 2006 meeting. Mr. Samec also stated that Ms. Gastright was planning on filing a violence in the workplace charge against Mr. Winston. Later that day, Mr. Samec ordered Mr. Winston to remove all of his belongings to the American Indian Museum across the street. Mr. Winston was also told not to enter the NASM building, even as a tourist, or attend any meetings at which Kendra Gastright may be present. In a January 19, 2006 email, Samec reiterated his discussion with Mr. Winston and wrote, "I anticipate being able to provide you any changes to the requests that I have stated above once I have finished investigating this issue in a few working days." Exh. C.

6

On January 23, 2006, Samec issued a memorandum to Mr. Winston that stated: "Effective January 24, 2006, you are being reassigned to Suitland Zone as Facility Management Specialist, GS-1640. You will report to Maurice Evans at 7:30 am at the MSC Building…I remind you in your transfer to Suitland Zone to not enter the National Air & Space Museum…If you need assistance in moving your personal belongings, please work with Jeff Ridgeway at NMAI." Exh. B. This memorandum did <u>not</u> state that the reassignment was permanent. To the contrary, in fact, it appeared to be contingent on the findings of Mr. Samec's investigation as he once again ordered Mr. Winston not to enter the National Air and Space Museum while he was out in Suitland.

Upon his reassignment to the Suitland Zone, Mr. Winston ceased performing any duties related to his position in the EMZ as Facility Maintenance Manager. Instead, he performed various functions related to the Suitland Zone, such as drafting a spreadsheet for Suitland's 5-year plan and preparing monthly maintenance report for Suitland for service work orders. He was assigned a 9 foot x 7 foot office and no longer had any supervisory duties or project coordination functions. Exh. L (Winston Aff.).

On January 25, 2006, while purportedly in the midst of his investigation into Mr. Gastright's allegations, Mr. Samec told all who were present at an East Mall Zone Town Meeting that Mr. Winston had been reassigned to because he had threatened violence in the workplace. He also stated that Mr. Winston was not a team player and that the EMZ "didn't need people like that here." Exh. J. Mr. Samec did not mention the name of the accuser nor was it apparent to those who witnessed these statements that these were allegations and that an investigation was allegedly being conducted to determine the validity of the allegations.

7

On February 3, 2006, Mr. Winston was permitted to attend a safety class in which both Ms. Gastright and Mr. Samec were present. Given Mr. Samec's clear instructions that he was not be in the same building, let alone the same room as Ms. Gastright,, Mr. Winston was confused as to why he was permitted to attend the February 3 safety meeting. This prompted Mr. Winston to send an email to Mr. Samec inquiring as to the status of his investigation. In this email, Mr. Winston wrote, "I would like to know what I have been formally charged with that warrants me not to be able to enter into a Smithsonian's museum (NASM) during operational and non-operational times...I am very concern[ed] about this investigation and anxious to clear my good name for any wrong doing that I may be formally charge[d] with...." Exh. K (2/6/06 Email from Winston to Samec). Ms. Bechtol was copied on this email. In response, Mr. Samec indicated that his investigation was complete and that he would discuss his findings when they met the next day. Exh. D (2/6/06 Email from Samec to Winston)

Messrs. Samec and Winston met the next day at which time Samec delivered a February 7, 2006 memorandum entitled "Proposal to Suspend." Exh. D (2/6/06 Email from Samec to Winston). The memorandum proposed to suspend Mr. Winston for one day without pay for misconduct arising out of Mr. Winston's January 13, 2006 meeting with Ms. Gastright. Specifically, Mr. Winston was charged with acting "inappropriately and unprofessionally" because he never agreed to comply with Ms. Gastright's request that he stop responding to her sarcastically and teasing her. Mr. Samec wrote:

> When I asked you about your meeting with Ms. Gastright, you stated that nothing happened. I do not believe that "nothing happened," as I have no reason to believe that Ms. Gastright would make up such a detailed story if it were not true...

8

> In proposing this action, I have considered your ten years of service with the Smithsonian and your generally satisfactory performance. I have also considered your lack of previous discipline. However, I find your misconduct to be so serious that it warrants a one-day suspension.
>
> I warn you that it is your personal responsibility to prevent any recurrence of misconduct, and advise you that more serious disciplinary action will very likely result from such a recurrence, up to and including removal.

Exh. E (2/7/06 Proposal to Suspend).

The February 7, 2006 memorandum did not mention allegations that Mr. Winston threatened Ms. Gastright with violence, nor did it discuss when or how Mr. Winston would be restored to his former position. There was no indication in the memorandum of Mr. Winston's EEO rights or how he should or could appeal this action through the EEO process. It only stated that he had the right to present a reply to the proposal to the deciding official, Nancy Bechtol, Director, Arts and Industries Building.

On February 15, 2006, Mr. Winston submitted his Reply to the Proposal to Suspend to Ms. Bechtol and a request to meet with her. Exh. F. In the Reply, Mr. Winston reiterated his conversation with Ms. Gastright on January 13, 2006 and how he felt that while they disagreed on some issues, it was a productive meeting that ended with a handshake. He also offered evidence that Ms. Gastright made statements to her colleagues that she did not understand why Mr. Samec was saying bad things about Tommy, that she would not write a statement against him because he did not do anything to her. Id. at 2. Upon information and belief, none of the witnesses' statements were investigated. With respect to the proposed suspension and reassignment, Mr. Winston explained:

9

> Mr. Samec is directing me to stay out of NASM and there are no formal charges filed against me for violence in the workplace anywhere in the Smithsonian Institution. I have asked Mr. Samec in an email dated February 6, 2006 and when he issued my proposal to suspend memo on February 7, 2006, what have I been formally charged with that warrants me not to be able to enter into the NASM? Mr. Samec refuses to answer this question. *Mr. Samec has reassigned me to another zone because of the allegations that he said are against me. Now he wants to suspend me for one day. To be removed out of the zone, then to be suspended for one day without pay for the same incident (an incident that I am innocent) is "double jeopardy" in legal terms.*

Id. at 4.

Ms. Bechtol responded to Mr. Winston's request for a meeting four days later, writing, "Thanks Tommy, and yes I would like to meet with you next week sometime…" Exh. G (2/19/06 Email from Bechtol to Winston). After not hearing from Ms. Bechtol for several weeks, Mr. Winston sent a follow-up email on March 21, 2006 stating, "I am respectfully sending this friendly reminder to you so we can bring some closure to this situation. I am very concern[ed] about this investigation and anxious to clear my good name for any wrongdoing that I may be formally charge[d] with." *Id.* (3/21/06 Email from Winston to Bechtol).

