# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

TOMMY J. WINSTON         )
         )
         Plaintiff,   )
         )
         v.        )
         )   Civil Action No. 07-1411 (RWR)
CRISTIÁN SAMPER,      )
Acting Secretary        )
Smithsonian Institution    )
         )
         Defendant**.**   )
         )
_____ )

## PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY AND RULE 56(F) MOTION IN FURTHER OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

      Plaintiff Tommy J. Winston, by and through his undersigned counsel, respectfully

moves this Court for leave to file a Sur-Reply to Defendant's Motion to Dismiss, now styled

as a Motion to Dismiss and In the Alternative for Summary Judgment ("Defendant's

Motion").[1]  Plaintiff's proposed Sur-Reply is attached hereto as Exhibit A.  In the event the

Court converts Defendant's Motion to Dismiss as one of Summary Judgment, Plaintiff

additionally moves the Court for an Order continuing consideration of Defendant's Motion

for Summary Judgment until sufficient discovery has been conducted and submits a Rule

56(f) affidavit in support thereof, attached hereto as Exhibit B.

---

[1] The Defendant in its Reply Memorandum, for the first time formally requests that this Court convert its Motion to Dismiss into "one for Dismissal and in the alternative for Summary Judgment."  See Defendant's Reply at 1, n.1.

## I.    Leave to File a Sur-Reply

### A.    Legal Standard

The decision to grant or deny leave to file a sur-reply is committed to the sound discretion of the court. Am. Forest & Paper Ass'n, Inc. v. Envtl. Prot. Agency, 1996 WL 509601, at *3 (D.D.C. Sept.4, 1996). If the movant raises arguments for the first time in its reply to the non-movant's opposition, the court will either ignore those arguments in resolving the motion or provide the non-movant an opportunity to respond to those arguments by granting leave to file a sur-reply. Ben-Kotel v. Howard Univ., 319 F.3d 532, 536 (D.C.Cir.2003); Natural Res. Def. Council, Inc. v. Envtl. Prot. Agency, 25 F.3d 1063, 1072 n. 4 (D.C.Cir.1994); Pa. Elec. Co. v. Fed. Energy Regulatory Comm'n, 11 F.3d 207, 209 (D.C.Cir.1993); see also, Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 195 (D.C.Cir.1992) (acknowledging that consideration of arguments raised for the first time in a reply would be "manifestly unfair" to the respondent); Corson & Gruman Co. v. Nat'l Labor Relations Bd., 899 F.2d 47, 50 n. 4 (D.C.Cir.1990) (requiring parties to raise all of their arguments in their opening briefs "to prevent sandbagging").

### B.    Argument

Plaintiff respectfully asserts that the need to file a Sur-Reply and Rule 56(f) Motion is due to Defendant's confounding flip-flopping regarding what standard it wishes this Court to apply in resolving its Motion.  Indeed, Plaintiff is perplexed as to whether Defendant is moving for summary judgment or for dismissal (or for both), and is confused as to what legal standard Defendant asserts is applicable as to each count of the Amended Complaint. Defendant initially styled their original Motion exclusively as a "Motion to Dismiss" without any indication that Defendant sought summary judgment in the alternative.  In its original

2

Motion, specifically in the section entitled, "Plaintiff Can Not Establish a Prima Facie Case of Retaliation," however, Defendant repeatedly uses the term "summary judgment" and, in fact, cites several cases[2] that articulate the standard for summary judgment.  For example, Defendant wrote,

- "In order to survive summary judgment in a Title VII case, a plaintiff must produce some evidence to show that the Agency intentionally retaliated against him."  Defendant's Motion to Dismiss at 10.

- "As demonstrated below, applying the governing procedural and substantive law to the undisputed facts of this case yields the conclusion that summary judgment should be entered against Plaintiff's retaliation claims."  Defendant's Motion to Dismiss at 10.

- "The plaintiff must produce more than a scintilla of evidence to avoid summary judgment."  Defendant's Motion to Dismiss at 14.

      In Plaintiff's Opposition to Defendant's Motion to Dismiss, Plaintiff took an educated "guess" as to the applicable legal standards.  In Plaintiff's Opposition, Plaintiff wrote,

> The Agency's Motion is improperly styled as only a Motion to Dismiss because while the Agency appears to move for dismissal under to Fed. R. Civ. P. 12(b)(1) with respect to Count I (Discrimination Based on Race and Color) and Fed. R. Civ. P. 12(b)(6) with respect to Count III (Hostile Environment), *the Agency argues that summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate with respect to Count II (Retaliation) of the First Amended Complaint.*  Accordingly, each of the applicable legal standards is discussed below.

