# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
TOMMY J. WINSTON,                )
                                 )
          Plaintiff,             )
                                 )
          v.                     )     Civil Action No. 07-1411 (RWR)
                                 )
G. WAYNE CLOUGH,                 )
                                 )
          Defendant.             )
_____ )

## MEMORANDUM OPINION AND ORDER

Plaintiff Tommy J. Winston, an employee of the Smithsonian Institution ("Smithsonian") filed a three-count complaint against the Secretary of the Smithsonian,[1] seeking damages under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000 et seq., for discrimination based on race and color, for retaliation, and for a hostile work environment. (Am. Compl. ¶¶ 45-53.) The Smithsonian moves under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Winston's amended complaint or for summary judgment. Because Winston failed to exhaust his administrative remedies regarding his duty station transfer, but otherwise amply pled claims of discrimination, retaliation, and a hostile work environment, the Smithsonian's motion will be granted in part and denied in part.

_____

[1] Secretary G. Wayne Clough is substituted as the defendant under Federal Rule of Civil Procedure 29(d).

BACKGROUND

Winston, an African American employee of the Smithsonian, is a Facilities Management Specialist. He began his employment there in 1995. (Am. Compl. ¶¶ 1, 21.) In January 2006, David Samec, Winston's supervisor, informed Winston that a colleague named Kendra Gastright had accused him of threatening her with violence during a meeting that occurred earlier in January. (Id. ¶ 22.) On January 23, 2006, Samec issued a memorandum to Winston reassigning him effective on January 24, 2006 from the East Mall Zone in Washington, D.C. to the Suitland Maryland Zone, a zone that Winston claims Smithsonian employees refer to as the "Black Zone." Winston believed that the reassignment was temporary because the memorandum did not state that the reassignment would be permanent. However, Winston acknowledged receipt of the memorandum and wrote on the bottom, "I do not concur. I feel my right[s] have been violated." (Id. ¶ 24; Def.'s Mem. in Supp. of Mot. for Dismissal ("Def.'s Mem.") Ex. 1.) After Winston relocated on January 24, 2006 to the Suitland Zone, he ceased performing duties related to his position in Washington, D.C. as a facility maintenance manager, and instead performed various functions of decreased responsibility, prestige, and importance. (Am. Compl. ¶ 25.) On February 7, 2006, Samec issued to Winston a proposal to suspend Winston for one day without pay, not for any alleged threats of violence, but for acting "inappropriately

-3-

and unprofessionally" during the January meeting by not complying
with Gastright's request that he cease responding to her
sarcastically and teasing her. Winston alleges that the
memorandum proposing the suspension failed to mention Winston's
equal employment opportunity ("EEO") rights or how he could
appeal the one-day suspension through the EEO process. (<u>Id.</u>
¶¶ 26-27.)

Winston appealed the one-day suspension to a deciding
official named Nancy Bechtol, who reversed the suspension on
April 3, 2006 and instead imposed a "Confirmation of Counseling."
(Am. Compl. ¶ 28.) Bechtol's decision did not address Winston's
reassignment to the Suitland Zone. (<u>Id.</u>) Winston alleges that
the Smithsonian treated him differently than it treated his non-
black colleagues, because Gastright, an Asian woman, was required
only to issue a written apology and was not reassigned or
effectively demoted after she uttered profanity and acted
disrespectfully toward her colleagues. (<u>Id.</u> ¶ 29.) Winston
contacted an EEO counselor on April 27, 2006 regarding his
transfer and Bechtol's action. (<u>Id.</u> ¶ 5; Def.'s Mem. Ex. 4.) He
later filed in June 2006 a formal administrative complaint,
unsuccessfully pressing the same allegations with the agency and
later on appeal to the Equal Employment Opportunity Commission
("EEOC"). (Am. Compl. ¶¶ 6-9; Def.'s Mem. Ex. 5.)

According to Winston, at a weekly managers meeting held the following year, Winston's Suitland supervisor, Maurice Evans, put two other employees, David Sidbury and James Cutler, in charge of snow removal. Sidbury informed Evans that he wanted to place an employee named Oscar Waters on his snow removal team, and Cutler stated that he wanted an employee named James Taylor to be named to his snow removal team. (Am. Compl. ¶¶ 31-32.) Evans instructed Cutler that Taylor could assist him with snow removal, but stated that Waters would not be allowed to participate in snow removal. (<u>Id.</u> ¶ 33.) The following day, contrary to Evans' directive, Sidbury enlisted Waters in snow removal. (<u>Id.</u>) Three weeks later, Evans issued to Winston a proposal to suspend him for seven days without pay for failing to inform Waters that he should not report for snow removal, and for overusing a cellular telephone. (<u>Id.</u> ¶ 36.) In April 2007, Bechtol issued a decision upholding Evans' recommendation to suspend Winston for seven days without pay. Winston served his suspension in May of 2007. According to Winston, several of his co-workers who were outside of his protected class have used their cellular telephones more than Winston used his, and were not disciplined for doing so. (<u>Id.</u> ¶¶ 41-44.)