Ms. Bechtol responded, "So sorry about being so slow getting back to you on this important issue. I would like to meet with you soon and wonder if you have some time this Thursday or Friday afternoon?...I have cc'd Melanie [Engelen] as I would like her to sit in with me when we discuss this case." Id. (3/21/06 Email from Bechtol to Winston). Mr. Winston met with Ms. Bechtol and Ms. Englen on March 23, 2006.

On April 3, 2006, Mr. Winston received Ms. Bechtol's Decision on the Proposal to Suspend in a memorandum dated March 27, 2006. In the Decision, Ms. Bechtol wrote, in relevant part:

> I have also considered whether you were charged with violence in the workplace. In reviewing the proposal and information in the case file, I do not find that you were charged with any violence in the workplace or making any threats. In fact, the proposal did not mention any allegations of threatening behavior. I have also considered the fact that, by your own admission, you explained that you and Ms. Gastright both have "tones" in your voice, and that although you use a "tone," you are not malicious. Based on the facts that I have available to me, I have decided to rescind the proposal to suspend you. Instead, I will issue a confirmation of counseling.
>
> ...
>
> I warn you that it is your personal responsibility to prevent any recurrence of misconduct and advise you that more serious disciplinary action will very likely result from such a recurrence, up to and including removal.

Exh. H.

Although Ms. Bechtol in her Decision acknowledged that Mr. Winston was never charged with violence in the workplace, she did not rescind his reassignment from the EMZ to Suitland.

Shortly after receiving Ms. Bechtol's Decision, Mr. Winston retained counsel and initiated contact with Ms. Shadella Davis, EEO counselor, on April 27, 2006—24 days after receiving Ms. Bechtol's Decision on the Proposal to Suspend. In June of 2006, Mr. Winston finally stopped making payments on his parking spot at the EMZ as it was abundantly clear that he would not be restored to his prior position.

## III.  ARGUMENT

The Final Agency Decision dismissing Mr. Winston's Complaint is based on a flawed analysis of the applicable law and should be reversed for several reasons.

1. **Complainant timely initiated contact with the EEO Counselor within 45 days of receipt of Ms. Bechtol's Decision on the Proposal to Suspend**

As an initial matter, Complainant notes that the Agency bears the burden of obtaining sufficient information to support a reasoned determination of timeliness. *Guy v. Department of Energy*, EEOC Request No. 05930703 (January 4, 1994) (quoting *Williams v. Department of Defense*, EEOC Request No. 05920506 (August 25, 1992)). The Agency cites Mr. Winston's January 24, 2006 reassignment to the Suitland Zone and the February 7, 2006 receipt of the Proposal to Suspend as the only two claims or events that trigger the 45-day limitation period. Conspicuously absent from the statement of claims, without any analysis or explanation, is Nancy Bechtol's Decision on the Proposal to Suspend, issued on April 3, 2006—24 days prior to Complainant's initial date of contact with the EEO Counselor on April 27, 2006.

29 CFR § 1614.107(a)(2) requires that a complainant initiate contact with an EEO Counselor within 45 days of the date of the matter alleged to be discriminatory, or, in the case of a personnel action, within 45 days of the *effective date of the action*. Ms. Bechtol's Decision on the Proposal to suspend is the discriminatory matter complained of as well as the effective date of two personnel actions, the confirmation of counseling and no rescission of the reassignment from the EMZ in Washington DC to the position in Suitland, Maryland. *See Agrawal v. Dept. of Transportation*, EEOC Appeal No. 01A61409 (Aug. 29, 2006) (holding that reassignment resulting in change of duties and supervisor constitutes a substantive personnel action affecting the terms and conditions of complainant's employment).

Mr. Winston's reassignment from his position as Facility Maintenance Manager in the EMZ to his position in Suitland, where he was stripped of his duties and

supervisory role, constituted a personnel action that triggered the 45-day limitation period. After he was accused of threatening Ms. Gastright with violence, Mr. Winston understandably was reassigned to a different location while an investigation was conducted. This reassignment was a temporary action that became permanent after Ms. Bechtol issued her Decision on April 3, 2006. This is obvious because although she acknowledges in the Decision that "I do not find that you were charged with any violence in the workplace or making any threats. In fact, the proposal did not mention any allegations of threatening behavior," she nevertheless decided not to rescind Mr. Winston's reassignment to Suitland where he remains as of this writing. It was only after he received the Decision that he came to know that his reassignment was not dependent on the findings of Samec's investigation or Ms. Gastright's violence in the workplace charge.

Thus, the effective date of Mr. Winston's reassignment is the date it became official, which is the date of Ms. Bechtol's Decision on the Proposal to Suspend. *See Landers v. Roche*, EEOC Appeal No .01A21798 (Feb. 19, 2003) (holding that effective date of personnel action is the date it becomes official). Complainant believed that he would be restored to his prior position after the investigation exonerated him of the threatened violence in the workplace charge. Mr. Winston even kept paying for his parking spot at the EMZ until June 2006, after it became clear that he would not be restored to his prior position. *See Williams v. Potter*, EEOC Appeal No. 01A54583 (Sept. 22, 2005) (holding that Complainant timely contacted the EEO Counselor within 45 days after he learned that he would not be restored back to his former duty station).

Up to and until the Decision was issued, Mr. Winston's reassignment was only a preliminary or temporary personnel decision that did not render him aggrieved. In other words, had Mr. Winston initiated contact with the EEO counselor prior to Ms. Bechtol's Decision, the Agency would likely have dismissed it pursuant to 29 CFR § 1614.107(a)(5).

In the alternative, Ms. Bechtol's Decision that resulted in a confirmation of counseling constitutes a matter alleged to be discriminatory under 29 CFR § 1614.107(a)(2) triggering the 45-day limitation period to initiate contact with the EEO counselor because it is the first time that Mr. Winston learned that he was being treated differently from Ms. Gastright. In the Decision, Ms. Bechtol writes:

> You also explained that **you and Ms. Gastright** use strong tones, but are not threatening, and that several times you simply did not see eye-to-eye.
>
> . . .
>
> I have also considered the fact that, by your own admission, you explained that **you and Ms. Gastright both** have "tones" in your voice, and that although you use a "tone," you are not malicious.