Plaintiff's Opposition to Motion to Dismiss at 16 (emphasis added).

---

[2] Defendant cites  Carpenter v. Fed. Nat'l Mortgage Ass'n, 165 F.3d 69, 72 (D.C. Cir. 1999), Hastie v. Henderson, 121 F. Supp.2d, 72, 77 (D.D.C. 2000) aff'd, No. 00-5423, 2001 WL 793715 (D.C. Cir. 2001) and Freedman v. MCI Telecomm. Corp., 255 F.3d 840, 844 (D.C. 2001).  Defendant's Motion to Dismiss at 13-14.

In Defendant's Reply, styled as its "Reply Memorandum in Support of Motion to Dismiss and in the Alternative for Summary Judgment, Defendant wrote,

> Defendant moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) with respect to plaintiff's reassignment claim (Count IA); however, with respect to Plaintiff's discrimination, retaliation and hostile work environment claims, defendant moves pursuant to Fed. R. Civ. P. 12(b)(6). *Defendant in is accord and this Court may convert Defendant's Motion to Dismiss into one for Dismissal and in the alternative for Summary Judgment.* See Plaintiff's Opp., p. 3; and Fed. R. Civ. P. 12(b)(6). Hence, defendant's Statement of Factual and Procedural History in its initial brief shall now be substituted as its Statement of Material Facts Not In Dispute, pursuant to LcvR 7(h).

Defendant's Reply at 1, n.1 (emphasis added).

According to Defendant, with respect to Plaintiff's reassignment claim, which is Count I of the Complaint (there is no Count IA), Defendant moves for dismissal under 12(b)(1), but does not appear to move for summary judgment in the alternative. Rule 12(b)(1) is a defense that the court lacks "jurisdiction over the subject matter." Confusingly, Defendant then argues that the "45-day period is not jurisdictional," Reply at 10, and that the Court should reject Plaintiff's request for "discovery and an evidentiary hearing 'to determine the existence of [the Court's] subject matter jurisdiction' because [a]s noted above, the exhaustion issue is not jurisdictional." And even though Defendant appears in footnote 1 of its Reply to request summary judgment in the alternative for all other counts *except maybe for Count I*, Defendant chastises Plaintiff for not providing an affidavit pursuant to Rule 56(f) to "explain the types of facts he seeks to discover or how any such facts might impact the issues before the Court." Unless the undersigned is mistaken, Rule 56(f) applies to Motions brought under Rule 56 or summary judgment, therefore, there was no reason for Plaintiff to submit a Rule 56(f) affidavit unless Defendant formally *moved for summary judgment* with respect to Count I. Plaintiff remains confused as to whether Defendant is indeed moving for

summary judgment in the alternative with respect to Count I, but is nonetheless providing a Rule 56(f) affidavit that reflects the need for discovery with respect to Count I nonetheless.

As stated above, with respect to Count II (Retaliation) of the Amended Complaint, throughout the section entitled "Plaintiff Can Not Establish a Prima Facie Case of Retaliation" in Defendant's original Motion to Dismiss, Defendant uses the term "summary judgment" and cites case law in support of this legal standard. However, in its Reply, under the section "PLAINTIFF HAS NOT STATED A RETALIATION CLAIM," Defendant wrote, "Plaintiff erroneously characterizes defendant's motion to dismiss as a motion for summary judgment." Defendant's Reply at 12. Defendant is either being purposefully imprecise and utilizing a "throw everything at the wall and see what sticks" strategy, or is simply being careless. Either way, Plaintiff is prejudiced by having to continually guess (and then criticized for guessing incorrectly) under what legal standard (and for which specific count of the Amended Complaint) Defendant is moving under.

In addition to the indecision and confusion over the proper legal standard(s) under which Defendant is proceeding, Defendant raises new arguments in its Reply Memorandum in Support of Motion to Dismiss and in the Alternative for Summary Judgment (the "Reply") that Plaintiff was unable to anticipate, and therefore could not address, in its Opposition. Specifically, Defendant asserts, for the first time, that:

1.      Plaintiff waived any argument that he lacked notice under Section 1614.105(a)(2).[3]

Defendant asserts that because Plaintiff allegedly "failed to raise any argument of insufficient