Winston filed this action on August 3, 2007. The amended complaint alleges three violations of Title VII: discrimination based upon race and color by transferring Winston to the Suitland

Zone in 2006 and suspending him without pay for seven days in 2007 (Count I); retaliation for his having filed his June 2006 formal complaint by suspending him for the seven days in 2007 (Count II); and discriminatory hostile work environment based in part upon the actions complained of in Counts I and II (Count III). (Am. Compl. ¶¶ 45-53.)

The Smithsonian moves to dismiss Winston's amended complaint or for summary judgment, arguing that Winston failed to timely exhaust his administrative remedies for his claim of discrimination based upon reassignment from Washington D.C. to Maryland; failed to rebut in the amended complaint the legitimate non-discriminatory reasons for his suspension; failed to establish a temporal link between his protected activity and the adverse employment action sufficient to support his claim of retaliation; and failed to sufficiently allege a claim of discriminatory hostile work environment because his hostile work environment claim consists of a mere repetition of the same discrete acts that form the basis of his other claims. Winston opposes the Smithsonian's motion, arguing that he timely exhausted his administrative remedies regarding Count I or that the deadline should be tolled because he lacked constructive knowledge of the 45-day deadline; that pretext need not be pled in a complaint; that he has pled evidence of a causal connection between the protected activity and the adverse personnel action

and that the length of time between them was sufficiently short
to infer the causal connection; and that the discrete acts and
the Smithsonian's entire course of conduct that Winston cites
sufficiently support his claim of a hostile work environment that
was so severe or pervasive as to change the terms and conditions
of Winston's employment.[2]

DISCUSSION

A complaint can be dismissed under Federal Rule of Civil
Procedure 12(b)(6) when a plaintiff fails to state a claim upon
which relief can be granted.  Peavey v. Holder, 657 F. Supp. 2d
180, 185 (D.D.C. 2009) (citing Fed. R. Civ. P. 12(b)(6)).  "A
Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a
complaint."  Smith-Thompson v. Dist. of Columbia, 657 F. Supp. 2d
123, 129 (D.D.C. 2009).

> To survive a motion to dismiss, a complaint must
> contain sufficient factual matter, acceptable as true,
> to "state a claim to relief that is plausible on its
> face." . . .  A claim has facial plausibility when the
> plaintiff pleads factual content that allows the court
> to draw the reasonable inference that the defendant is
> liable for the misconduct alleged.

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell
Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007)).  The

---

[2] Winston also moves for leave to file a surreply.  He
argues that the Smithsonian did not raise until its reply its
claim that Winston waived any argument that the deadline for
contacting an EEO counselor should be tolled.  His motion will be
granted but the surreply will be considered only to the extent it
addresses this issue.

complaint must be construed in the light most favorable to the
plaintiff and "the court must assume the truth of all
well-pleaded allegations." Warren v. District of Columbia, 353
F.3d 36, 39 (D.C. Cir. 2004). In deciding a motion brought under
Rule 12(b)(6), a court does not consider matters outside the
pleadings, but a court may consider on a motion to dismiss "the
facts alleged in the complaint, documents attached as exhibits or
incorporated by reference in the complaint," Gustave-Schmidt v.
Chao, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), or "documents 'upon
which the plaintiff's complaint necessarily relies' even if the
document is produced not by the plaintiff in the complaint but by
the defendant in a motion to dismiss," Hinton v. Corr. Corp. of
Am., 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (quoting Parrino v.
FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998)), such as the
memorandum of reassignment attached as Exhibit 1 to the
Smithsonian's motion to dismiss. (See Am. Compl. ¶ 24; Def.'s
Mem. Ex. 1.)

However, "where both parties submit material outside the
pleadings and 'the parties are not taken by surprise or deprived
of a reasonable opportunity to contest facts averred outside the
pleadings and the issues involved are discrete' legal issues, the
court may convert the motion to a motion for summary judgment
'without providing notice or the opportunity for discovery to the
parties.'" Highland Renovation Corp. v. Hanover Insurance Group,

620 F. Supp. 2d 79, 82 (quoting Tunica-Biloxi Tribe of La. v. United States, 577 F. Supp. 2d 382, 405 (D.D.C. 2008) and Smith v. United States, 518 F. Supp. 2d 139, 145, 155 (D.D.C. 2007)).