Mr. Winston never states that he was the sole wrongdoer. In fact, he clearly states that both he and Ms. Gastright use strong tones, yet he was the only one that was issued a confirmation of counseling.

Moreover, in a separate and unrelated incident involving Ms. Gastright's misconduct, she was only required to issue a formal apology for her behavior. In this incident, Ms. Gastright became extremely irate with a colleague at a staff meeting and repeatedly used the "f" word and other profanities while leaning over the table in a threatening manner. Because the staff made an agreement in the office to deposit twenty-five cents in a jar every time a profanity was used, Ms. Gastright took out her wallet and

threw money at the colleague in front of the entire staff.  Yet she was only required to issue a formal apology while Mr. Winston was reassigned to a new position and issued a confirmation of counseling based on misconduct for using a certain "tone" and belittling Ms. Gastright during a private meeting.

In sum, Mr. Winston did not become aware that he was being subject to disparate treatment until Ms. Bechtol issued her Decision on the Proposal to Suspend because that is the first time he learned that he was being disciplined more harshly than Ms. Gastright.

Finally, the Agency, in a conclusory fashion, dismissed the confirmation of counseling as a "preliminary personnel action that does not have a permanent effect." FAD at 3.  In its FAD, the Agency attempts to minimize the effect of confirmation of counseling in a transparent attempt to avoid using the April 3, 2006 date in computing whether Mr. Winston timely initiated contact with the EEO counselor.  Ms. Bechtol's Decision itself labels Mr. Winston's purported conduct toward Ms. Gastright as "misconduct" and the confirmation of counseling as "discipline" when she writes, "I warn you that is your personal responsibility to prevent any *recurrence of misconduct* and advise you that *more serious disciplinary action* will very likely result from such a recurrence, up to and including removal." 4/3/06 (dated 3/27/06) Decision at 2 (*emphasis added*).

Ms. Bechtol's use of the phrase, "more serious discipline" is dispositive of the fact that the confirmation of counseling constituted discipline that would result in a more serious penalty should the misconduct recur.  There was no indication in the Decision that the discipline imposed would not have a permanent effect, or that the Decision would

15

be destroyed after a certain period of time. Instead, Mr. Winston was told that *any* recurrence will very likely result in *more serious* disciplinary action.

## 2. In the alternative, Complainant's discrimination claim is part of a continuing violation or a series of related discriminatory acts, at least one of which fell within the time period for contacting an EEO Counselor.

The Commission has held that evidence showing that a complainant had, or should have had, a reasonable suspicion of discrimination more than 45 days prior to initiating EEO Counselor contact will not preclude acceptance of an otherwise timely claim of ongoing discrimination. *Brooks v. Dept. of Veterans Affairs*, EEOC Appeal No. 01A10159 (March 11, 2002) (citing *Anisman v. Department of Treasury*, EEOC Request No. 05A00283 (April 12, 2001)).

Mr. Winston, on the first page of his formal complaint in the section that prompts the Complainant to indicate the date on which the most recent discrimination took place, wrote, "April 3, 2006" (the date Ms. Bechtol issued her Decision) and in a parenthetical wrote, "continuing violation is alleged." In his description of the relevant events, Mr. Winston maintained that the Agency's actions were part of an ongoing pattern and practice of discrimination, beginning with his removal from the EMZ and continuing to this day, as he has not been restored to his former position. Likewise, the purported investigation conducted by Samec, the issuance of the Proposal to Suspend, and the discriminatory Decision on the Proposal to Suspend all constitute a series of related discriminatory acts, having a common nexus or theme, the last of which fell within the time period for contacting an EEO Counselor. *See Reid v. Department of Commerce*, EEOC Request No. 05970705 (April 22, 1999); *McGivern v. United States Postal*

16

*Service*, EEOC Request No. 05901150 (December 28, 1990). Mr. Winston always believed that the investigation or subsequent decisions by Samec and Bechtol, respectively, would exonerate him; it was only until he received the Decision did he finally realize that he would never be exonerated. *See Howard v. Dept. of Navy*, EEOC Appeal No. 01965648 (Feb. 11, 1999) (plaintiff who believed he had been subject to discrimination had an obligation to file promptly with the EEOC or lose his claim, as distinguished from the situation where a plaintiff is unable to appreciate that his is being discriminated against until he has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern) (citing *Sabree v. U.S. Brotherhood of Carpenters*, 921 F.2d 396 (1st Cir. 1990)).

In addition, in the FAD, the Agency does not even address whether his allegations were sufficient to state a continuing violation claim. This omission alone warrants that the FAD be vacated and remanded for a supplemental investigation into Complainant's continuing violation allegations. *Syrkes v. West*, EEOC Appeal No. 01952232 (June 10, 1996).

## 3. In the alternative, there are other equitable circumstances that mitigate untimely contact.

Throughout this entire ordeal, Mr. Winston was purposefully kept unaware about the allegations that were made against him to warrant his reassignment and loss of duties. Mr. Winston repeatedly asked in emails to Mr. Samec and Ms. Bechtol and in his reply to the Proposal to Suspend and the Decision to Suspend, "what am I being charged with?" Until he received the Decision on the Proposal to Suspend on April 3, 2006, Mr. Winston

still was under the impression that he was being charged with violence in the workplace. This was a reasonable belief given that he was still working in Suitland and never offered his old position back. Only after he received the Decision, did he know that his reassignment was not based on any violence in the workplace charges.

Mr. Samec informed Mr. Winston of Ms. Gastright's accusations on January 19, 2006. Only after Mr. Winston prompted Mr. Samec about the investigation did he agree to meet with him on February 7, 2006. Mr. Winston received the Proposal to Suspend on February 7, 2006 and timely replied eight days later on February 15, 2006. Ms. Bechtol, by her own admission, delayed giving him the Decision until April 3, 2006. See Exh. G, 3/21/06 email from Bechtol to Winston ("So sorry about being so slow getting back to you on this important issue."). According to the FAD, had Ms. Bechtol timely issued her decision, Mr. Winston would have had until March 10, 2006 for claim 1 and March 23, 2006 for claim 2 in which to contact an EEO counselor. In sum, Mr. Winston should not be prejudiced by Ms. Bechtol's and Mr. Samec's delay.

## IV. CONCLUSION

For the foregoing reasons, Complainant Tommy Winston respectfully requests that the Commission overturn the Final Agency's Decision in this case.