---

[3] Section 1614.105(a)(2) mandates that the 45-day time limit for contacting an EEO Counselor is extended when "the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control

notice before the Commission's appellate body, the Office of Federal Operations (OFO), during the briefing on his administrative appeal. As discussed in the attached Sur-Reply, Plaintiff implicitly raised the issue of equity at the administrative level. However, more importantly, it is well-settled that Plaintiff is entitled to a trial *de novo* in District Court regardless of whether Plaintiff filed an appeal with the EEOC's Office of Federal Operaations. The Supreme Court in <u>Chandler v. Roudebush</u>, 425 U.S. 840 (1976), "eliminated any confusion as to whether or not federal employee plaintiffs had a right to a trial *de novo* in cases brought under § 2000e-16(c).[4] Moreover, this court has decided this issue and held that Plaintiff's entitlement to *de novo* review means that the court conduct "a fresh, independent determination of the matter at stake; [and that] the court's inquiry is not limited to or constricted by the administrative record, nor is any deference due the agency's conclusion." <u>Herron v. Veneman</u>, 305 F.Supp.2d 64, 77 (D.D.C. 2004).

2.    Plaintiff had constructive notice of the 45-day deadline. Defendant submits declarations from Charlene Tyson, Mignon Erixon-Stanford and George C. Van Dyke to buttress its claims that the Agency notification was provided and reasonably geared to inform Plaintiff of the time limits. As discussed further in the attached Sur-Reply, Defendant's claim that it posted an EEO poster on a bulletin board in a common area where Plaintiff worked *prior to the alleged discriminatory reassignment* to Suitland is directly contracted by Edward Tyson's declaration, attached hereto as Exhibit C, wherein Mr. Tyson declares he never saw the EEO poster that Charlene Tyson (no relation) discusses in her Declaration.

---

from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission."

[4] It is undisputed that Plaintiff is proceeding under 42 U.S.C. § 2000e-16(c) which provides, "an employee…if aggrieved by the final disposition of his complaint… may file a civil action as provided in section 2000e–5 of this title, [against] the head of the department, agency, or unit, as appropriate…"

Notably, Mr. Tyson has spent the 21 out of his 24-year career in the same building and walked through the same glass doors into the area that Defendant asserts contained an EEO poster. Finally, Defendant's argues for the first time that its posting of the EEO notice on Defendant's intranet site was legal sufficient to establish Plaintiff's constructive notice of the 45-day period. As discussed in the attached Sur-Reply, this argument has been expressly rejected by a federal court as legally insufficient.

II.    **Motion in Further Opposition to Defendant's Motion for Summary Judgment**

Because Defendant appears to now move for summary judgment in the alternative (but for what specific counts Defendant is unsure), Plaintiff moves this Court for an Order continuing consideration of Defendant's Motion for Summary Judgment until sufficient discovery has been conducted. Plaintiff's counsel submits a Rule 56(f) affidavit, attached hereto as Exhibit B, in support thereof outlining the specific (to the best of the undersigned's ability given the discussion above) of the discovery that is needed before Plaintiff can adequately respond to Defendant's Motion for Summary Judgment.

For the foregoing reasons, Plaintiff respectfully requests that the Court include the attached Sur-Reply in its consideration of Defendant's Motion to Dismiss and in the Alternative for Summary Judgment. In the unlikely event that the Court does not reject Defendant's Motion outright and converts it to one for summary judgment, Plaintiff respectfully requests that the Court continue its consideration until sufficient discovery has been conducted as discussed in the attached Sur-Reply and Rule 56(f) Motion in Further Opposition to Defendant's Motion for Summary Judgment and in the Rule 56(f) affidavit submitted by counsel.

Respectfully Submitted,


_____/s/ *Sundeep Hora*_____
Sundeep Hora (D.C. Bar No. 472944)
ALDERMAN, DEVORSETZ & HORA PLLC
1025 Connecticut Ave., NW
Suite 615
Washington, D.C. 20036
Tel. 202.969.8220
Fax 202.969.8224
E-mail: shora@adhlawfirm.com

**COUNSEL FOR PLAINTIFF**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

TOMMY J. WINSTON                          )
                                          )
                        Plaintiff,        )
                                          )
            v.                            )
                                          )    Civil Action No. 07-1411 (RWR)
CRISTIÁN SAMPER,                          )
Acting Secretary                          )
Smithsonian Institution                   )
                                          )
                        Defendant.        )
                                          )
_____  )

## PLAINTIFF'S SUR-REPLY AND RULE 56(F) MOTION IN FURTHER OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Tommy J. Winston, by and through his undersigned counsel, submits this Sur-Reply to Defendant's Motion, initially styled as a Motion to Dismiss, and now styled as a "Motion to Dismiss and In the Alternative for Summary Judgment" ("Defendant's Motion").[1]  Additionally, in the event the Court converts Defendant's Motion to Dismiss to a Motion for Summary Judgment, Plaintiff respectfully moves the Court for an Order staying consideration of Defendant's Motion for Summary Judgment until sufficient discovery has been conducted.  In support of this Motion, the undersigned has executed a Rule 56(f) affidavit, attached as Exhibit B to Plaintiff's Motion for Leave to a File Sur-Reply and Rule 56(f) Motion in Further Opposition to Defendant's Motion for Summary Judgment (hereinafter, "Plaintiff's Motion for Leave").