Summary judgment is appropriately granted when the moving party demonstrates that there is no genuine issue as to any material fact and that moving party is entitled to judgment as a matter of law. Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir. 2009) (citing Fed. R. Civ. P. 56(c) and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). "In considering a motion for summary judgment, [a court is to draw] all 'justifiable inferences' from the evidence . . . in favor of the nonmovant." Cruz-Packer v. Dist. of Columbia, 539 F. Supp. 2d 181, 189 (D.D.C. 2008) (quoting Anderson, 477 U.S. at 255; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court must determine "whether there is a need for trial - - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Citizens for Responsibility and Ethics in Wash. v. Bd. of Governors of the Fed. Reserve, 669 F. Supp. 2d 126, 129 (D.D.C. 2009)(internal quotation omitted).

I.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Smithsonian moves under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction the claim in Count I of

Winston's amended complaint regarding winston's transfer to the
Suitland Zone.  However, "'[m]otions to dismiss for failure to
exhaust administrative remedies are . . . appropriately analyzed
under Rule 12(b)(6)'" for failure to state a claim for which
relief can be granted.  <u>Hairston v. Tapella</u>, 664 F. Supp. 2d 106,
110 (D.D.C. 2009) (quoting <u>Hopkins v. Whipple</u>, 630 F. Supp. 2d
33, 40 (D.D.C. 2009)); <u>see also</u> <u>Arbaugh v. Y & H Corp.</u>, 546 U.S.
500, 516 (2006) ("[W]hen Congress does not rank a statutory
limitation on [the statute's] coverage as jurisdictional, courts
should treat the restriction as non-jurisdictional in
character."); <u>Douglas v. Donovan</u>, 559 F.3d 549, 556 n.4 (D.C.
Cir. 2009) ("[T]he exhaustion requirement [under Title VII]
though mandatory, is not jurisdictional[.]"); <u>Shipman v. Vilsack</u>,
Civil Action No. 09-567 (RWR), 2010 WL 882647, at *2 (D.D.C.
March 12, 2010).  "Moreover, [b]ecause untimely exhaustion of
administrative remedies is an affirmative defense, the defendant
bears the burden of pleading and proving it."  <u>Battle v. Rubin</u>,
121 F. Supp. 2d 4, 7 (D.D.C. 2000) (internal quotation omitted).

     "Before filing a Title VII suit, a federal employee must
timely pursue [his] administrative remedies, following the
requirements set forth in 29 C.F.R. § 1614."  <u>Hines v. Bair</u>,
594 F. Supp. 2d 17, 22 (D.D.C. 2009).  "If a plaintiff believes
that [he] has been unlawfully discriminated against, '[he] must
consult an EEO counselor in an effort to resolve the situation

informally.'" Id. (citing 29 C.F.R. § 1614.105(a)). This
contact with the EEO counselor must occur within 45 days of the
alleged discriminatory incident. Id. (citing 29 C.F.R.
§ 1614.105(a)(1)). If informal counseling fails to resolve the
grievance, the employee then has 15 days from when the employee
receives notice that counseling has ended to file a written
complaint. See Chandler v. Bernanke, 531 F. Supp. 2d 193, 196
(D.D.C. 2008); 29 C.F.R. § 1614.106(b). After filing a written
complaint, the employee may file a civil action once the agency
issues an adverse final decision or 180 days elapse without a
decision, whichever happens first. See 42 U.S.C. § 2000e-16(c).

    The procedural requirements governing a plaintiff's right to
bring a Title VII claim in court are not treated as mere
technicalities, because it is "part and parcel of the
Congressional design to vest in the federal agencies and
officials engaged in hiring and promoting personnel 'primary
responsibility' for maintaining nondiscrimination in employment."
Patterson v. Johnson, 391 F. Supp. 2d 140, 145 (D.D.C. 2006)
(quoting Kizas v. Webster, 707 F.2d 524, 544 (D.C. Cir. 1983)).
That said, Title VII's purpose is remedial in nature, and time
limits are imposed principally to insure that employers receive
notice of complaints and have the ability to resolve the
situation before litigation is filed, which means that the time
limits are "subject to waiver, estoppel, and equitable tolling

'when equity so requires.'"  See <u>Morgan</u>, 536 U.S. at 121 (quoting

<u>Zipes</u>, 455 U.S. at 398).  The equitable power to toll a

limitation period should be exercised in "'carefully

circumscribed instances.'"  <u>Norman v. United States</u>, 467 F.3d

773, 776 (D.C. Cir. 2006) (quoting <u>Smith-Haynie v. Dist. of

Columbia</u>, 155 F.3d 575, 579-80 (D.C. Cir. 1998)); <u>see also</u> <u>Brown

v. American Postal Workers Union</u>, Civil Action No. 09-477 (RWR),

2009 WL 3380317, at *2 (D.D.C. October 19, 2009).

     Count I of Winston's amended complaint alleges that the

Smithsonian unlawfully discriminated against Winston based on his

race in part by transferring him to the Suitland Zone in

January 2006.  (Am. Compl. ¶¶ 45-47.)  The memorandum reassigning

Winston to the Suitland Zone made the reassignment effective as

of January 24, 2006, meaning that the 45-day deadline for

contacting an EEO counselor was March 10, 2006.  (Def.'s Mem. Ex.