Respectfully Submitted,

Sundeep Hora
ALDERMAN & DEVORSETZ, PLLC
1025 Connecticut Ave., NW
Suite 1000
Washington, DC 20036
Tel: 202-969-8220
Fax: 202-969-8224

**COUNSEL FOR COMPLAINANT**

19

## CERTIFICATE OF SERVICE

I certify that on this day, September 22, 2006, I served a copy of the foregoing document entitled "Complainant's Brief in Support of the Appeal" by hand-delivery to:

Era L. Marshall
Director
Office of Equal Employment and Minority Affairs
Smithsonian Institution
P.O. Box 37012
Victor Building, Suite 8100, MRC 921
Washington, DC 20013-7012


_____
Sundeep Höra

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
OFFICE OF FEDERAL OPERATIONS

| | | |
|---|---|---|
| TOMMY J. WINSTON | ) | |
| Complainant, | ) | DOCKET No. 01A64840 |
| | ) | |
| v. | ) | Agency No. 0615062606 |
| | ) | |
| LAWRENCE M. SMALL | ) | |
| Secretary, | ) | |
| Smithsonian Institution, | ) | Date: September 22, 2006 |
| | ) | |
| Agency. | ) | |

## NOTICE OF ERRATA IN RELATION TO
## COMPLAINANT'S BRIEF IN SUPPORT OF APPEAL

The Complainant, Tommy Winston, by and through his undersigned

representative, hereby give notice of errata to the Commission and all parties regarding

page twelve to thirteen of Complainant's Brief in Support of Appeal, filed by hand-

delivery on September 22, 2006. The correct page of twelve and thirteen of

Complainant's Brief is attached hereto as Exhibit A. Complainant hereby respectfully

requests the Commission to substitute Exhibit A for pages twelve and thirteen of the

Brief.

Respectfully Submitted,

_Sundeep Hora_ (signature)
_____
Sundeep Hora
ALDERMAN & DEVORSETZ, PLLC
1025 Connecticut Ave., NW
Suite 1000
Washington, DC 20036
Tel: 202-969-8220
Fax: 202-969-8224
**COUNSEL FOR COMPLAINANT**

## CERTIFICATE OF SERVICE

I certify that on this day, September 25, 2006, I served a copy of the foregoing document entitled "Notice of Errata in Relation to Complainant's Brief in Support of Appeal" with Exhibit A, by facsimile to:

Era L. Marshall
Director
Office of Equal Employment and Minority Affairs
Smithsonian Institution
P.O. Box 37012
Victor Building, Suite 8100, MRC 921
Washington, DC 20013-7012
Fax- 202-275-2055

Sundeep Hora

2

09/25/2006  16:16    202965  4                 ALDERMAN DEVORSL           PAGE  04/06

# EXHIBIT A

**1.  Complainant timely initiated contact with the EEO Counselor within 45 days of receipt of Ms. Bechtol's Decision on the Proposal to Suspend**

As an initial matter, Complainant notes that the Agency bears the burden of obtaining sufficient information to support a reasoned determination of timeliness. *Guy v. Department of Energy*, EEOC Request No. 05930703 (January 4, 1994) (quoting *Williams v. Department of Defense*, EEOC Request No. 05920506 (August 25, 1992)). The Agency cites Mr. Winston's January 24, 2006 reassignment to the Suitland Zone and the February 7, 2006 receipt of the Proposal to Suspend as the only two claims or events that trigger the 45-day limitation period. Conspicuously absent from the statement of claims, without any analysis or explanation, is Nancy Bechtol's Decision on the Proposal to Suspend, issued on April 3, 2006—24 days prior to Complainant's initial date of contact with the EEO Counselor on April 27, 2006.

29 CFR § 1614.107(a)(2) requires that a complainant initiate contact with an EEO Counselor within 45 days of the date of the matter alleged to be discriminatory, or, in the case of a personnel action, within 45 days of the *effective date of the action*. Ms. Bechtol's Decision on the Proposal to suspend is the discriminatory matter complained of as well as the effective date of two personnel actions, the confirmation of counseling and no rescission of the reassignment from the EMZ in Washington DC to the position in Suitland, Maryland. *See Agrawal v. Dept. of Transportation*, EEOC Appeal No. 01A61409 (Aug. 29, 2006) (holding that reassignment resulting in change of duties and supervisor constitutes a substantive personnel action affecting the terms and conditions of complainant's employment).

Mr. Winston's initial reassignment from his position as Facility Maintenance Manager in the EMZ to his position in Suitland in no way constituted a personnel action

12

that triggered the 45-day limitation period.  After he was accused of threatening Ms. Gastright with violence, Mr. Winston understandably was reassigned to a different location while an investigation was conducted.  This reassignment was a temporary action that became permanent after Ms. Bechtol issued her Decision on April 3, 2006. This is obvious because although she acknowledges in the Decision that "I do not find that you were charged with any violence in the workplace or making any threats.  In fact, the proposal did not mention any allegations of threatening behavior," she nevertheless decided not to rescind Mr. Winston's reassignment to Suitland where he remains as of this writing.  It was only after he received the Decision that he came to know that his reassignment was not dependent on the findings of Samec's investigation or Ms. Gastright's violence in the workplace charge.

Thus, the effective date of Mr. Winston's reassignment is the date it became official, which is the date of Ms. Bechtol's Decision on the Proposal to Suspend.  *See Landers v. Roche*, EEOC Appeal No .01A21798 (Feb. 19, 2003) (holding that effective date of personnel action is the date it becomes official).  Complainant believed that he would be restored to his prior position after the investigation exonerated him of the threatened violence in the workplace charge.  Mr. Winston even kept paying for his parking spot at the EMZ until June 2006, after it became clear that he would not be restored to his prior position.  *See Williams v. Potter*, EEOC Appeal No. 01A54583 (Sept. 22, 2005) (holding that Complainant timely contacted the EEO Counselor within 45 days after he learned that he would not be restored back to his former duty station).



# ALDERMAN & DEVORSETZ
PLLF

September 25, 2006

## FACSIMILE TRANSMITTAL SHEET

**TO:** Robert J. Barnhart, Director,
Compliance and Control
Division, Office of Federal
Operations

**FAX:** 202-663-7022

Era L. Marshall, Director,
OEEMA

202-275-2055

**FROM:** Sundeep Hora, Esq.

**TEL:**

**PAGES:** 6 (including cover sheet)

**RE:** Tommy J. Winston, Docket #
01A64840, SI Case No.
0615062606

Please see the attached Notice of Errata in Relation to Complainant's Brief in Support of Appeal.