---

[1] The Agency, in its Reply Memorandum, and for the first time in this case, requests that this Court convert its Motion to Dismiss into "one for Dismissal and in the alternative for Summary Judgment."  *See* Defendant's Reply at 1, n.1.

I.        **Plaintiff Can Assert that the Court Should Extend the 45-day Deadline**

A.        **Plaintiff Has Not Waived Any Argument that He Lacked Notice**

In its Reply to Plaintiff's Oppositon, Defendant argues for the first time that Plaintiff

waived any argument that he lacked notice under 5 CFR § 1614.105(a)(2)[2] because Plaintiff

allegedly, "failed to raise any argument of insufficient notice before the Commission's

appellate body, the Office of Federal Operations (OFO), during the briefing on his

administrative appeal." Reply at 6.  In support of this argument, Defendant incorrectly asserts

that this issue was not raised at the administrative level, mischaracterizes OFO's function in

reviewing Agency decisions, and neglects to point out that Plaintiff has the right to seek

redress in the District Court under a *de novo* standard of review.

Plaintiff raised the issue of equity at the administrative level.  Specifically, Plaintiff

claimed, in the alternative, that there were "equitable circumstances that mitigate untimely

contact" and that he was purposefully kept unaware of the allegations that were made against

him that triggered his reassignment and loss of duties.  *See* Complainant's Brief in Support of

the Appeal at 17, attached as Exhibit 2 to Defendant's Reply Brief.  Implicit in Plaintiff's

argument that the Agency purposefully kept him in the dark regarding the circumstances

surrounding his reassignment (that the reassignment was allegedly not a temporary action) is

that the Agency failed to inform him of the 45-day limitation contained in 1614.105(a)(2).

Had the Agency notified employees of the 45-day limitation, Mr. Winston could have

_____

[2] 1614.105(a)(2) mandates that the 45-day time limit for contacting an EEO Counselor is
extended when, "the individual shows that he or she was not notified of the time limits and
was not otherwise aware of them, that he or she did not know and reasonably should not
have known that the discriminatory matter or personnel action occurred, that despite due
diligence he or she was prevented by circumstances beyond his or her control from contacting
the counselor within the time limits, or for other reasons considered sufficient by the agency
or the Commission."

contacted OEEMA after his reassignment to Suitland or during the several weeks between

issuance of the Proposal to Suspend on February 7, 2006 and Nancy Bechtol's decision on

the Proposal on April 3, 2006.

Even if Plaintiff had not raised this notice argument in its brief to the OFO,

Defendant's argument is still without merit.  First, Defendant fails to cite a single statute,

regulation, case, or EEOC guidance that supports its argument that only those issues (as

opposed to claims) raised before the OFO may be raised before U.S. District Court.

Because Plaintiff is entitle to *de novo* consideration in District Court under Title VII,

after receiving an agency's final action, a Complainant who is dissatisfied with the order has

two options: "they may either file suit or appeal to the EEOC."  Scott v. Johanns, 409 F.3d

466, 468 (D.C. Cir. 2005).  If a complainant files an appeal, the EEOC's Office of Federal

Operations ("OFO") "reviews the record, supplements it if necessary and then issues a

written decision."  5 CFR § 1614.404.  "Like the employing agency's final action, the OFO's

decision amounts to a final disposition, triggering the right to sue [in federal court]."  Scott,

409 F.3d at 468.  Thus, a complainant, like Mr. Winston, has two separate opportunities to

pursue his case in federal court, either after the agency issues a final decision or after

appealing to OFO.