1.)  However, Winston did not contact a counselor until April 27,

2006.  (Am. Compl. ¶ 5.)  Winston argues that the effective date

of his transfer to the Suitland Zone occurred on April 3, 2006,

when Bechtol issued her decision reversing the one-day

suspension.  (Pl.'s Opp'n at 20.)  However, a discrete

retaliatory or discriminatory personnel action occurs on the

"effective date of the action," not on the date an internal

appeal of the action concludes.  <u>See</u> 29 C.F.R. § 1614.105(a)(1)

(stating that "[a]n aggrieved person must initiate contact with a

Counselor . . . , in the case of personnel action, within 45 days
of the effective date of the action"); Foster v. Gonzales, 516
F. Supp. 2d 17, 24 (D.D.C. 2007) (rejecting the plaintiff's
arguments that the effective date of a personnel action is the
date of the completion of an internal appellate process and that
internal appeals toll the 45-day limitations period).  Winston's
transfer to the Suitland Zone was not contingent on any aspect of
the internal appellate process; Winston was transferred on
January 24.  Thus, Winston's contact with an EEO counselor on
April 27 regarding his transfer to the Suitland Zone was not
timely.

     Winston, though, argues that the deadline for contacting the
EEO counselor regarding his transfer to the Suitland Zone should
be tolled because he was not notified of the time limits and was
not otherwise aware of them.  "The agency or the Commission shall
extend the 45-day time limit . . . when the individual shows that
he or she was not notified of the time limits and was not
otherwise aware of them[.]"  29 C.F.R. § 1614.105(a)(2) (2005);
see also Norden v. Samper, 544 F. Supp. 2d 43, 46 (D.D.C. 2008)
("A federal claimant is entitled to equitable tolling of the
45-day deadline to contact an EEO counselor if [he] can make a
showing that [he] was unaware of the time limit.") (citing Harris
v. Gonzales, 488 F.3d 442, 445 (D.C. Cir. 2007)).  An employee
arguing such unawareness is not "automatically entitled to an

extension [where] the agency, through posters, employee
handbooks, orientation sessions, etc., made conscientious efforts
to advise its employees of the time limit.'" <u>Norden</u>, 544 F.
Supp. 2d at 46 (quoting <u>Harris</u>, 488 F.3d at 445).  When a
defendant argues that it provided constructive notice of the 45-
day deadline to its employees, a court ordinarily undertakes a
"two-step inquiry: (1) whether notification of the time
requirements was provided, and (2) whether the notification was
reasonably geared to inform the complainant of the time limits."
<u>Harris</u>, 488 F.3d at 445 (internal quotations omitted).[3]

However, the Smithsonian argues that Winston waived or
failed to exhaust any argument regarding lack of actual or
constructive notice by not raising it in his initial EEO
complaint or in his appeal before the EEOC's Office of Federal
Operations ("OFO"), despite being represented by counsel during
those adversarial proceedings.  (Def.'s Reply at 6.)  Generally,
when courts review decisions reached in adversarial

_____

[3] The parties offer dueling affidavits from Smithsonian
employees raising a genuine dispute about both factual prongs.
(<u>See</u> Def.'s Reply, Ex. 12, claiming that a poster detailing the
EEO grievance process was posted in Winston's workplace; <u>cf.</u>
Pl.'s Mot, Ex. 2 ¶ 3, claiming an employee never saw that poster
posted anywhere in that workplace.)  Under other circumstances,
considering these materials outside of the pleadings would
trigger summary judgment analysis, <u>see</u> Fed. R. Civ. P. 12(d), and
the dispute would doom the Smithsonian's motion.  The affidavits
are not reached, however, given the conclusion discussed below
that Winston has waived his argument that he lacked notice of the
45-day time limit.

administrative proceedings,[4] they may expect that the parties
developed the issues below and "the rationale for requiring issue
exhaustion is at its greatest." Sims v. Apfel, 530 U.S. 103, 110
(2000).[5] "'[A]s a general rule . . . courts should not topple
over administrative decisions unless the administrative body not
only has erred, but has erred against objection made at the time
appropriate under its practice.'" Woodford v. Ngo, 548 U.S. 81,
90 (2006) (quoting United States v. L.A. Tucker Truck Lines,
Inc., 344 U.S. 33, 37 (1952)).