**NOTICE:**

This facsimile transmission is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this facsimile is not the intended recipient or the employee or agent responsible for delivering this transmission to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone (call collect at (202) 969-8220) and immediately destroy this facsimile cover page and all its attachments.

1025 CONNECTICUT AVENUE, NW • SUITE 1000 • WASHINGTON, DC 20036
(202) 969-8220 • FAX (202) 969-8224 • WWW.A-DLAW.COM

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## OFFICE OF FEDERAL OPERATIONS

| | | |
|---|---|---|
| TOMMY J. WINSTON | ) | |
| Appellant/Complainant, | ) | DOCKET No. 01A64840 |
| | ) | |
| v. | ) | Agency No. 06-15-062606 |
| | ) | |
| LAWRENCE M. SMALL | ) | |
| Secretary, | ) | |
| Smithsonian Institution, | ) | Date: November 20, 2006 |
| | ) | |
| Appellee/Respondent. | ) | |

### REPLY TO APPELLEE'S BRIEF IN OPPOSITION TO APPEAL

Appellant, Tommy Winston, by and through his undersigned representative,

hereby submits his Reply to Appellee's Brief in Opposition to Appeal (hereinafter the

"Reply"). Appellant submits this Reply to ensure that the record is corrected in light of

certain inaccuracies contained in Appellee's Brief in Opposition to Appeal (hereinafter

the "Opposition").

The facts of this case are straightforward and establish that Mr. Winston is

aggrieved and timely contacted the EEO counselor. After Mr. Winston was accused of

threatening a co-worker with violence, he was temporarily reassigned from his position in

the East Mall Zone (EMZ) of the National Air and Space Museum to the Suitland Zone,

in Suitland Maryland, while Appellant' supervisor, David Samec, conducted an

investigation into the co-worker's allegations. While he was temporarily reassigned to

Suitland, Mr. Winston's duties and responsibilities changed drastically. Mr. Samec's

investigation resulted in the issuance of a Proposal to Suspend. The Proposal was then

commuted to a confirmation of counseling by Nancy Bechtol, Appellant's second line

supervisor, in her Decision on the Proposal to Suspend, for "belittling and using an

inappropriate tone" with Ms. Gastright. Ms. Bechtol, in her Decision, did not rescind the temporary reassignment to Suitland, thus making it a permanent action which rendered Appellant aggrieved.

## I.    It is Undisputed that Appellant was Aggrieved by His Reassignment

Appellee does not appear to contest the fact that Appellant was aggrieved after he was involuntarily reassigned from the EMZ of the NASM in Washington, DC to the Suitland Zone in Suitland, Maryland, nor does Appellee contest Appellant's account of his changed duties and responsibilities before and after the reassignment. See Exh. L to Appeal. Rather, Appellee confusingly categorizes Appellant's description of his duties as "new evidence" that should not be considered in determining whether he is aggrieved at the appeal stage. This is not new evidence. This is information that is inextricably connected to the factual predicate of Mr. Winston's claims, regardless of when the Agency first learned of it or made the effort to learn of these facts. Appellee's argument has no basis in the record, the law or applicable EEO regulations.

Appellee asserts: "appellant never claimed during the counseling and complaint stages that his reassignment resulted in any specific adverse consequences or objectively tangible harms to his employment." Opposition at 5. Appellee impermissibly imposes an evidentiary burden on Mr. Winston at the counseling and complaint stage that does not exist. The Commission's precedent has long defined an "aggrieved employee" as one "who suffers a present harm or loss with respect to a term, condition, or privilege of employment for which there is a remedy. Masuhara v. England, EEOC Apeal No. 01A21428 at 2 (April 18, 2002) (citing Diaz v. Dept. of the Air Force, EEOC Request No. 05931049 (April 21, 1994)). EEOC Management Directive 110 elucidates the

respective roles of the parties with respect to gathering evidence at the counseling and

complaint stage.

> The **complaint will generally provide the initial information concerning
> the bases, issues, and incidents that gave rise to the complaint of
> discrimination.** The complaint may also indicate the reason, if any was
> given, for any adverse employment decision. **Additional background
> and detailed information must be obtained from the complainant** and
> recorded through written questions and answers (interrogatories), recorded
> interviews (using handwritten notes or verbatim transcription), an
> exchange of letters or memoranda, or a fact-finding conference. This
> information should include medical documentation, where necessary.
> Witness testimony intended to be made a part of the complaint file should
> be made under oath or affirmation or penalty of perjury.

MD-110 at 6-10 (emphasis added).

Mr. Winston more than met the requirements of MD-110 in <u>both</u> his request for

counseling and in his formal complaint where he alleged that his reassignment from the

EMZ of the NASM to the Suitland Zone in Maryland was discriminatory. By way of

example but no limitation, Mr. Winston alleged that he was reassigned to the Suitland

Zone based on a charge by his co-worker, Ms. Kendra Gastright, that he threatened her

with violence. <u>See</u> narrative response to Question 8 of Complaint, Complaint File at 2.

In addition, on the first page of his formal complaint, in the section that prompts the

Complainant to indicate the corrective actions he is seeking, Mr. Winston indicated that

he wanted to be restored to his prior position. Finally, in comparing himself to Ms.

Gastright as a similarly situated person who did not suffer an adverse employment action

for purported misconduct, Mr. Winston wrote, "I, on the other hand, was accused of

using the wrong tone or 'belittling' Ms. Gastright and as a result, I have had to suffer a

proposal to suspend me, a transfer to Maryland, *loss of my job that I loved,* and more

importantly, the loss of my good name." <u>Id</u>. at 3 (emphasis added). Indeed, it is apparent

3

in the record that Mr. Winston met the requirements of MD-110 by indicating during the counseling stage, and in his formal complaint, the bases, issues, and incidents that gave rise to the complaint of discrimination with respect to his reassignment.

In Bussey v. Riley, EEOC Appeal No. 01964244 (March 26, 1997), the Commission rejected the argument the Agency attempts to assert here. The appellant in that case argued on appeal that his reassignment to a "less desirable position" constituted a "personal loss" that rendered him aggrieved. The Commission agreed, holding that the *"reassignment of appellant to a different position concerns a term and/or condition of appellant's employment. Appellant has alleged that he has been harmed because he has been assigned to a less desirable position.* Therefore, we find that appellant is aggrieved and that his complaint states a claim under EEOC Regulations." Id. at 3 (emphasis added).