Only two types of civil actions arise from Title VII's federal sector administrative

process:  (1) "Enforcement" cases - complainants who prevail in the administrative process

who sue to enforce the final administrative disposition; or (2) "Challenge" cases -

complainant is aggrieved by the final disposition of his complaint or by a failure to take final

action on his complaint.  Id. at 469 (citing 42 U.S.C. § 2000e-16(c))[3].  In the first situation,

the "enforcement" case, the court "reviews neither the discrimination finding nor the remedy

imposed, examining instead only whether the employing agency has complied with the

administrative disposition."  Id.  With respect to the second situation wherein the plaintiff is

challenging the final agency action (as in the instant case), plaintiffs are entitled to a "full

trial de novo,[4] allowing a district court to determine damages and liability on its own."

Herron v. Veneman, 305 F.Supp.2d 64, (D.D.C. 2004). see also Scott, 409 F.3d at 469.  The

Supreme Court in Chandler v. Roudebush, 425 U.S. 840 (1976), "eliminated any confusion

as to whether or not federal employee plaintiffs had a right to a trial de novo in cases brought

under § 2000e-16(c).  Heron, 305 F.Supp.2d at 75; see also, Cocciardi v. Russo, 721 F.Supp.

735, 738 (E.D. Pa. 1989) (finding that a plaintiff challenging a final agency decision must be

granted "no more and no less than a 'trial de novo.'")

Defendant's assertion that Plaintiff was required to raise the issue regarding lack of

notice at the administrative level before raising it in district court lacks merit.  Plaintiff's

entitlement to de novo review means here, "as it ordinarily does, a fresh, independent

determination of the matter at stake; the court's inquiry is not limited to or constricted by the

administrative record, nor is any deference due the agency's conclusion." Heron, 305

F.Supp.2d at 77; see also, Kremer v. Chemical Const. Corp., 456 U.S. 461, 470 n.7 (1982)

---

[3] Plaintiff is undisputedly proceeding uder 42 U.S.C. § 2000e-16(c) which states, "an
employee…if aggrieved by the final disposition of his complaint… may file a civil action as
provided in section 2000e–5 of this title, [against] the head of the department, agency, or
unit, as appropriate…"
[4] "De novo" is defined as a "new trial on the entire case – that is, on both questions of fact
and issues of law – conducted as if there had been no trial in the first instance." Herron, 305
F. Supp.2d at 77 (citing Blacks Law Dictionary (7th Ed. West 1999)).

(holding that "it is settled that decisions by the EEOC do not preclude a trial *de novo* in federal court).

Accordingly, the issue of whether Plaintiff had actual or constructive notice of the 45-day time limit to contact the EEO counselor is properly before this Court to consider in reviewing Defendant's Motion.

> **B.    Plaintiff Did Not Have Actual or Constructive Notice of the 45-day Time Limit to Contact the EEO Counselor**

Defendant submits a declaration from Charlene Tyson, to buttress its claims that the Agency posted an EEO poster on a bulletin board in a common area in the National Air and Space Museum (NASM) "*where plaintiff's office was located prior to his reassignment to Suitland*." Defendant's Reply at 9 (emphasis added). Immediately after David Samec informed Plaintiff of Kendra Gastright's allegations of threatened violence, Plaintiff was moved from his office at NASM across the street to the National Museum of the American Indian (NMAI). He moved across the street on a Friday, January 20, 2006. The following Monday, Samec issued the January 23, 2006 memorandum reassigning Winston to Suitland as of January 24, 2006. Therefore, during the time period that it mattered most to Plaintiff, while he was made to leave his office in the NASM and then reassigned to Suitland, Defendant fails to provide a shred of evidence that there were any EEO posters or relevant materials conspicuously displayed in the NMAI or in Suitland. Upon information and belief, Defendant approached several employees at the NMAI and in Suitland to sign declarations verifying that such EEO posters were displayed, but no one could or would corroborate Defendant's story, which may explain why Defendant failed to include declarations relevant to the NMAI and Suitland in its Reply.

Even the declaration submitted by Charlene Tyson is suspect.  Mr. Winston stated in his declaration that he did not have notice of the 45-day time limit while his office was located in the East Mall Zone of NASM.  Winston Decl. ¶¶ 1,3.  This fact is corroborated by Edward Tyson (no relation to Charlene Tyson), who has spent 21 out of his 24-year career at the Smithsonian in the East Mall Zone at the NASM.  Tyson Declaration, attached to the Motion for Leave as Exhibit C.  Mr. Tyson declares under penalty of perjury, "During the time period January 2005 through January 2006, almost each and every day, I walked through the same glass entrance doors to OFMR and past the bulletin board that Ms. Tyson discusses in her Declaration.  *During this time, I never saw the EEO poster that Ms. Tyson discussed in her Declaration, displayed on the bulletin board or anywhere else in the vicinity or even in OFMR.*  Id. at ¶3 (emphasis added).  Defendant's citation to Foster v. Gonzales, No. 06-1288, 2007 U.S. Dis. LEXIS 46591 (June 28, 2007) is therefore irrelevant in that here there is a material dispute as to whether such posters were indeed displayed as Defendant claims.