Issue exhaustion stems from the common principle that an
objection which is not made in an adversarial administrative
proceeding is waived in a subsequent judicial proceeding. L.A.
Tucker Truck Lines, Inc., 344 U.S. at 37 ("[O]rderly procedure
and good administration require that objections to the
proceedings of an administrative agency be made while it has
opportunity for correction in order to raise issues reviewable by
the courts."). The principle that an argument not raised in

_____

[4] There is no genuine dispute but that the OFO proceedings
were adversarial given that the parties filed opposing briefs
(Def.'s Reply Ex. 10) and both parties were represented by
counsel. See also Nat'l Cas. Co. v. Forge Indus. Staffing, Inc.,
567 F.3d 871, 877 n.1 (7th Cir. 2009) (describing EEOC
proceedings as adversarial); Li-Lan Tsai v. Rockefeller Univ.,
137 F. Supp. 2d 276, 282 (S.D.N.Y. 2001) (stating that "[f]iling
an EEOC charge is an adversarial proceeding").

[5] By contrast, where an administrative proceeding is not
adversarial, "the reasons for a court to require issue exhaustion
are much weaker." Sims, 530 U.S. at 114.

-15-

administrative proceedings is waived in judicial proceedings has
been applied against an agency in a Title VII court action
following EEOC proceedings.  See, e.g., Johnson v. Billington,
404 F. Supp. 2d 157, 162 (D.D.C. 2005) (holding that "when a
complaint has proceeded through administrative channels prior to
arriving at the federal courthouse, and the agency has accepted,
investigated and decided that complaint on its merits without
raising the exhaustion issue, the exhaustion defense may be found
to have been waived").

     Winston argues that he implicitly raised the issue of
constructive notice during his EEOC proceedings (Pl.'s Surreply
at 2), and, citing Herron v. Veneman, 305 F. Supp. 2d 64 (D.D.C.
2004), that he is entitled to raise issues here that were not
raised or decided below because plaintiffs challenging final
agency actions are entitled to a "full trial de novo."  (Pl.'s
Surreply at 3-4.)  Neither argument is persuasive.  First,
Winston did not argue anywhere in either his opening or reply
brief in the appeal[6] that he was not provided notice of the
filing deadlines, and he therefore deprived the EEOC of having a
fair and full opportunity to consider the merits of the issue.
(See Def.'s Reply Ex. 10, Ex. 11.)  Second, Herron does not

_____

     [6] Because those briefs being considered are outside of the
pleadings in this action, the Smithsonian's motion on this issue
will be treated as one for summary judgment.  See Fed. R. Civ. P.
12(d).

discuss or decide whether a plaintiff bringing a claim under Title VII is required to raise issues during administrative proceedings in order to preserve them in a district court action. Instead, <u>Herron</u> held that following a final agency determination of agency liability on a Title VII claim, a plaintiff in a civil action "may not seek a limited de novo review of the remedy only while binding the agency to a previous finding of discrimination" and foreclose relitigation of liability.  <u>Herron</u>, 305 F. Supp. 2d at 76 (emphasis removed).

Whether the inquiry should be framed as one of issue exhaustion or waiver, it is clear that Congress was determined to foster among employing federal agencies full investigation and resolution of discrimination complaints.  <u>See</u> <u>Kizas</u>, 707 F.2d at 544 (noting that Congress directed federal employment discrimination complaints to proceed initially before the agency charged with discrimination because Congress vested in federal agencies and their hiring officials "primary responsibility" for preventing discrimination in employment).  Winston said nothing about lacking notice of the 45-day time limit in his EEO complaint to the Smithsonian.  The Smithsonian ruled that he had failed to abide by the 45-day period, but among all the reasons he raised for his untimeliness on appeal to the EEOC's OFO, none was that he lacked prior notice of the 45-day period.  Not only did he say nothing about it in his opening brief on appeal, and

nothing about it in his reply brief, he said nothing about it
until filing his brief opposing the dismissal motion here over 18
months after his reassignment.  At minimum, simple respect for
Congress's aim and simple fairness to the agency suffice to deem
Winston's argument that he lacked constructive notice of the 45-
day deadline for contacting an EEO counselor regarding his
transfer to Suitland waived at this late date.

On this issue, the material facts are not in dispute and the
Smithsonian is entitled to prevail as a matter of law.
Therefore, the Smithsonian's motion to dismiss Count I as it
applies to Winston's transfer to Suitland for failure to exhaust
administrative remedies, treated as a motion for summary
judgment, will be granted.[7]

II.  FAILURE TO STATE A CLAIM OF DISCRIMINATION OR RETALIATION

The Smithsonian argues that the remainder of Count I and
Count II of Winston's amended complaint should be dismissed
because Winston fails to state a claim of discrimination or
retaliation for which relief can be granted regarding his seven-
day suspension.  (Def.'s Mot. at 1-2; Def.'s Mem. at 12; Def.'s
Reply at 12 n.6.)  According to the Smithsonian, Winston's claims
fail because the Smithsonian articulated legitimate, non-
discriminatory reasons for the suspension - - Winston's failure

_____
[7] Winston's motion for Rule 56(f) discovery will be denied.
None of the discovery sought pertains to the one issue resolved
by summary judgment.

to carry out the instructions of his manager regarding the snow removal, and Winston's excessive use of his Smithsonian-issued cellular telephone.  (Def.'s Mem. at 14.)