Mr. Winston should not be prejudiced by the Office of Equal Employment and Minority Affairs' (OEEMA) failure to conduct its required inquiry under MD-110 for the purpose of determining jurisdictional questions. "This includes determining whether there may be issues relating to the timelines of the individual's EEO Counselor contact and obtaining information relating to this issue." MD-110 at 2-10. During the counseling and complaint process, Appellant was never asked any questions or even interviewed by the counselor. The EEO Counselor's Report reveals that OEEMA conducted only a perfunctory inquiry into Mr. Winston's asserted claims and interviewed only two witnesses, Mr. David Samec and Nancy Bechtol, both of whom are adverse to the Appellant because he accused them of discriminatory conduct. See 7/18/2006 EEO Counseling Report at #16 (Persons interviewed: David Samec, Nancy Bechtol).

4

The Agency failed to conduct an adequate investigation that would have resulted

in an appropriate factual record. Moreover, the Agency attempts in its Opposition to

use this inadequate factual record as a basis to claim that Mr. Winston's reassignment

from the EMZ to Suitland, Maryland that changed the terms and conditions of his

employment, constitutes "new evidence." This is patently unfair and should not be

tolerated by the Commission.

Appellee also claims in its Opposition that the reassignment is somehow mooted

because, "after Appellant was reassigned to Suitland, he applied for, and obtained a *new*

position (Building Manager*) in the Suitland Zone.* Opposition at 5 (emphasis in original).

This is incorrect. Mr. Winston applied for a building manager position under an open

vacancy announcement that did not include the building manager position in Suitland,

because at the time Mr. Winston submitted his application, the Suitland position was

already occupied. It must be noted that the circumstances under which Mr. Winston

became Acting Building Manager in Suitland are suspect. It was only after Appellant

retained counsel and filed a formal complaint that the Building Manager in Suitland was

suddenly transferred to another position and Mr. Winston was inexplicably installed in

his place.

Mr. Winston is a hard working employee who loved his job at the EMZ a great

deal. He agreed to take the building manger position solely because his duties after his

reassignment were utterly dissatisfying, demoralizing and failed to utilize his capabilities.

In short, Mr. Winston accepted the building manager appointment rather than sit in his

office in Suitland and perform menial tasks. Mr. Winston remains "aggrieved" to this day

5

because his current position is under a series that, unlike his prior position at the EMZ, has no career ladder promotion potential. See Reid v. Dalton, EEOC Appeal No. 01941016 (March 22, 1994) (holding that Appellant's allegation that his new position lacks promotion potential is sufficient to render him an aggrieved employee).

**II.    Appellant Timely Contacted the EEO Counselor Within the 45-Day Time Period.**

Appellee refuses to concede that Ms. Bechtol's April 3, 2006 Final Decision made the temporary reassignment to the Suitland Zone permanent, thus constituting a final agency action that is ripe for complaint to the Commission. Instead, the Agency argues that Appellant was required to raise his complaint before the EEO within 45 days of the date that he was initially (and temporarily) reassigned to the Suitland Zone. In support of this assertion, Appellee argues that the initial reassignment to the Suitland Zone was not temporary because the Reassignment Memorandum did not specifically state that the reassignment was temporary or preliminary. This assertion is without basis and contrary to logic.

Mr. Winston was reassigned to the Suitland Zone because Kendra Gastright made allegations that he threatened her with violence. David Samec, Mr. Winston's first-line supervisor in the EMZ, needed to separate Ms. Gastright and Mr. Winston until he conducted an investigation into her allegations. As a result, he reassigned Mr. Winston to Suitland ostensibly for the duration of the investigation into Ms. Gastright's claims. The investigation resulted in a proposal to suspend Mr. Winston. That proposed suspension was then reduced to a confirmation of counseling for "belittling and using an inappropriate tone" rather than violence in the workplace (which the Agency's

6

investigation apparently determined was not supported). However, Mr. Winston was
never restored to his former position in the EMZ.

It is undisputed in the record that Mr. Winston's reassignment was dependent
upon the outcome of Mr. Samec's investigation, the Proposed Suspension, and the
disciplinary process. In the summary of interviews in the July 18, 2006 EEO Counseling
Report, the Counselor wrote:

> Mr. Samec stated that, shortly after Ms. Gastright submitted a written
> complaint dated January 14, 2006,[1] he contacted OFEO's Employee and
> Labor Relations Department for guidance. He stated that he separated the
> parties **initially by relocating Mr. Winston** to the National Museum of
> the American Indian (NMAI) and **then reassigning him to the Suitland
> Zone**. He stated that Ms. Gastright was not relocated due to her job
> responsibilities as the building manager assigned to [the National Air and
> Space Museum]. **Mr. Samec stated that he issued the "Proposal to
> Suspend" based on the information he gathered during his inquiry
> into the matter.**

Complaint File at 10 (**emphasis added**). That Mr. Winston's reassignment was
dependent upon the outcome of the investigation is further evidenced by Mr. Samec's
January 19, 2006 email to Mr. Winston reiterating his discussion with him about the
purported violence in the workplace charges against him and his instructions not to enter
the NASM (even as a tourist) or come in contact with Ms. Gastright. Mr. Samec wrote:

> To restate what I am requesting you to do effective 0001 hours on January
> 20 (Friday):
>
> 1. Report to work at NMAI...2. Until further notice, do not enter the
> NASM building. 3. Also, do not attend meetings where Kendra Gastright
> may be present.
>
> ...
>
> **I anticipate being able to provide any changes to the requests that I
> have stated above once I have finished investigating this issue in a few
> working days.**

---

[1] Ms. Gastright's January 14, 2006 written complaint is conspicuously absent
from the complaint file, and a copy has never been provided to Appellee.

Complaint File at 30 **(emphasis added)**. Moreover, in Appellant's narrative response to Question 8 of the Complaint, he described an incident at an EMZ Town Hall Meeting on January 25, 2006 in which Mr. Samec:

> told all who were present that **I was transferred to Suitland based on an accusation that I threatened violence in the workplace.** Moreover, he stated that I wasn't a team player and that he didn't need people like me at the East Mall Zone. Several people stood up for me at this meeting and asked that I be brought back...**[Mr. Samec] made these statements while in the midst of supposedly conducting an investigation into the matter.**

Complaint File at 3.