Finally, Defendant desperately attempts to argue that Plaintiff had constructive notice because Defendant, "posted an EEO notice on the Smithsonian's intranet site on OEEMA's webpage," Defendant's Reply at 8-10, and attaches Declarations from Mignon Erixon-Stanford and George C. Van Dyke in support of this assertion.  In Schmidt v. Mercy Hosp. of Pittsburgh, No. 05-1446, 2007 WL 2683826,at *3-4 (W.D.Pa. Sept. 7, 2007), Defendant's argument (within the context of the Family Medical Leave Act) was expressly rejected.  In Schmidt, the defendant argued that Plaintiff's FMLA interference claim failed, *inter alia*, because, "Defendant provided Plaintiff with notice of her FMLA rights through its posting of its FMLA policy in the Human Resources Department and Defendant's intranet site."  The

court found that because Plaintiff offered evidence that she was not put on notice or aware of her FMLA rights, "material issues of fact exist as to whether Defendant provided Plaintiff with sufficient individualized notice of her FMLA rights." Id. (citing Conoshenti v. Public Service Elec. & Gas Co., 364 F.3d 135, 142 (3d Cir. 2004); Reifer v. Colonial Intermediate Unit 20, 462 F.Supp.2d 621, 637 (M.D.Pa.2006) ("[t]he burden is on the employer to ensure that the employee is aware of her rights)).

In sum, Plaintiff's assertions regarding lack of notice are properly before this court and Defendant has failed to establish, as a matter of law or otherwise, that Plaintiff had actual or constructive notice.

## II.    If the Court Does Not Deny Defendant's Motion for Summary Judgment Outright, the Court Should Grant a Continuance So that Discovery May be Had on Key Issues.

Summary judgment is premature and should not be granted in the absence of discovery on the key issues in this case. See Oksanen v. Page Memorial Hosp., 945 F.2d 696, 708 (4th Cir. 1991) (holding that a case becomes ripe for summary judgment after adequate discovery on key issues). It is well-settled that, "summary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n. 5 (1986)). Assuming that Defendant is indeed moving for Summary Judgment in the alternative, Plaintiff asserts that at this early stage of the litigation, the complete lack of discovery renders Plaintiff unable to adequately address Defendant's assertions.

Defendant's entire case for dismissal of Count I of the Complaint boils down to its assertion that its use of the term "Effective" in the January 23, 2006 memorandum wherein

Dave Samec, Plaintiff's former supervisor, wrote, "Effective January 24, 2006, you are being reassigned to Suitland Zone as Facility Management Specialist, GS-1640." Defendant's Motion at 7. Plaintiff maintains that the only plausible justification, indeed the only justification ever communicated to Plaintiff, was that he was being temporarily transferred to Suitland while Samec conducted an investigation into Ms. Kendra Gastright's allegations that Plaintiff threatened her with violence. Noticeably absent from Defendant's Motion is an affidavit from Mr. Samec or Nancy Bechtol (Plaintiff's second-level supervisor and the Deciding Official on Samec's Proposal to Suspend), testifying as to what their intentions were in reassigning Mr. Winston from the East Mall Zone to Suitland.

Exhibit 3 to Defendant's Reply Brief is Plaintiff's "Reply to Appellee's Brief in Oppositon to Appeal," submitted to OFO, in which Plaintiff cited the EEO Counselor's Report summarizing the only two interviews she conducted as part of her investigation: those of Dave Samec and Nancy Bechtol. In the summary of interviews in the July 18, 2006 EEO Counseling Report, the Counselor wrote:

> Mr. Samec stated that, shortly after Ms. Gastright submitted a written complaint dated January 14, 2006,[5] he contacted OFEO's Employee and Labor Relations Department for guidance. He stated that he separated the parties **initially** by **relocating Mr. Winston** to the National Museum of the American Indian (NMAI) and **then reassigning him to the Suitland Zone**. He stated that Ms. Gastright was not relocated due to her job responsibilities as the building manager assigned to [the National Air and Space Museum]. **Mr. Samec stated that he issued the "Proposal to Suspend" based on the information he gathered during his inquiry into the mater.**

Exhibit 3 to Defendant's Reply Brief at 2-3 (emphasis added). Plaintiff cites this excerpt in further support of its argument that further discovery is warranted in this case in order to establish the true motivation behind Mr. Winston's initial reassignment to Suitland in

---

[5] Ms. Gastright's January 14, 2006 written complaint has never been produced by Defendant, which claims that it does not exist.