The Smithsonian measures Winston's complaint by a pleading burden that the complaint does not carry.  It is true that *proof* of a discrimination or retaliation claim is governed by the burden-shifting framework established in <u>McDonnell Douglas Corp.</u> <u>v. Green</u>, 411 U.S. 792 (1973).  That procedure requires the plaintiff to prove a prima facie case, the employer to then produce evidence of a legitimate, nondiscriminatory reason for the adverse action, and the plaintiff to then show that the reason offered was a pretext for discrimination.  <u>Id.</u> at 802-04. "None of this, however, has to be accomplished in the complaint itself.  Under Federal Rule of Civil Procedure 8(a)(2), a claim need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  <u>Sparrow v.</u> <u>United Air Lines, Inc.</u>, 216 F.3d 1111, 1114 (D.C. Cir. 2000).  A complaint need not offer any evidence of pretext.  <u>Id.</u>

The two elements a plaintiff must plead for a viable claim of discrimination under Title VII are that "(i) the plaintiff suffered an adverse employment action (ii) because of [his] race, color, religion, sex, or national origin."  <u>Brady v. Office of</u> <u>the Sergeant at Arms</u>, 520 F.3d 490, 493 (D.C. Cir. 2008). Winston has done this in Count I and supported the claim with

factual allegations of racially disparate treatment.  Winston
alleges in his amended complaint that the Smithsonian's conduct
in "disciplining [Winston] and suspending him for seven days
without pay was motivated by Mr. Winston's race and color in
violation of Title VII[.]"  (Am. Compl. ¶ 46.)  He adds that
other co-workers outside of Winston's protected class used their
cell phones more than he did, yet none was suspended or
disciplined for it.  (Am. Compl. ¶ 41.)  Winston has adequately
pled that his 2007 suspension was unlawful discrimination.

The elements of a claim of retaliation are that the
plaintiff engaged in a statutorily protected activity, the
employer treated the plaintiff adversely, and a causal connection
existed between the two.  <u>Wiley v. Glassman</u>, 511 F.3d 151, 155
(D.C. Cir. 2007); <u>see also</u> <u>Rochon v. Gonzales</u>, 438 F.3d 1211,
1216-20 (D.C. Cir. 2007); <u>Iweala v. Operational Techs. Servs.</u>,
634 F. Supp. 2d 73, 83 (D.D.C. 2009) (quoting <u>Brown v. Brody</u>, 199
F.3d 446, 452 (D.C. Cir. 1999) (internal quotation marks
omitted)).  A plaintiff alleging retaliation faces a low hurdle
at the motion to dismiss stage, and need not present evidence of
pretext.  <u>See</u> <u>Rochon</u>, 438 F.3d at 1219-20 (reversing the
dismissal of the plaintiff's retaliation claim since a complaint
need not allege adverse treatment that is a personnel action, or
negate prospective alternative explanations for the cause of the
treatment).  "'Temporal proximity' between a complaint of

discrimination and an adverse action, such as termination, can 'support a jury's finding of a causal link.'" <u>Iweala</u>, 634 F. Supp. 2d at 83 (quoting <u>Patterson v. Johnson</u>, 505 F.3d 1296, 1299 (D.C. Cir. 2007)) (quoting <u>Sparrow</u>, 216 F.3d at 1115).

The Smithsonian argues that Winston fails to state a viable claim of retaliation regarding his seven-day suspension because the lapse of time between Winston's protected activity (initiating the EEO process in June 2006) and the April 2007 suspension is too great to support an inference of discriminatory retaliation. (Def.'s Mem. at 11.)  However, a causal connection between the protected activity and the adverse action is the essential element of a retaliation claim; temporal proximity is not.  A complaint's facts reflecting temporal proximity can be probative of a causal connection, but are not required in order to plead a retaliation claim.  Winston can satisfy his burden to plead a plausible claim of retaliation by providing facts showing that he engaged in a protected activity and suffered an adverse employment action, and alleging that he suffered the adverse employment action as a result of the protected activity.  <u>See</u> <u>Beckham v. Nat'l R.R. Passenger Corp.</u>, 590 F. Supp. 2d 82, 89 (D.D.C. 2008) (refusing to dismiss a retaliation claim where the plaintiff "satisfied her burden by alleging that she was denied benefits because of her opposition to actions made unlawful by Title VII"); <u>Vance v. Chao</u>, 496 F. Supp. 2d 182, 187 (D.D.C.