There is absolutely no factual basis for Appellee's assertion that the reassignment was permanent from in its inception or that it was separate and apart from the Proposed Suspension and disciplinary process. On the contrary, all evidence on the record dictates that only possible conclusion is that the reassignment was always dependent on the results of Mr. Samec's investigation that formed the basis of the Proposal to Suspend and Nancy Bechtol's Decision on the Proposal to Suspend which was provided to Appellee on April 3, 2006, well within the 45-day period.[2]

## III.  At a Minimum, the Complaint Must be Remanded for Consideration of Appellant's Continuing Violation Claim.

Appellee asserts that the Commission should not remand Appellee's complaint for consideration of his continuing violation claim because a "reassignment is a discrete employment action not generally part of a continuing violation." Opposition at 9.

---

[2] The charge of belittling or using an inappropriate tone with Ms. Gastright (which resulted in the proposal to suspend and Ms. Bechtol's issuance of the confirmation of counseling) purportedly **arose out of the same January 13, 2006 meeting** between Ms. Gastright and Mr. Winston in which she accused him of threatening her with violence.

Appellee is missing the point. The point is that the Final Agency Decision does not address, or even mention for that matter, Appellee's continuing violation claim. The Commission has consistently held that where a Complainant has alleged a continuing violation, and the Agency's FAD fails to address this claim, the complaint must be remanded "for consideration of this question and issuance of a new final decision making a specific determination under the continuing violation theory." Brown v. Caldera, EEOC Appeal No. 01956647 at 7 (Sept. 15, 2000) (citation omitted). Moreover, EEO regulations explicitly prohibit the Agency from fragmenting claims that compromise a complainant's ability "to present an integrated and coherent claim of an unlawful employment practice for which there is a remedy under the federal equal employment statutes." MD-110 at 5-5.

## IV.    Conclusion

For the foregoing reasons, and those contained in Appellant's Brief in Support of the Appeal, Appellant, Tommy Winston respectfully requests that the Commission reverse the Final Agency's Decision in this case.

Respectfully Submitted,

_____
Sundeep Hora
ALDERMAN & DEVORSETZ, PLLC
1025 Connecticut Ave., NW
Suite 1000
Washington, DC 20036
Tel: 202-969-8220
Fax: 202-969-8224

**COUNSEL FOR APPELLANT**

9

## CERTIFICATE OF SERVICE

I certify that on this day, November 20, 2006, I served a copy of the foregoing document entitled "Reply to Appellee's Brief in Opposition to the Appeal" by facsimile to:

Era L. Marshall
Director
Office of Equal Employment and Minority Affairs
Smithsonian Institution
P.O. Box 37012
Victor Building, Suite 8100, MRC 921
Washington, DC 20013-7012
Fax- 202-275-2055


Craig M. Blackwell
Assistant General Counsel
Smithsonian Insitution
P.O. Box 23286
Washington, DC 20026-3286
Fax-202-357-4310


Sundeep Hora

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **TOMMY J. WINSTON,** | ) | |
| | ) | |
| | ) | |
| **PLAINTIFF** | ) | |
| | ) | |
| v. | ) | **Civ. No. 07-1411 (RWR )** |
| | ) | |
| **CRISTIÁN SAMPER** | ) | |
| **Acting Secretary, Smithsonian Institution** | ) | |
| | ) | |
| **DEFENDANT** | ) | |

\* \* \* \* \* \* \* \* \* \*

DECLARATION OF CHARLENE TYSON

I, Charlene Tyson, do state:

1.     I am a Management Support Specialist with the Smithsonian's Office of Facilities Management and Reliability (OFMR). an office within the Smithsonian's Office of Facilities and Operations. I work in the East Mall Zone at the OFMR office located at the National Air and Space Museum (NASM), 7th and Independence Ave., SW. Washington. DC, 20560. I have held this position for approximately four years, including during the time period January 2005 through January 2006.

2.     In my position, I am one of several employees at the OFMR office located at NASM responsible for posting EEO posters used by the Smithsonian to inform its employees of their equal employment rights and responsibilities.

3.     During the time period January 2005 through January 2006, an EEO poster was posted at the OFMR office located at NASM on a bulletin board just beyond the glass entrance doors to OFMR.  OFMR employees had to walk through these glass doors and past the EEO poster in order to enter the OFMR office and their individual offices and workspaces.  The poster was approximately 11 inches by 14 inches.  It is my recollection that, during most of this time period, Mr. Tommy Winston was an OFMR employee, he worked in the East Mall Zone, and he had an office at the OFMR office located at NASM.

4.     The attached reduced-size copy shows the EEO poster that was posted at the OFMR office located at NASM during the period January 2005 through January 2006.

5.     The poster includes the following language:

EEO Rights and Responsibilities

If an applicant for employment or other individual associated with
the Smithsonian believes that he or she has been discriminated against
because of race, color, religion, sex (including pregnancy), national origin,
age, and/or disability or retaliated against for participating in protected
EEO activity, he or she must contact the Office of Equal Employment
and Minority Affairs (OEEMA) within forty-five (45) calendar days of
the alleged discrimination or the effective date of an allegedly
discriminatory personnel action in order to initiate the federal sector EEO
process.

6.     The poster includes the phone number and address of OEEMA.

Pursuant to 28 U.S.C. sec. 1746, I declare under penalty of perjury that the foregoing is
true and correct.

_Charlene Lyon_

12-11-07
Date

Smithsonian Institution

# EQUAL EMPLOYMENT OPPORTUNITY

**DIVERSITY AND EQUAL EMPLOYMENT OPPORTUNITY POLICY**

The Smithsonian is committed to ensuring that all individuals associated with the Institution (e.g., employees, interns, research associates, fellows and volunteers) are treated equitably in an environment that is free from discrimination based on race, color, national origin, religion, sex (including pregnancy), age, disability, parental status, marital status, or sexual orientation, and reprisal against protected activities. Management officials are responsible for ensuring that all individuals associated with the Institution are made aware of this policy.

All personnel practices, including recruitment, hiring, promotion, assignments, transfers, training and career development, benefits, and separations, will be conducted in a manner that ensures fair treatment. Every employee is a partner in fostering a workplace where everyone is valued and has confidence that merit is the basis for employment decisions. Managers at all levels, and their supervisors who report to them, are responsible for achieving diversity and will be held accountable through annual performance appraisals. All supervisors must attend the "EEO for Supervisors" course as well as recommended training in personnel management.