8

January 2006.  According to the EEO Counselor's report summarizing her interview with Mr. Samec, he chose to separate Mr. Winston and not Ms. Gastright because of Ms. Gastright's job responsibilities at the National Air and Space Museum.  More importantly, after Ms. Gastright submitted a written complaint, he contacted the OFEO's Employee and Labor Relations Department for guidance.  This prompted him to, "separate[] the parties initially by relocating Mr. Winston to the [NMAI] and *then reassigning him to the Suitland Zone*."  (emphasis added).

Mr. Samec's statement to the EEO counselor highlights the need for discovery on key issues.  If Plaintiff was able to take discovery (such as David Samec and Nancy Bechtol's deposition), Plaintiff could potentially establish that Defendant's non-discriminatory justification for reassigning him from his position in the EMZ to Suitland was a pretext for discrimination.  The other issues that need to be addressed through discovery are contained in the undersigned's Rule 56(f) affidavit, attached to the Motion for Leave as Exhibit B.

In sum, if the Court does not reject Defendant's Motion for Summary Judgment outright, Plaintiff respectfully asserts that a grant summary judgment would be premature given that Plaintiff has not had an opportunity to conduct <u>any</u> discovery in this case.  Accordingly, Plaintiff requests that the Court stay its summary judgment determination to permit Plaitniff the opportunity to conduct discovery, or such other relief as ordered by the Court.

Respectfully Submitted,


_____/s/ Sundeep Hora_____
Sundeep Hora (D.C. Bar No. 472944)
ALDERMAN, DEVORSETZ & HORA PLLC
1025 Connecticut Ave., NW
Suite 615
Washington, D.C. 20036
Tel. 202.969.8220
Fax 202.969.8224
E-mail: shora@adhlawfirm.com

**COUNSEL FOR PLAINTIFF**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

TOMMY J. WINSTON            )
                                   )
                  Plaintiff,  )
                                   )
              v.              )
                                   )   Civil Action No. 07-1411 (RWR)
CRISTIÁN SAMPER,        )
Acting Secretary           )
Smithsonian Institution     )
                                   )
                 Defendant**.**  )
                                   )
_____)

## <u>RULE 56(F) AFFIDAVIT OF SUNDEEP HORA, ESQ.</u>

    I, Sundeep Hora, having been duly sworn, state as follows:

1.    I am over eighteen years of age, am counsel of record for Plaintiff Tommy J.

Winston in the above captioned case, and am competent to be a witness.

2.    This Affidavit is submitted pursuant to Rule 56(f) of the Federal Rules of

Civil Procedure.

3.    Because Plaintiff has not had an opportunity to conduct discovery in this case,

Plaintiff is unable at this time to respond to the Defendant's Motion to Dismiss or, in

the Alternative, for Summary Judgment ("Defendant's Motion").

4.    Specifically, without the benefit of discovery, Plaintiff does not have a basis

to respond, through affidavits or otherwise, to the allegations contained in

Defendant's Motion including:

        a.  Whether Defendant's articulated justification for suspending Plaintiff for

           seven days is a pretext for unlawful discrimination.

    b.   Whether Defendant's articulated justification for reassigning Plaintiff to Suitland is a pretext for discrimination.

    c.   Whether Plaintiff's initial reassignment to Suitland was a temporary action that became permanent after Nancy Bechtol issued her decision on the Proposal to Suspend issued by David Samec.

    d.   Whether Nancy Bechtol prevented Plaintiff from contacting the EEO counselor within the requisite period by failing to timely issue her decision on the Proposal to Suspend issued by David Samec.

    e.   Whether Nancy Bechtol upheld Maurice Evan's proposal to suspend Plaintiff for seven days out of retaliatory animus.