2007) (citing <u>Twombly</u>, and denying a motion to dismiss, stating
that at the motion to dismiss stage, "[the] plaintiff can meet
her prima facie [sic] burden simply by alleging that the adverse
actions [that were supported by facts in her complaint] were
caused by her protected activity"); <u>Rhodes v. Napolitano</u>, 656 F.
Supp. 2d 174, 187 (D.D.C. 2009) (rejecting argument that the
plaintiff's retaliation claim failed to establish a causal
connection between protected activity that occurred in 2003 or
2004 and retaliatory action that occurred in 2007, because the
plaintiff's allegation that the defendant initiated the
retaliatory action in response to her previous EEOC activity was
"sufficient to survive a motion to dismiss"); <u>Dave v. Lanier</u>,
606 F. Supp. 2d 45, 52-53 (D.D.C. 2009) (denying the defendant's
motion to dismiss the plaintiff's claim of retaliation because
"the plaintiff . . . made out a legally cognizable claim of
retaliation by contending that he engaged in a protected activity
by reporting the trainer's allegedly discriminatory conduct and
that in response to his complaint, the defendant retaliated
against him by subjecting him to materially adverse actions").

Moreover, "'a close temporal connection is not the only way
to prove causation.  A plaintiff may also put forward direct
evidence and disregard the presumption and its time
limitations.'"  <u>Rhodes</u>, 656 F. Supp. 2d at 186 (quoting <u>Beckham</u>,
590 F. Supp. 2d at 89).  The amended complaint alleges that Evans

informed Winston, in response to a question about whether other
people were being punished for overusing their cellular
telephones, that "this is coming from downtown, and you and I
have talked about the fact that you know you don't have any
friends from downtown." (Am. Compl. ¶¶ 37-41.) Winston also
alleges that he was punished for excessive use of his cellular
telephone before the Smithsonian even issued guidelines regarding
use of such phones, and that other co-workers outside of
Winston's protected class used their cell phones more than
Winston did, yet none was suspended or disciplined for it. With
all reasonable inferences from these factual allegations drawn in
Winston's favor, this complaint amply alleges that his adverse
treatment was not only racially disparate but fueled by managers
whom he alienated by having filed a complaint in 2006. That
inference is bolstered by the allegation that the deciding
official, Bechtol, who issued the 2006 decision on the proposal
to suspend Winston for his conduct toward Gastright, was the same
person who issued the 2007 decision adopting the proposal to
suspend him for seven days. (Id. ¶¶ 42-43.) Thus, Winston's
amended complaint sufficiently alleges a claim of retaliation
that is plausible on its face, and Count II of Winston's amended
complaint survives.

III. HOSTILE WORK ENVIRONMENT

The Smithsonian moves to dismiss Count III of Winston's amended complaint, in which Winston alleges that as a "result of the above-referenced retaliatory and/or discriminatory conduct, the Defendant has subjected the Plaintiff to a hostile environment based on discrimination and/or retaliation, in violation of Title VII[.]" (Am. Compl. ¶ 52.) The Smithsonian argues that Count III should be dismissed because Winston is impermissibly attempting to bootstrap discrete acts of discrimination into a hostile work environment claim. (Def.'s Mot. at 17.)

To state a hostile work environment claim, Winston must allege that "he suffered harassment because of his membership in a protected class . . . [,] that [his employer] knew or should have known of the alleged harassment and failed to take remedial action[,]" King v. Pierce Assocs., 601 F. Supp. 2d 245, 248 (D.D.C. 2009) (citing Davis v. Coastal Int'l Sec., Inc., 275 F.3d 1119, 1122-23 (D.C. Cir. 2002)), and that it interfered with his work. See Roberson v. Snow, 404 F. Supp. 2d 79, 97 n.8 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks omitted)); see also Faragher v. Boca Raton, 524 U.S. 775, 788 (1998). "A hostile work environment exists when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to

alter the conditions of the victim's employment and create an abusive working environment[.]'" <u>Roberson</u>, 404 F. Supp. 2d at 97 n.8.

Here, Count III of Winston's amended complaint incorporates all the factual allegations preceding it, as well as the allegations of Counts I and II, into his hostile work environment claim. The allegations preceding Counts I and II range from facing unsubstantiated allegations that he threatened violence against a co-worker, to being evicted from his workspace and barred from meetings, to being stripped of supervisory duties and banished to cramped work space, to facing a proposed suspension that was later overruled. (Am. Compl. ¶¶ 22, 23, 25, 26.) While the Smithsonian questions whether Winston's use of discrete acts of discrimination to fashion a hostile work environment claim could eventually withstand the scrutiny of summary judgment,[8] a plaintiff filing an employment discrimination complaint is ordinarily not subject to a heightened pleading standard,[9] and is

---

[8] <u>Cf</u>. <u>Rattigan v. Gonzales</u>, 503 F. Supp. 2d 56, 82 (D.D.C. 2007); <u>Nurridin v. Goldin</u>, 382 F. Supp. 2d 79, 108 (D.D.C. 2005); <u>Lester v. Natsios</u>, 290 F. Supp. 2d 11, 31-32 (D.D.C. 2003).