When embraced and managed effectively, diversity increases productivity, broadens perspectives, improves morale, and fosters creativity. Our success will be evident by our ability to attract and retain individuals who are committed to moving us toward our goal of connecting Americans with their history and their culture.

**PREVENTION OF WORKPLACE HARASSMENT**

The Smithsonian Institution has a policy of zero tolerance for harassment based on race, color, national origin, religion, sex (including pregnancy), age, disability, parental status, marital status, or sexual orientation. Additionally, it is the policy of the Smithsonian that no retaliation will be tolerated against any employee or individual associated with the Institution for reporting harassment under this or any other policy or procedure, or for assisting in any inquiry about such a report.

Employees are required to participate in prevention of workplace harassment training every three years. Management officials and sponsors of non-employees are responsible for ensuring that all individuals associated with the Institution are made aware of this policy, and maintaining a work environment that is free of harassment.

**EEO RIGHTS AND RESPONSIBILITIES**

If an applicant for employment or other individual associated with the Smithsonian believes that he or she has been discriminated against because of race, color, religion, sex (including pregnancy), national origin, age, and/or disability or retaliated against for participating in protected EEO activity, he or she must contact the Office of Equal Employment and Minority Affairs (OEEMA) within forty-five (45) calendar days of the alleged discrimination or the effective date of an allegedly discriminatory personnel action in order to initiate the federal sector EEO process.

Individuals are encouraged to try to resolve the complaint with first- and/or second-level supervisors or other appropriate management personnel. Supervisors, sponsors, and managers should make reasonable attempts to address the individual's concerns.

For assistance with additional issues or concerns, please contact the Ombudsman, a union representative, an Employee Assistance Program counselor, or Labor and Employee Relations in the Office of Human Resources. However, contact with these resources does not initiate the *federal sector EEO process.*

**REASONABLE ACCOMMODATION OF INDIVIDUALS WITH DISABILITIES**

The Smithsonian Institution is committed to the employment and advancement of qualified individuals with disabilities who, with or without reasonable accommodation, can perform the essential duties of a job. Reasonable accommodations that do not impose undue hardship will be provided to qualified individuals with disabilities.

In general, individuals are not required to inform management of their disabilities if they do not want an accommodation. However, individuals must inform their supervisors or the Office of Equal Employment and Minority Affairs of their need for accommodation, when necessary. They are also responsible for obtaining medical verification of their disabilities upon request. Applicants for employment may request a reasonable accommodation from the Human Resources Specialist, the Disability Program Manager, or other individuals involved in the hiring process.

**ADDITIONAL INFORMATION**

Detailed information on these topics and signed policy statements are available on OEEMA's website or by contacting the office. The information contained on this poster is available in alternate formats, including large print, Braille, and computer file.

*Office of Equal Employment and Minority Affairs*

Telephone: (202) 633-6430
TTY: (202) 633-6432
Intranet site: http://prism.si.edu/oeema

Location:
600 Maryland Ave., S.W., Suite 2091, MRC 521
Washington, DC 20013-7012

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TOMMY J. WINSTON,                          )
                                           )
                                           )
                    PLAINTIFF              )
                                           )
         v.                                )      Civ. No.  07-1411 (RWR)
                                           )
CRISTIÁN SAMPER                            )
Acting Secretary, Smithsonian Institution  )
                                           )
                    DEFENDANT              )

* * * * * * * * * *

DECLARATION OF MIGNON ERIXON-STANFORD

I, Mignon Erixon-Stanford, do state:

1.       I am the Smithsonian Institution Internet Coordinator.

2.       I have been responsible for the oversight of the Smithsonian intranet, Prism, an internal Smithsonian website, from its inception in 1995.

3.       I was responsible for uploading and revising content on Prism provided by the Office of Equal Employment and Minority Affairs (OEEMA) until 2006, when OEEMA took over responsibility for making changes to its content.  OEEMA was one of the first offices to provide content for Prism.  The OEEMA webpage has been available since 1995 from the top level of the Prism website (prism.si.edu).

4.       I have reviewed archival copies of content posted on the Prism webpage for OEEMA for each month for the period January 2005 through March 2006.

5.       The OEEMA webpage has always contained language explaining the time limits for filing an EEO complaint.  For each month for which I reviewed archival copies, the OEEMA webpage contained the following provisions explaining the time limits for filing an EEO complaint:

    4.  When can I initiate an EEO discrimination complaint?

    You must contact an EEO Counselor or OEEMA within forty-five (45) calendar days of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action.

\* \* \*

9. What are my responsibilities?

You are responsible for:

- reading and understanding the provisions of this pamphlet;
- contacting an EEO official (OEEMA/Counselor) within 45 calendar days of the alleged discriminatory event or the effective date of the action;
- stating the basis(e), issue(s), and requested remedy or remedies; and
- advising OEEMA of the identity, address and telephone number of representative

6.     The OEEMA webpage has always contained the phone number and address of OEEMA.

Pursuant to 28 U.S.C. sec. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dec. 10, 2007
Date

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TOMMY J. WINSTON,                        )
                                         )
                                         )
              PLAINTIFF                   )
                                         )
       v.                                 )      Civ. No. 07-1411 (RWR )
                                         )
CRISTIÁN SAMPER                          )
Acting Secretary, Smithsonian Institution )
                                         )
              DEFENDANT                    )

* * * * * * * * * *

DECLARATION OF GEORGE C. VAN DYKE

I, George C. Van Dyke, do state:

1.      I am the Director of the Smithsonian's Office of Information Technology
Operations. This office is within the Smithsonian's Office of the Chief Information
Officer. I have held this position for approximately seven years.

2.      I have reviewed records relating to the creation of Mr. Tommy Winston's network
accounts on the Smithsonian network. The records I reviewed indicate that the
Smithsonian's National Air and Space Museum created a network account for Mr.
Winston on the Novell E-Directory network system in October 2003. The records I
reviewed indicate that Mr. Winston had an E-Directory network account until April 2005
when the Office of the Chief Information Officer migrated his account to the Microsoft
Active Directory network system. The records I reviewed indicate that Mr. Winston has
had a Microsoft Active Directory network account since April 2005.

3.      Smithsonian users with a network account, whether on the Novell E-Directory
network system or the Microsoft Active Directory network system, have access to Prism,
the Smithsonian's internal website.

Pursuant to 28 U.S.C. sec. 1746, I declare under penalty of perjury that the foregoing is
true and correct.

_____          ____14 Dec 07____
                                      Date