5.    In order to respond to Defendant's allegations, Plaintiff would like to take the depositions of:

    a.   <u>Kendra Gastright</u>.  Ms. Gastright allegedly charged Plaintiff with threatening her with violence, a charge that that Plaintiff believes resulted in his temporary reassignment to Suitland while David Samec conducted an investigation.  Plaintiff believes that Ms. Gastright has information relevant to Defendant's justification for reassigning him from the East Mall Zone at the National Air and Space Museum to Suitland.

    b.   <u>David Samec</u>.  Mr. Samec was Plaintiff's first-line supervisor at the EMZ. Mr. Samec made the decision to separate him from Ms. Gastright after she made an allegation of violence in the workplace.  Samec also issued the Proposal to Suspend Plaintiff for one day.  Mr. Samec possesses relevant information regarding the basis for reassigning Plaintiff to Suitland and

whether this was a temporary action that became permanent after Nancy Bechtol issued her decision on the Proposal.  Samec can also testify as to the unlawful hostile work environment to which Mr. Winston was subjected to while he was stationed in the EMZ.

c.  <u>Nancy Bechtol</u>.  Ms. Bechtol was Plaintiff's second-line supervisor while he was at the EMZ and remains his second-line supervisor in Plaintiff's current position at the EMZ.  Ms. Bechtol can testify as to the basis for reassigning Plaintiff to Suitland and whether this was a temporary action that became permanent after she issued her decision on the Proposal.  Ms. Bechtol can also testify regarding Plaintiff's discrimination, retaliation and hostile work environment claim as she was the individual who upheld Mr. Maurice Evans proposal to suspend Plaintiff for seven days arising out of Oscar Water's participation in snow removal and Plaintiff's alleged abuse of his Smithsonian issued cell phone. Ms. Becthol, who was named as a discriminator in Plaintiff's first EEO complaint, can testify regarding the issue of pretext with respect to Plaintiff's discrimination and retaliation claims.   Ms. Bechtol was the deciding official in each of the two proposals to suspend Plaintiff. Ms. Bechtol can also testify as to the hostile work environment that Mr. Winston was subjected while he was stationed in the EMZ.

d.  <u>Maurice Evans</u>.  Mr. Evans is Plaintiff's current first line supervisor in the EMZ.  Mr. Evans reports directly to Ms. Bechtol.  Mr. Evans purportedly authored the Proposal to Suspend Plaintiff for seven days arising out of

Oscar Water's participation in snow removal and Plaintiff's alleged abuse of his Smithsonian issued cell phone.  When Mr. Evans handed Plaintiff the Proposal, he stated, "You know you don't have any friends downtown Tommy. I told you that you don't have any friends."  Upon information and belief, Mr. Evans was referring to Nancy Bechtol whose office is downtown and who was the subject of Plaintiff's prior EEO complaint regarding his reassignment.  Mr. Evans can also testify as to the hostile work environment that Mr. Winston has been subjected to upon his relocation to Suitland.

6.     In the event the Court does not deny Defendant's Motion for Summary Judgment outright, Plaintiff requests a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or to make such other order as is just so Plaintiffs can respond to Defendant's assertions.

I solemnly affirm under penalty of perjury and upon person knowledge that contents of this affidavit are true and correct to the best of my knowledge.

FURTHER THE AFFIANT SAYETH NOT.

Dated:  January 9, 2008

_____
Sundeep Hora

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TOMMY J. WINSTON | ) |
| | ) |
| Plaintiff. | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 07-1411 (RWR) |
| CRISTIÁN SAMPER, | ) |
| Acting Secretary | ) |
| Smithsonian Institution | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DECLARATION OF EDWARD TYSON

I. Edward Tyson, do state:

1.     I am the Assistant Building Manager of the National Air and Space

Museum (NASM) with the Smithsonian's Office of Facilities Management and

Reliability (OFMR). I have been employed by the Smithsonian for almost 24 years.

With the exception of approximately three years from 1989 to 1992, my office has

always been located in the East Mall Zone (EMZ) at the NASM.

2.     I have been advised of the contents of Ms. Charlene Tyson's December

11, 2007 Declaration wherein she states:

> During the time period January 2005 through January 2006, an
> EEO Poster was posted at the OFMR office located at NASM on a
> bulletin board just beyond the glass entrance doors to OFMR.
> OFMR employees had to walk through these glass doors and past
> the EEO poster in order to enter the OFMR office and their
> individual offices and workspaces...

3.     During the time period January 2005 to January 2006, almost each and

every day. I walked through the same glass entrance doors to OFMR and past the bulletin

board that Ms. Tyson discusses in her Declaration. During this time, I never saw the

EEO poster that Ms. Tyson discussed in her Declaration, displayed on the bulletin board or anywhere else in the vicinity or even in OFMR.

4.    I have noticed that recently. in the last month or so, three EEO posters have been placed on a single wall near the OFMR break room.


I, Edward Tyson, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information and belief. If called upon to testify, I could and would competently testify to the facts set forth in this Declaration.


December _21_, 2007

EDWARD TYSON