[9] <u>See</u> <u>Sparrow</u>, 216 F.3d at 1118 ("We understand why district courts may want to alleviate their crowded dockets by disposing quickly of cases that they believe cannot survive in the long run. But . . . this may not be accomplished by employing heightened pleading standards . . . . Rather, federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later.") (internal quotation marks omitted).

not required to plead a prima facie case of discrimination or
retaliation in his complaint, <u>Swierkiewicz v. Sorema N.A.</u>, 534
U.S. 506, 511 (2002); <u>Rattigan v. Gonzalez</u>, 503 F. Supp. 2d 56,
78 (D.D.C. 2007); <u>Smith-Thompson</u>, 657 F. Supp. 2d at 129 (citing
<u>Swierkiewicz</u>, 534 U.S. at 511-514 (2002)), or to "plead law or
match facts to every element of a legal theory." <u>Krieger v.
Fadely</u>, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation
and citation omitted); <u>see also</u> <u>Ali v. Dist. of Columbia</u>, Civil
Action No. 08-1950 (HHK), 2010 WL 1068096, at * 3 (D.D.C. March
24, 2010) (denying motion to dismiss the plaintiff's hostile work
environment claim, even though "it [was] unlikely that [the
plaintiff's] claims of discrimination will ultimately prove
meritorious"). Historically,

> [t]he D.C. Circuit has long recognized the ease with
> which a plaintiff claiming employment discrimination
> can survive a Rule 12(b)(6) motion to dismiss for
> failure to state a claim upon which relief may be
> granted. "Because racial discrimination in employment
> is a claim upon which relief can be granted, . . . 'I
> was turned down for a job because of my race' is all a
> complaint has to state to survive a motion to dismiss
> under [Rule] 12(b)(6)."

<u>Rouse v. Berry</u>, Civil Action No. 06-2088 (RWR), 2010 WL 325569,
at *3 (D.D.C. January 29, 2010) (quoting <u>Potts v. Howard Univ.
Hosp.</u>, 258 Fed. Appx. 346, 347 (D.C. Cir. 2007)). Even today,
all that is required of the amended complaint at this stage is
that it provide enough factual heft to show a plausible
entitlement to relief; that is, that it contain "enough facts to

[nudge] a claim to relief . . . across the line from conceivable to plausible[.]" <u>Twombly</u>, 550 U.S. at 570.[10]  Winston's claim, construed in the light most favorable to him despite its sparse nature, sufficiently alleges facts that could be probative of a discriminatory hostile work environment by incorporating the purportedly discriminatory conduct that Winston experienced, and asserting that the discriminatory conduct constituted a hostile work environment.  <u>See</u> <u>Holmes-Martin v. Leavitt</u>, 569 F. Supp. 2d 184, 193 (D.D.C. 2008) (denying the defendant's motion to dismiss the plaintiff's claim of hostile work environment because the plaintiff "alleged some conduct in support of her claim," and noting that a plaintiff is required to plead facts which "support," not "establish," the claim).  Therefore, the motion to dismiss Count III of Winston's amended complaint will be denied.

<u>CONCLUSION AND ORDER</u>

Winston failed to exhaust his administrative remedies regarding his transfer to the Suitland Zone.  However, Winston adequately alleges claims of discrimination and retaliation regarding his seven-day suspension, and of a hostile work environment.  Therefore, it is hereby

---

[10] Justice Thomas's unanimous <u>Swierkiewicz</u> opinion, cited in and undisturbed by <u>Twombly</u>, 550 U.S. at 569-70, is still good law.  Notably, the Smithsonian does not attack Winston's complaint as insufficient under <u>Twombly</u>, a case decided well before the Smithsonian filed its motion to dismiss.

ORDERED that the defendant's motion [10] to dismiss or for summary judgment be, and hereby is, GRANTED in part and DENIED in part. Judgment is granted to the defendant on the portion of Count I of Winston's amended complaint that pertains to Winston's transfer to the Suitland Zone. The remainder of the motion is denied. It is further

ORDERED that Winston's motion [17] for leave to file a surreply and for Rule 56(f) discovery be, and hereby is, GRANTED in part and DENIED in part. Leave to file a surreply is granted and the request for Rule 56(f) discovery is denied. It is further

ORDERED that Winston's motion [19] for a hearing be, and hereby is, DENIED as moot.

SIGNED this 11th day of May, 2010.

_____/s/_____
RICHARD W. ROBERTS
United States District Judge